**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

ALYSSON MILLS, IN HER CAPACITY
AS RECEIVER FOR ARTHUR LAMAR
ADAMS AND MADISON TIMBER
PROPERTIES, LLC,

                        Plaintiff,

            v.

BUTLER SNOW LLP; BUTLER SNOW
ADVISORY SERVICES, LLC; MATT
THORNTON; BAKER, DONELSON,
BEARMAN, CALDWELL & BERKOWITZ
PC; ALEXANDER SEAWRIGHT, LLC;
BRENT ALEXANDER; and JON
SEAWRIGHT,

                        Defendants.

Case No. 3:18-cv-00866-CWR-FKB

**Hon. Carlton W. Reeves**

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC'S MOTION TO DISMISS THE COMPLAINT

Michael W. Ulmer (MSB #5760)
James J. Crongeyer, Jr. (MSB #10536)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, MS  39205
Tel.:    (601) 965-1900
Fax:    (601) 965-1901
Email:  mulmer@watkinseager.com

Craig D. Singer (*pro hac vice*)
Benjamin W. Graham (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel.:    (202) 434-5000
Fax:    (202) 434-5029
Email:  csinger@wc.com

*Counsel for Defendant Baker, Donelson,
Bearman, Caldwell & Berkowitz PC*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL ALLEGATIONS ...............................................................................................3

STANDARD OF REVIEW ..................................................................................................5

ARGUMENT ........................................................................................................................5

I.      Baker Donelson Is Not Responsible for the Actions of Alexander and Seawright. ...........5

      A.      Alexander's and Seawright's Investment Activities Were Outside the Scope of Their Employment with Baker Donelson. .............................................................5

      B.      The Complaint Does Not State an "Apparent Authority" Claim. ...........................8

      C.      The Complaint Does Not State a Claim for Negligent Supervision and Retention (Count VIII) .............................................................................................10

II.     The Complaint's Causes of Action Do Not State a Claim for Relief Against Baker Donelson. ...............................................................................................................................12

      A.      The Complaint Does Not State a Claim for Civil Conspiracy (Count I). .............12

      B.      The Complaint Does Not State a Claim for Aiding and Abetting (Count II). .......13

      C.      The Complaint Does Not State a Claim for "Recklessness," "Gross Negligence," or "Negligence" (Count III). ...............................................................14

III.    *In Pari Delicto* Bars the Receiver's Claims ........................................................................15

      A.      The Receiver Stands in the Shoes of the Most Culpable Parties, Madison Timber and Adams .................................................................................................16

      B.      The Receiver Cannot Claim an "Innocent Successor" Exception to *In Pari Delicto* ....................................................................................................................17

IV.     The Complaint Should Be Dismissed with Prejudice ...........................................................20

CONCLUSION .....................................................................................................................20

## TABLE OF AUTHORITIES

Federal Cases:                                                                                           Page(s)

*Alexander v. Verizon Wireless Servs., L.L.C.*,
    875 F.3d 243 (5th Cir. 2017) ................................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................5

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013)..................................................................................11

*Dickens v. A-1 Auto Parts & Repair, Inc.*,
    No. 1:18-cv-162-LG-RHW, 2018 WL 5726206 (S.D. Miss. Nov. 1, 2018) ..........14

*El Camino Res., LTD. v. Huntington Nat. Bank*,
    722 F. Supp. 2d 875 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013).......14

*Hays v. Pearlman*,
    2010 WL 4510956 (D.S.C. Nov. 2, 2010) .............................................................18

*Hymel v. FDIC*,
    925 F.2d 881 (5th Cir. 1991) ................................................................................16

*In re Evans*,
    467 B.R. 399 (Bankr. S.D. Miss. 2011)..................................................................14

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
    193 F.3d 781 (3d Cir. 1999)...................................................................................13

*In re S. Scrap Material Co., LLC*,
    541 F.3d 584 (5th Cir. 2008) ..................................................................................5

*Janvey v. Adams & Reese, LLP*,
    2013 WL 12320921 (N.D. Tex. Sept. 11, 2013)....................................................19

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
    712 F.3d 185 (5th Cir. 2013) ....................................................................16, 17, 18

*Jones v. Greninger*,
    188 F.3d 322 (5th Cir. 1999) ................................................................................20

*Jones v. Wells Fargo Bank, N.A.*,
    666 F.3d 955 (5th Cir. 2012) ..........................................................................19, 20

*Knauer v. Jonathon Roberts Fin. Grp., Inc.*,
    348 F.3d 230 (7th Cir. 2003) ................................................................15, 19, 20

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..........................................................................14

*Midwest Feeders, Inc. v. Bank of Franklin*,
    886 F.3d 507 (5th Cir. 2018) .....................................................................12

*Peterson v. McGladrey & Pullen, LLP*,
    676 F.3d 594 (7th Cir. 2012) .............................................................18, 19

*Pinter v. Dahl*,
    486 U.S. 622 (1988)......................................................................................13

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ...............................................................17, 19

*Thornton v. Micrografix, Inc.*,
    878 F. Supp. 931 (N.D. Tex. 1995) .............................................................6

*Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*,
    32 F.3d 953 (5th Cir. 1994) .......................................................................11

*Troelstrup v. Index Futures Grp., Inc.*,
    130 F.3d 1274 (7th Cir. 1997) ...................................................................16

*Trustcash Holdings, Inc. v. Moss*,
    668 F. Supp. 2d 650 (D.N.J. 2009) ............................................................13

*Wells v. Shelter Gen. Ins. Co.*,
    217 F. Supp. 2d 744 (S.D. Miss. 2002).....................................................13

State Cases:

*Adams Cmty. Care Ctr., LLC v. Reed*,
    37 So. 3d 1155 (Miss. 2010).......................................................................10

*Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*,
    42 So. 3d 474 (Miss. 2010)..........................................................6, 7, 8, 11

*Bradley v. Kelley Bros. Contractors*,
    117 So. 3d 331 (Miss. Ct. App. 2013) ......................................................12

*Century 21 Deep S. Properties, Ltd. v. Corson*,
    612 So. 2d 359 (Miss. 1992).......................................................................15

*Children's Med. Grp., P.A. v. Phillips*,
    940 So. 2d 931 (Miss. 2006).........................................................................6

*Christian Methodist Episcopal Church v. S & S Construction Co., Inc.*,
    615 So.2d 568 (Miss. 1993)...........................................................................8

*Forest Hill Nursing Ctr., Inc. v. McFarlan*,
    995 So. 2d 775 (Miss. Ct. App. 2008) ................................................................10

*Glidewell v. Hite*,
    6 Miss. 110 (Miss. Err. & App. 1840) ................................................................18

*Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*,
    100 So. 3d 420 (Miss. 2012) ..........................................................................14, 15

*Harris v. Town of Woodville*,
    196 So. 3d 1121 (Miss. Ct. App. 2016) ..............................................................12

*Kirschner v. KPMG LLP*,
    938 N.E.2d 941 (N.Y. 2010) ...............................................................................18

*Latham v. Johnson*,
    --- So. 3d ---, 2018 WL 3121362 (Miss. Ct. App. June 26, 2018).......................16

*Long Term Care, Inc. v. Jesco, Inc.*,
    560 So. 2d 717 (Miss. 1990) ...............................................................................17

*McFarland v. Entergy Mississippi, Inc.*,
    919 So. 2d 894 (Miss. 2005) ..........................................................................9, 10

*Mississippi Bar v. Thompson*,
    5 So. 3d 330 (Miss. 2008) ...................................................................................10

*Morgan v. MML Inv'rs Servs., Inc.*,
    226 So. 3d 590 (Miss. Ct. App. 2017) ..................................................................9

*Parmenter v. J & B Enterprises, Inc.*,
    99 So. 3d 207 (Miss. Ct. App. 2012) ..................................................................11

*Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc.*,
    928 So. 2d 856 (Miss. 2006) ............................................................................8, 9

*Savage v. Prudential Life Ins. Co. of Am.*,
    154 Miss. 89, 121 So. 487 (1929) .......................................................................14

*Sneed v. Ford Motor Co.*,
    735 S.2d 306, 308 (Miss. 1999) ..........................................................................15

Other Authorities:

27A Am. Jur. 2d, Equity § 103 (2008) .........................................................................16

Black's Law Dictionary (10th ed. 2014).........................................................................16

Federal Rule of Civil Procedure 12(b)(6) ........................................................................5

Miss. Code § 79-10-67(2) .......................................................................................5

Restatement (Second) of Agency § 261 ................................................................9

Restatement (Second) of Torts § 876 ............................................................13, 14

Securities Exchange Act § 12(a)(1) ....................................................................13

Securities Exchange Act § 3(4) ...........................................................................13

## INTRODUCTION

In this unprecedented lawsuit, the Receiver seeks to hold the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. ("Baker Donelson") liable for the Ponzi scheme perpetrated by Madison Timber Properties, LLC ("Madison Timber") and Arthur Lamar Adams ("Adams"). The law firm never represented Madison Timber or Adams, and it owed them no attorney-client duties. The Receiver certainly does not allege that Baker Donelson perpetrated the Ponzi scheme, or that anyone at the firm knew Adams was engaged in fraud. In contrast to others whom the Receiver has sued, Baker Donelson never profited or stood to profit from the scheme – not by a single penny.

The Receiver's sole basis for suing Baker Donelson is that two individuals who work at the law firm, Brent Alexander and Jon Seawright, also operated an *unaffiliated* personal LLC, Alexander Seawright Timber Fund I, LLC, which lent its members' funds to Madison Timber. But the Receiver does not allege, because she cannot allege, that Baker Donelson owned or controlled this LLC or profited from it in any way. Baker Donelson is not in the investment business, much less the timber business. Alexander and Seawright operated their LLC separately from the business of the law firm, and the Complaint alleges nothing to the contrary. Nor does it allege a single fact about any other person at Baker Donelson. Whatever Alexander's or Seawright's responsibility allegedly may be – and the Receiver does not allege that they knew Madison Timber was fraudulent – there is no basis to hold Baker Donelson liable.

Baker Donelson fully supports the Receiver's proper objective to compensate innocent investors who lost money in Adams's scheme. But such compensation must come from those who profited from the scheme and are legally responsible for it. Mississippi law does not permit imposing liability on a law firm that did not represent Adams or participate in his fraud. Such an unprecedented action would only compound the harm of the Ponzi scheme by punishing other

innocent parties: the blameless employees and shareholders of Baker Donelson, who had nothing to do with causing the investors' losses.

The Court therefore should dismiss the Complaint against Baker Donelson because, under settled Mississippi law, the firm is not responsible for its employees' actions outside the scope of their employment. The Complaint also should be dismissed for failure to state a claim on the elements of the causes of action it asserts: *First*, it alleges no facts that could support a finding that Baker Donelson had *actual knowledge* of Adams's fraud, an essential element of the Receiver's claim for civil conspiracy. *Second*, the same defect would defeat the Receiver's claim for aiding and abetting – if such a cause of action existed in Mississippi, which it does not. *Third*, the Receiver's claim of "recklessness," "gross negligence," or "negligence" fails because the Receiver stands in the shoes of Madison Timber and Adams, who were not clients of Baker Donelson. Under settled Mississippi law, a law firm owes no duty of professional care to non-clients absent rare circumstances not arguably present here. That rule ensures that lawyers can exercise their duties to those who *are* their clients with uncompromised loyalty.

That the Receiver stands in the shoes of Madison Timber and Adams, and not the investors, gives rise to another reason why the Complaint should be dismissed: The doctrine of *in pari delicto* bars tort claims brought on behalf of a primary wrongdoer against other alleged wrongdoers. Receivers and trustees have no greater powers than the entities in receivership, which means this Receiver is subject to the same defenses that would have been available to Baker Donelson if Madison Timber and Adams were the plaintiffs. To be sure, receivers may be shielded from *in pari delicto* when they assert *non-tort* causes of action, like fraudulent transfer claims (no such claims are alleged against Baker Donelson); but many courts hold otherwise when, as here, a receiver asserts *tort* claims. The Mississippi courts have not spoken on this

2

issue, but they would likely apply the traditional rule that a receiver inherits tort claims as she finds them, subject to all existing defenses. The Court need not consider *in pari delicto*, however, if it finds the Complaint deficient because Baker Donelson is not liable for the acts of Alexander and Seawright, or because the allegations do not establish the elements of a cause of action. In all events, the Complaint does not state a claim and should be dismissed.

## FACTUAL ALLEGATIONS[1]

Baker Donelson is a law firm based in Memphis, Tennessee, which employs more than 700 attorneys and public policy advisors around the country, including in its Jackson, Mississippi office. Through its professionals, the firm provides legal and consulting services to a diverse set of clients. The Complaint does not allege, however, that Madison Timber and Arthur Lamar Adams were clients of Baker Donelson – because they were not clients. *Cf.* Compl. ¶¶ 165–176.

The Complaint also does not allege that anyone at Baker Donelson had any contact with Adams or the Madison Timber investments, with the exception of two individuals, Brent Alexander and Jon Seawright, who did business with Adams through an LLC that bears their names, Alexander Seawright Timber Fund I, LLC. Compl. ¶ 74. Jon Seawright is an attorney and shareholder in the firm, who works primarily on corporate law matters for healthcare clients. Brent Alexander is a non-lawyer political consultant who works primarily in healthcare policy.

According to the Complaint, in 2011 Alexander and Seawright became acquainted with Adams, who offered an opportunity to invest in Madison Timber. *Id.* ¶ 70. They asked Adams about the potential risks to the timber stock and received assurances of an umbrella insurance policy on all tracts. *Id.* ¶ 85. They viewed the investment as posing little risk because it was secured by the land and timber deed. *Id.* ¶ 70. From time to time, Adams would present them

---

[1] The Complaint's allegations must be taken as true for purposes of this motion to dismiss. Baker Donelson does not concede that any factual allegation in the Complaint is true.

with tranches of timber investments, for which they would locate investors. In exchange, they received certain commissions. *Id.* ¶¶ 72–74. The Complaint does not allege that Baker Donelson received any commissions. Nor does it allege that anyone at Baker Donelson other than Alexander and Seawright did anything wrong. As to Alexander and Seawright, the Complaint does not allege they knew Madison Timber was a Ponzi scheme. It alleges instead that they missed "red flags" about Madison Timber – e.g., that the returns were too stable and too high, and that the signatures on the timber deeds had been forged. *See id.* ¶¶ 94–100.[2]

On May 11, 2018, "Adams pleaded guilty to the federal crime of wire fraud and 'admit[ted] to all of the conduct of the entire scheme and artifice to defraud.'" Compl. ¶ 21. In a separate action, the SEC charged Adams with federal securities violations, and this Court appointed Alysson Mills (the "Receiver") as a federal equity receiver for Madison Timber and the Adams estate. The Receiver has filed several lawsuits to claw back for the benefit of investors funds that were fraudulently transferred from Madison Timber. This lawsuit is different: The Receiver seeks to impose tort liability on parties who she alleges permitted the scheme to grow, even if – as in Baker Donelson's case – there is no allegation that they received any payments from Madison Timber or were complicit in Adams' scheme.

The Complaint names as defendants, in addition to Baker Donelson: Alexander, Seawright, and Alexander Seawright, LLC[3] (the "Alexander Seawright Defendants"); and Matt Thornton, Butler Advisory Services LLC, and Butler Snow LLP (the "Butler Snow

---

[2] The Complaint also alleges that Alexander and Seawright planned to expand their business with Madison Timber through a second LLC, Alexander Seawright Timber Fund II, LLC, but this fund never launched. *See* Compl. ¶¶ 101–112. The Complaint does not allege that this LLC had any connection to the law firm either.

[3] Alexander Seawright, LLC, a separate entity from Alexander Seawright Timber Fund I, LLC, allegedly also participated in the Madison Timber investments. *See* Compl. ¶ 162. Again, there is no allegation that this LLC had any connection to Baker Donelson.

Defendants"). The Receiver brings four counts against Baker Donelson: civil conspiracy (Count I); aiding and abetting (Count II); "recklessness, gross negligence, and at a minimum negligence" (Count III); and negligent supervision and retention (Count VIII), and alleges that Baker Donelson is vicariously liable for the acts of Alexander and Seawright. The Complaint brings other counts but *not* against Baker Donelson, including legal malpractice (Baker Donelson did not represent Adams or Madison Timber), fraudulent transfer (Baker Donelson received no payments as a result of the Ponzi scheme); and Mississippi's civil RICO statute.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement extends to every essential element of each claim. *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008).

## ARGUMENT

**I.      Baker Donelson Is Not Responsible for the Actions of Alexander and Seawright.**

The Receiver's entire case depends on holding Baker Donelson responsible for the acts of Alexander and Seawright. This theory fails as a matter of law. Baker Donelson is a professional corporation doing business in Mississippi. Compl. ¶ 9. By statute, the liability of a professional corporation is limited to the acts of its employees that are performed either "within the scope [1] of their employment or [2] of their apparent authority to act for the corporation[.]" Miss. Code § 79-10-67(2). The allegations concerning Alexander and Seawright satisfy neither condition.

**A.      Alexander's and Seawright's Investment Activities Were Outside the Scope of Their Employment with Baker Donelson.**

"If an employee deviates or departs from his work to accomplish some purpose of his own not connected with his employment – goes on a 'frolic of his own' – the relation of master

and servant is temporarily suspended." *Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 489 (Miss. 2010) (internal quotation marks omitted). "Some actions are so clearly beyond an employee's course and scope of employment that they cannot form the basis for a claim of vicarious liability, as a matter of law." *Children's Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 935 (Miss. 2006). The Mississippi Supreme Court in *Seay* applied these principles to the conduct of (coincidentally) a shareholder of Baker Donelson, granting summary judgment to the law firm where the shareholder's actions – an alleged adulterous affair with an alleged client's spouse – were not in furtherance of the firm's practice of law and were not approved by Baker Donelson. 42 So. 3d at 489. While the plaintiff claimed that he relied on the lawyer's legal advice, the Court emphasized that Baker Donelson had obtained no benefit from the shareholder's wrongdoing, and that the affair did not relate to the attorney-client relationship. *Id.*

*Seay*'s reasoning compels dismissal here, because the Complaint's allegations do not plausibly demonstrate that Alexander and Seawright were acting within the scope of their employment at Baker Donelson. Alexander and Seawright worked as, respectively, a lobbyist and a lawyer at the Baker Donelson law firm. Compl. ¶ 69. The Complaint does not allege, however, that Madison Timber or Adams sought or received legal advice from Seawright or public-policy advice from Alexander, or that any of the wrongdoing attributed to Alexander or Seawright occurred in the course of providing such client services to anyone. Rather, Alexander and Seawright are alleged to have missed "red flags" in the course of managing investments through their separate LLC.

Reading their full website biographies, as the Court is permitted to do on a motion to dismiss,[4] demonstrates that investment management is not part of Alexander's or Seawright's job

---

[4] "When a plaintiff quotes from a document used as a foundation for allegations in the complaint," *see* Compl. ¶ 81, "the Court may examine the entire document to review a motion to dismiss." *Thornton v. Micrografix, Inc.*, 878 F. Supp. 931, 933 (N.D. Tex. 1995).

at Baker Donelson.  Brent Alexander is employed as a lobbyist and public-policy consultant working primarily "in health care, on behalf of health care providers and related service industries."  Ex. A (Website) at 2.  Jon Seawright is a lawyer who advises and represents firm clients "with a particular focus on issues unique to community and non-profit hospitals" and an emphasis on "new market tax credits . . . and historic tax credits[.]"  Ex. B (Website) at 2.

The Complaint's suggestions to the contrary are based entirely on misleading partial quotations from the website.  *See* Compl. ¶ 81.  Alexander supposedly has "a 'rapidly growing' practice in 'advising venture capital and related investors.'"  *Id.*  The quoted sentence does not end with a period after "investors."  It actually says that Alexander advises "venture capital and related investors *on public policy issues*" – not on their investments.  Ex. A at 2.  Seawright supposedly has "'extensive experience' in business development and capital formation."  Compl. ¶ 81.  That quotation omits the immediately preceding words, which explain that Seawright provides legal advice on "*structuring of tax incentives for* business development and capital formation[.]"  Ex. B at 2.  Interpreting the tax code and structuring tax incentives are legal services, not the investment services the Complaint would suggest.

The Mississippi Supreme Court in *Seay* cited the Restatement (Second) of Agency, emphasizing that "[c]onduct of a servant is *not* within the scope of employment if it is *different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.*"  42 So. 3d at 488 (emphases in original).  The lawyer's conduct was outside the scope of his employment because it "was not in any way related to [a legal] representation" and "not motivated by a desire to benefit" the firm.  *Id.* at 489 (internal quotation marks omitted).  That equally describes the allegations in this case.  Madison Timber and Adams were not clients of Baker Donelson.  Baker Donelson did not profit from Madison Timber or Adams; the firm had no business relationship with them whatsoever.  Alexander and

7

Seawright conducted their investment business through a separate legal entity, Alexander Seawright Timber Fund I, LLC.  Baker Donelson has no ownership interest in the LLC and exercised no control over it.

The separateness of the Alexander Seawright Defendants' conduct from Baker Donelson stands in contrast to the Complaint's allegations about the Butler Snow Defendants.  Unlike Baker Donelson, Butler Snow allegedly had "attorney-client relationships with Adams and Madison Timber[.]"  Compl. ¶ 66.  Where Alexander and Seawright acted through personal LLCs, "Butler Snow launched Butler Snow Advisory Services, [as] 'a wholly owned subsidiary that provides non-legal business advice.'"  *Id.* ¶ 38.

### B.    The Complaint Does Not State an "Apparent Authority" Claim.

In an effort to avoid the *Seay* case, the Receiver claims that even if Alexander and Seawright did not have authority to act for Baker Donelson in their investment activities, they had *apparent* authority.  This theory does not rescue the Complaint from dismissal, both because (1) if anyone could have been misled by an appearance of authority, it was not Adams or Madison Timber, in whose shoes the Receiver stands; and (2) Alexander and Seawright had no more "apparent" than "actual" authority to bind the firm in investment-management matters – Baker Donelson is a law firm, not an investment management organization.  *See* Compl. ¶ 81.

Apparent authority is "authority that the principal has by words or conduct held the alleged agent out as having."  *Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc.*, 928 So. 2d 856, 864 (Miss. 2006).  It requires a "showing of (1) acts or conduct of the principal indicating the agent's authority, (2) reasonable reliance upon those acts by a third person, and (3) a detrimental change in position by the third person as a result of that reliance."  *Christian Methodist Episcopal Church v. S & S Construction Co., Inc.*, 615 So.2d 568, 573 (Miss. 1993).  Apparent authority must be assessed "from the point of view of the third person" who is suing

the principal.  Restatement (Second) of Agency § 261, cmt. a.  For example, "a third party cannot

rely on the apparent authority of an agent to bind a principal where he has actual knowledge of

the limits of the agent's authority[.]"  *Patriot Commercial Leasing Co.*, 928 So. 2d at 864.

The Complaint alleges that "*Investors* reasonably believed that their investment in

Madison Timber, through Alexander Seawright Timber Fund I, LLC, was backed and promoted

by, and had been vetted by, Baker Donelson."  Compl. ¶ 79 (emphasis added).[5]  But the Receiver

does not stand in the shoes of investors; she asserts the claims of Madison Timber and Adams,

and apparent authority must be assessed from *their* perspective.  The Complaint does not allege

that Madison Timber or Adams believed Alexander and Seawright were acting on behalf of

Baker Donelson, far less that they relied on any such mistaken belief or that such reliance would

be reasonable.  *See Morgan v. MML Inv'rs Servs., Inc.*, 226 So. 3d 590, 598 (Miss. Ct. App.

2017) (reliance was unreasonable where plaintiff "did not pay the funds to [the principal;] . . .

never received any receipt, contract, statement, or other documentation from them[; and]

acknowledges that [the agent] never even said that the investments would be with or through [the

principal]").  To the contrary, Madison Timber and Adams were engaged in fraud and

presumably did not care whether Baker Donelson supported the investments as long as they got

the money from Alexander Seawright Timber Fund I, LLC.

The Complaint also does not state a claim for vicarious liability because it does not allege

any act or conduct by Baker Donelson that indicated Alexander and Seawright's authority to act

for the firm in recommending timber investments.  "Apparent authority of an agent only binds

the principal when the plaintiff can show '*acts or conduct of principal* indicating agent's

---

[5] *See also id.* ¶ 71 (alleging Seawright told an investor his funds could be run through Baker
Donelson's escrow account); ¶ 75 (alleging Alexander told investors that Baker Donelson
attorneys invested); ¶ 81 (alleging they "referred potential investors" to firm website); ¶ 85
("Investors were led to believe . . . [investment] was backed by Baker Donelson's reputation.").

authority[.]'"  *Forest Hill Nursing Ctr., Inc. v. McFarlan*, 995 So. 2d 775, 781 (Miss. Ct. App. 2008) (emphasis in original) (quoting *McFarland v. Entergy Mississippi, Inc.*, 919 So. 2d 894, 902 (Miss. 2005)).  Absent some indication by Baker Donelson that Alexander and Seawright were agents of Baker Donelson for the specific purpose on which Madison Timber allegedly relied – i.e., for investment services – apparent authority is lacking.  *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1160 (Miss. 2010) (no apparent authority where "[t]he record is devoid of any action on the part of [the principal] indicating that [the putative agent] was her agent for the purpose of making health-care decisions").  An employer's indication that an agent is affiliated with the business – here, hosting Alexander's and Seawright's biographies on the firm website – therefore does not confer authority outside the scope of the agent's employment. *See McFarland*, 919 So. 2d at 902 ("not reasonable . . . to assume" that use of a company utility vehicle conferred apparent authority to repair power lines); *Mississippi Bar v. Thompson*, 5 So. 3d 330, 337 (Miss. 2008) (paralegal lacked apparent authority to create client relationship).

Because conduct by the *principal* is required, it is not enough for the Complaint to allege that the putative *agents*, Alexander and Seawright, referred to their affiliation with Baker Donelson.  *McFarlan*, 995 So. 2d at 782 (insufficient that agent "held herself out" as authorized because "the acts or conduct indicating the authority of the agent must be made by the principal").  In any event, none of Alexander's or Seawright's alleged statements about Baker Donelson are to the effect that the firm stood behind the investments.  *See supra* n.5.

### C.    The Complaint Does Not State a Claim for Negligent Supervision and Retention (Count VIII).

The Complaint also attempts to hold Baker Donelson liable for Alexander's and Seawright's conduct through a claim that Baker Donelson negligently retained and supervised them in their employment.  Compl. ¶¶ 177–186.  This claim fails for the same reasons as the

vicarious liability theory:  Under Mississippi law, "employers do not have a duty to supervise their employees when the employees are off-duty or not working," especially where the employer gains no "corporate benefit therefrom."  *Seay*, 42 So. 3d at 489 (internal quotation marks omitted).  Because Alexander's and Seawright's investment activities were outside the scope of their employment, the firm was under no duty to supervise them.  *See also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 491 (3d Cir. 2013) (dismissing negligent supervision claim where employee operated a Ponzi scheme; employer has no duty "to discover, at its peril, the fraudulent machinations in which [employee] was involved outside the scope of his employment"); *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994) (applying Mississippi law, "[e]mployers also are not liable for failure to supervise when the employee engages in independent criminal conduct").

But even assuming Baker Donelson were under such an obligation, the Complaint does not state a claim for breach.  "A plaintiff must prove the defendant had either actual or constructive knowledge of an employee's incompetence or unfitness before the employer will become liable for the negligent hiring or retention of an employee who injures a third party." *Parmenter v. J & B Enterprises, Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (internal quotation marks omitted).  The Receiver alleges that "[i]n view of the numerous red flags described in this complaint, . . . Baker Donelson knew or should have known of [its] agents' incompetence or unfitness."  Compl. ¶ 180.  But the only "red flags" alleged in the Complaint are about Madison Timber – e.g., uniform high-yield profits, forged documents, etc.; *see* Compl. ¶¶ 94–100 – and Baker Donelson is not alleged even to have known about them.  There are no alleged "red flags" that speak to Alexander's or Seawright's competence or fitness to practice law or consulting.  Baker Donelson does not supervise its employees' personal business, and the Alexander-Seawright LLCs were just that:  Alexander's and Seawright's personal business.

## II.     The Complaint's Causes of Action Do Not State a Claim for Relief.

The Receiver brings three additional causes of action against Baker Donelson:  civil conspiracy (Count I); aiding and abetting (Count II); and recklessness, gross negligence, and negligence (Count III).  The Court should dismiss each of these counts because the Complaint does not state a claim.  *First*, each count apparently presumes that Alexander and Seawright were acting for the firm in their investment matters, which is incorrect for the reasons discussed in Part I above.  *Second*, as discussed below, these counts should be dismissed against the law firm no matter how the Court resolves the imputation question.

### A.     The Complaint Does Not State a Claim for Civil Conspiracy (Count I).

The essential elements of civil conspiracy are "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a proximate result."  *Harris v. Town of Woodville*, 196 So. 3d 1121, 1131 (Miss. Ct. App. 2016) (internal brackets omitted).

The Complaint does not state a conspiracy claim because it does not allege that anyone at Baker Donelson, including Alexander or Seawright, knew that Madison Timber was a Ponzi scheme.  The Receiver contends only that Alexander and Seawright missed red flags.  Compl. ¶¶ 94, 120.  "For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement."  *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013).  Under settled law, therefore, the Receiver is wrong to argue that "Defendants need not have known that Madison Timber was a Ponzi scheme to unlawfully conspire with Adams," Compl. ¶ 120.  *See also Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 520 (5th Cir. 2018) (civil conspiracy requires proof that conspirator "knew of [the] fraudulent scheme").  Absent such knowledge, it is also implausible to allege the other central conspiracy element: that Baker Donelson intentionally *agreed* to the illegal scheme.

12

The Receiver also has no viable conspiracy claim based on her allegations that Alexander and Seawright (i) operated without a broker's license and (ii) sold unregistered securities. Compl. ¶ 118.  Civil conspiracy requires that the plaintiff allege a viable underlying tort.  *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002).  The cause of action "cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action."  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 790 (3d Cir. 1999).  Where the Receiver "could not sue an individual defendant for an alleged violation of the [statute], it follows that [she] cannot invoke the mantle of conspiracy to pursue the same cause of action against a group of defendants."  *Id.* at 789.  With respect to licensure, the Receiver alleges that a license is required under Section 3(4) of the Securities Exchange Act, *see* Compl. ¶ 91, but cites no statutory provision that would confer a private right of action for such a violation.  With respect to registration, "only a *purchaser* of the unregistered security may sue" for a registration violation under Section 12(a)(1) of the Securities Act.  *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 654 (D.N.J. 2009) (citing *Pinter v. Dahl*, 486 U.S. 622, 644 (1988)).  Madison Timber and Adams were not the purchasers of the alleged securities.

All of the above applies to Alexander and Seawright, but if their conduct is not imputed to Baker Donelson, the conspiracy claim should be dismissed for the additional reason that the Complaint alleges no facts showing that *anyone* at the firm entered into any agreement concerning Madison Timber, or committed any overt acts in furtherance of Adams' scheme.

### B.    The Complaint Does Not State a Claim for Aiding and Abetting (Count II).

The Court should dismiss Count II because Mississippi law does not recognize a cause of action for civil aiding and abetting.  The Receiver cites Section 876(b) of the Restatement (Second) of Torts for the proposition that "a defendant is liable if he 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the

other so to conduct himself.'"  Compl. ¶ 127.  The Receiver cites no Mississippi statute or case

because "[n]o Mississippi court has ever recognized any of the subsections of the Restatement

(Second) of Torts § 876 as viable causes of action," and "no Mississippi court has recognized a

claim for civil aiding and abetting."  *In re Evans*, 467 B.R. 399, 409 (Bankr. S.D. Miss. 2011).

 Assuming *arguendo* that an aiding and abetting cause of action exists, the Complaint

does not state a claim because, again, neither Alexander, Seawright, nor anyone at Baker

Donelson is alleged to have known that Madison Timber was a Ponzi scheme.  The Restatement

provides that a defendant is liable only if he "*knows* that the other's conduct constitutes a

breach[.]"  Restatement (Second) of Torts § 876(b); Compl. ¶ 127.  Allegations that a defendant

"should have known about the dangers" of an alleged confederate's conduct falls short of

establishing that the defendant "knew about conduct constituting a conspiracy[.]"  *Dickens v. A-1*

*Auto Parts & Repair, Inc.*, No. 1:18-cv-162-LG-RHW, 2018 WL 5726206, at *3 (S.D. Miss.

Nov. 1, 2018).  Courts in those jurisdictions that recognize civil liability for aiding and abetting

routinely dismiss claims based on "red flags" like the Receiver alleges here.  Consistent with the

"universal rule in this country," "banks, lawyers, brokerage houses, [or] accountants" are not

liable for aiding and abetting based on "red flags, smoke, and other irregularities[.]"  *El Camino*

*Res., LTD. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 907–08 (W.D. Mich. 2010) (collecting

authority), *aff'd*, 712 F.3d 917 (6th Cir. 2013); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d

Cir. 2006) ("red flags" were "insufficient to establish a claim for aiding and abetting fraud").

 **C.**  **The Complaint Does Not State a Claim for "Recklessness," "Gross**
    **Negligence," or "Negligence" (Count III)**

 "It is quite elementary that there cannot be a tort without a breach of a legal duty."

*Savage v. Prudential Life Ins. Co. of Am.*, 154 Miss. 89, 121 So. 487, 489 (1929).  Lawyers owe

"absolute and uncompromised" duties *to their clients*.  *Great Am. E & S Ins. Co. v. Quintairos,*

*Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 425–26 (Miss. 2012).  But the Mississippi Supreme Court has strictly limited the scope of an attorney's obligations to *non-clients*.  *Id.* (declining to adopt a regime that would hold attorneys "liable for all foreseeable harm . . . to nonclients").  This ensures that a lawyer's absolute obligations to her client is not compromised by duties to non-clients.  *Id.*  Mississippi recognizes only narrow exceptions to this rule, in certain circumstances where a non-client foreseeably relies on the attorney's work.  *Century 21 Deep S. Properties, Ltd. v. Corson*, 612 So. 2d 359, 373–74 (Miss. 1992); *see also, e.g.*, *Great Am. E & S Ins. Co.*, 100 So. 3d at 425 (permitting suit by non-client because title lawyers "are fully aware that their work will be relied upon by subsequent purchasers").

Baker Donelson is accused of professional negligence – that it breached a duty to Madison Timber "to discover Adams' fraud" by virtue of the "advantageous position" it occupied as the law-firm employer of Alexander and Seawright.  Compl. ¶ 138.  Under the well-established law cited above, there was no such duty.  The Complaint does not allege that Adams or Madison Timber were clients of the firm – they were not.  Baker Donelson is not alleged to have performed any professional work for Madison Timber, nor any work for another client on which Madison Timber relied.  There is no authority under Mississippi law, or any other law, that would impose a duty on a law firm to monitor the conduct of non-client third parties, much less a duty to discover a criminal fraud that the wrongdoer went to great lengths to disguise.

## III.    *In Pari Delicto* **Bars the Receiver's Claims.**

Under Mississippi law,[6] a plaintiff who is *in pari delicto* with the defendant may not recover.  *Sneed v. Ford Motor Co.*, 735 S.2d 306, 308 (Miss. 1999) ("a wrongdoer is not entitled to compel contribution from a joint tortfeasor . . . if [they] are *in pari delicto*").  The *in pari*

---

[6] The Receiver's claims are all brought under Mississippi law, which therefore also governs the *in pari delicto* defense.  *Knauer v. Jonathon Roberts Fin. Grp., Inc.*, 348 F.3d 230, 235 (7th Cir. 2003) (court "must look to [the relevant state] law to determine the rights of the receiver").

*delicto* doctrine enforces the longstanding equitable "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *In Pari Delicto Doctrine*, Black's Law Dictionary (10th ed. 2014). The doctrine "applies where [i] the plaintiff is equally or more culpable than the defendant or [ii] acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction." *Latham v. Johnson*, --- So. 3d ---, 2018 WL 3121362, at \*10 (Miss. Ct. App. June 26, 2018) (citing 27A Am. Jur. 2d, Equity § 103, p. 641 (2008)), *reh'g denied* (Oct. 9, 2018). At the motion todismiss stage, an affirmative defense like *in pari delicto* bars recovery where the defense is established "on the face of the complaint." *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).

### A.  The Receiver Stands in the Shoes of the Most Culpable Parties, Madison Timber and Adams.

The Receiver stands in the shoes of Madison Timber and the Adams estate. *See Hymel v. FDIC*, 925 F.2d 881, 883 (5th Cir. 1991); Order Appointing Receiver, D.I. 33, *SEC v. Adams*, No. 3:18-cv-00252 (S.D. Miss.). It is black-letter law that she "has standing to assert only the claims of the entities in receivership and not the claims of the entities' investor-creditors." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013); *see also Troelstrup v. Index Futures Grp., Inc.*, 130 F.3d 1274, 1276 (7th Cir. 1997) (receiver appointed for wrongdoer's estate "has no possible claim against [a third-party brokerage], or on behalf of the investors, the victims of the fraud, because he was not their receiver").

Madison Timber and Adams have no viable tort claims against defendants, like Baker Donelson, who allegedly failed to discover their fraud. On the face of the Complaint, the defense of *in pari delicto* bars such claims as a matter of law. "Madison Timber was a Ponzi scheme[.]" Compl. ¶ 117. Adams operated Madison Timber for more than ten years, during which time he purported to purchase timber from Mississippi landowners and resell it to lumber

mills for a profit. *Id.* ¶ 13. But "[t]here was no timber and no proceeds from sales of timber." *Id.* at 1. Madison Timber conducted no legitimate business – it was created solely as a vehicle for fraud. *See id.* ¶¶ 17, 117. Outside of the Ponzi scheme, "Madison Timber had no revenues whatsoever[.]" *Id.* ¶ 17. Adams "pleaded guilty to the federal crime of wire fraud" and "'admit[ted] to all of the conduct of the entire scheme and artifice to defraud.'" *Id.* ¶ 21 (quoting Plea Agreement, D.I. 11, *United States v. Adams*, No. 3:18-cr-00088 (S.D. Miss)).

Beyond question, Adams's and Madison Timber's wrongdoing ("*delicto*") was at least equal ("*in pari*") to anything alleged against Baker Donelson. In contrast to Adams' active and criminal fraud, the Complaint alleges that Baker Donelson is responsible for the conduct of the Alexander Seawright Defendants, who allegedly missed "red flags" in the course of introducing potential investors to Adams. Where two parties allegedly are responsible for a tort, the "active wrongdoer" is more at fault than the "passive wrongdoer." *Long Term Care, Inc. v. Jesco, Inc.*, 560 So. 2d 717, 721 (Miss. 1990). In any event, there can be no dispute that Adams's fault was at least "equal" to anything alleged against Baker Donelson.[7]

**B.     The Receiver Cannot Claim an "Innocent Successor" Exception.**

While Mississippi courts have not yet spoken on this question, some states recognize a limited exception to the *in pari delicto* doctrine for so-called "innocent successors." *See, e.g.*, *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (applying Indiana law); *Janvey*, 712 F.3d at 191 (discussing *Scholes* and applying Texas law). Where the exception is available, it permits a receiver "to assert the claims of a receivership entity against third-party recipients of the entity's assets that have been fraudulently transferred by the principal of the Ponzi scheme[.]" *Id.*

---

[7] There also can be no dispute that Adams's fraud was within the scope of his relationship with Madison Timber, as Adams allegedly operated Madison Timber as a pure Ponzi scheme with no legitimate business activities. Compl. at 1.

An innocent-successor exception does not apply to the Receiver's tort claims for two reasons: *First*, Mississippi has never recognized the exception and would not do so in these circumstances. The Mississippi Supreme Court has recognized the doctrine of *in pari delicto* since at least 1840, *see Glidewell v. Hite*, 6 Miss. 110, 134 (Miss. Err. & App. 1840), without once excusing a corporation from its own fraud. Since the Seventh Circuit first recognized the innocent successor rule (under Illinois law) in 1995, that court has criticized and progressively narrowed it. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 599 (7th Cir. 2012). Other courts in recent years have flatly refused to adopt the exception, including the highest court of New York in *Kirschner v. KPMG LLP*, 938 N.E.2d 941 (N.Y. 2010). *Kirschner* rejected a litigation trustee's attempt to sue professional firms and evade the *in pari delicto* defense, reasoning that even after a fraudster has been removed, a corporation cannot foist liability for his conduct onto third parties that allegedly failed to prevent his fraud. The court refused to permit "the interests of innocent stakeholders of corporate fraudsters [to] trump those of innocent stakeholders of the outside professionals who are the defendants in these cases." *Id.* at 475.

*Second*, even where the exception is recognized, it typically applies to fraudulent transfer claims, or similar claims designed to recoup monies expended from the estate – not tort claims like the ones asserted against Baker Donelson in this case. *Janvey*, 712 F.3d at 191 (claims against "recipients of the entity's assets that have been fraudulently transferred"). Thus, in *Hays v. Pearlman*, 2010 WL 4510956, at *5 (D.S.C. Nov. 2, 2010), the court dismissed an action like this one, holding that "in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate a fraud may not seek recovery against an alleged third-party co-conspirator in the fraud." The Receiver has not alleged a fraudulent transfer claim against Baker Donelson, nor could she, as Baker Donelson received no payments as a result of the Ponzi scheme. *Cf.* Compl. ¶¶ 145–149 (count for fraudulent transfer against other defendants).

To be sure, the Fifth Circuit has applied an innocent successor rule under Texas law, when considering a claim for conversion of a cashier's check, *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955 (5th Cir. 2012); and the district court in *Janvey* applied the exception to certain tort claims, again under Texas law, while at the same time recognizing that "*Scholes* is not universally accepted, especially outside the fraudulent transfer context." *Janvey v. Adams & Reese, LLP*, 2013 WL 12320921, at *3 (N.D. Tex. Sept. 11, 2013). The Seventh Circuit's post-*Scholes* opinion in *Knauer v. Jonathon Roberts Fin. Grp., Inc.* explains why the exception should apply only to fraudulent-transfer claims and the like, not to tort claims:

> The key difference, for purposes of equity, between fraudulent conveyance cases such as *Scholes* and the instant case is the identities of the defendants. The receiver here is not seeking to recover the diverted funds from the beneficiaries of the diversions (e.g., the recipients of [the fraudster's] transfers in *Scholes*). Rather, this is a claim for tort damages from entities that derived no benefit from the embezzlements, but that were allegedly partly to blame for their occurrence. In the equitable balancing before us, we find *Scholes* less pertinent than the general Indiana rule that the receiver stands precisely in the shoes of the corporations for which he has been appointed.

348 F.3d 230, 236 (7th Cir. 2003). The Seventh Circuit has continued to limit *Scholes*, describing some of its most-quoted language as "dictum" and explaining that "*Scholes* should not be generalized beyond the law of fraudulent conveyances and preferential transfers." *Peterson*, 676 F.3d at 599 (applying *in pari delicto* to claims by bankruptcy trustee for Ponzi scheme against third-party auditor).

If presented with this question, the Mississippi Supreme Court likely would follow this clear trend in the caselaw and would hold that appointing a receiver does not automatically nullify the well-established defense of *in pari delicto* in tort cases. At a minimum, Mississippi would not apply an "innocent successor" rule in a case like this one, where Baker Donelson is not alleged to have been directly involved in Adams's fraud, nor to have derived any benefit

19

from the scheme.  Notably, the *Jones* court found the question of benefit important:  it distinguished *Knauer* based on the equities because in *Knauer* (as here) "the defendants were neither directly involved in the embezzlements at issue nor benefitted from them."  666 F.3d at 968 n.12.

## IV.    The Complaint Should Be Dismissed with Prejudice.

Amendment cannot cure any of the core defects in the Complaint: that Alexander and Seawright acted for their own personal business without authority from Baker Donelson, that Baker Donelson did not know that Madison Timber was a Ponzi scheme, and that *in pari delicto* bars the claims.  The Receiver has reviewed communications among Madison Timber, Adams, Alexander, Seawright, and their members.  *See* Compl. ¶¶ 70, 71, 75, 77.  If there were facts to remedy these flaws, she would have alleged them.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (dismissal with prejudice proper where "a complaint alleges the plaintiff's best case").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.


Dated this 21st day of February, 2019                    Respectfully submitted,

                                                         **BAKER, DONELSON, BEARMAN,**
                                                         **CALDWELL & BERKOWITZ PC**


                                                           */s/ Michael W. Ulmer*

                                                         Michael W. Ulmer (MSB #5760)
                                                         James J. Crongeyer, Jr. (MSB #10536)
                                                         WATKINS & EAGER PLLC
                                                         400 East Capitol Street, Suite 300 (39201)
                                                         Post Office Box 650
                                                         Jackson, MS  39205
                                                         Tel.:  (601) 965-1900
                                                         Fax:  (601) 965-1901
                                                         Email: mulmer@watkinseager.com

Craig D. Singer (*pro hac vice*)
Benjamin W. Graham (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel.:  (202) 434-5000
Fax:  (202) 434-5029
Email:  csinger@wc.com

*Counsel for Defendant Baker, Donelson,*
*Bearman, Caldwell & Berkowitz PC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

_/s/ Michael W. Ulmer_
Michael W. Ulmer