**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ALYSSON MILLS, IN HER CAPACITY**                 **PLAINTIFF**
**AS RECEIVER FOR ARTHUR LAMAR**
**ADAMS AND MADISON TIMBER**
**PROPERTIES, LLC**

**vs.**                        **CASE NO. 3:18-cv-866-CWR-FKB**

**BUTLER SNOW LLP; BUTLER SNOW**            **DEFENDANTS**
**ADVISORY SERVICES, LLC; MATT**
**THORNTON; BAKER, DONELSON,**
**BEARMAN, CALDWELL & BERKOWITZ**
**PC; ALEXANDER SEAWRIGHT, LLC;**
**BRENT ALEXANDER; and JON**
**SEAWRIGHT**

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FILED BY**
**ALEXANDER SEAWRIGHT, LLC, BRENT ALEXANDER, AND JON SEAWRIGHT**

---

R. David Kaufman (MSB #3526)
Cody C. Bailey (MSB #103718)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
Email: dkaufman@brunini.com

*Counsel for Defendants Alexander Seawright,*
*LLC, Brent Alexander, and Jon Seawright*

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................1

FACTUAL ALLEGATIONS ...............................................................................3

STANDARD OF REVIEW ..................................................................................5

ARGUMENT .......................................................................................................5

I.      Counts I, II, III, V, and VI of the Complaint Do Not State a Claim upon which
        Relief may be Granted against the Alexander Seawright Defendants. ...............................5

        A.      The Complaint Does Not State a Claim for Civil Conspiracy (Count I). ................6

        B.      The Complaint Does Not State a Claim for Aiding and Abetting (Count
                II).......................................................................................................8

        C.      The Complaint Does Not State a Claim for "Recklessness," "Gross
                Negligence," or "Negligence" (Count III). ...........................................................9

        D.      The Complaint Does Not State a Claim for "Violations of Mississippi's
                Racketeer Influenced and Corrupt Organization Act" (Count V). ........................12

        E.      The Complaint Does Not State a Claim for "Joint Venture Liability"
                (Count VI). ......................................................................................................12

II.     The Doctrine of *In Pari Delicto* Bars the Receiver's Claims against the Alexander
        Seawright Defendants in Counts I, II, III, V, and VI. .......................................................15

III.    The Receiver Cannot Pierce the Limited Liability Company Veil of Alexander
        Seawright to hold Brent Alexander and Jon Seawright Personally Liable. .......................16

        A.      The Complaint does not allege that Adams looked beyond the LLC for
                performance. .....................................................................................................18

        B.      The Complaint contains no facts showing that Alexander Seawright
                flagrantly disregarded corporate formalities. ......................................................18

        C.      The Complaint alleges no facts demonstrating that Alexander Seawright
                was a vehicle for fraud or that Brent Alexander and Jon Seawright used it
                for fraudulent means. ........................................................................................19

CONCLUSION.....................................................................................................20

## INTRODUCTION

Counts I, II, III, V, and VI of the Receiver's Complaint fail to state a claim against Brent Alexander ("Alexander"), Jon Seawright ("Seawright"), and Alexander Seawright, LLC ("Alexander Seawright")[1] for which relief could be granted. Accordingly, the Court should dismiss those claims in the Receiver's Complaint against the Alexander Seawright Defendants.

It is true that Alexander Seawright coordinated loans from Alexander Seawright Timber Fund I, LLC ("Timber Fund I"), of which Alexander Seawright was a member, to Madison Timber Properties, LLC ("Madison Timber"). It is also true that in exchange for its work in coordinating the loans, Alexander Seawright received loan-origination fees from Madison Timber. But that was the extent of the Alexander Seawright Defendants' involvement with Arthur Lamar Adams ("Adams") and Madison Timber. The Alexander Seawright Defendants never were aware that Adams and Madison Timber were engaged in what federal prosecutors have described as a complex financial fraud. The Receiver does not assert any facts demonstrating that the Alexander Seawright Defendants knew about the fraud or agreed to further the fraud—because they did not. Alexander and Seawright, like dozens of other sophisticated businesspersons and professionals, were duped by Adams and became victims of his fraudulent scheme. But they did not conspire with Adams; they did not aid or abet Adams; they did not enter into a partnership or joint venture with Adams; they did not owe any duty to Adams or Madison Timber; and they did not purposefully act to further Adams's fraud. The Complaint is devoid of any facts supporting such claims.

The Receiver's Complaint sets forth six causes of action against the Alexander Seawright Defendants and separately alleges that Alexander and Seawright are "personally liable for

---

[1] Brent Alexander, Jon Seawright, and Alexander Seawright will be collectively referred to as the "Alexander Seawright Defendants."

payment of all damages or other relief awarded in favor of the Receiver and against Defendant Alexander Seawright." Complaint at ¶ 192. The six causes of action against the Alexander Seawright Defendants are:  civil conspiracy (Count I); aiding and abetting (Count II); "recklessness, gross negligence, and at a minimum negligence" (Count III); "for violations of Mississippi's Fraudulent Transfer Act" (Count IV); "for violations of Mississippi's Racketeer Influenced and Corrupt Organization Act" (Count V); and "for joint venture liability" (Count VI). The Alexander Seawright Defendants' Motion to Dismiss seeks the dismissal with prejudice of every count and claim against them except for Count IV.

The Court should dismiss Counts I, II, V, and VI of the Complaint because the Receiver must prove that the Alexander Seawright Defendants had *actual knowledge* of the fraud perpetrated by Adams and agreed to further it in order to prevail on those claims. But the Receiver has not even alleged facts demonstrating that the Alexander Seawright Defendants knew about the fraud, much less that they agreed to participate in it, because no such facts exist. Indeed, the only allegations in the entire Complaint regarding the Alexander Seawright Defendants' knowledge of Adams's fraud state:  "In view of the numerous red flags described in this complaint, Defendants knew or should have known that Madison Timber was a Ponzi scheme." Complaint at ¶ 120, 129. As discussed below, the alleged "red flags" are wholly insufficient to state a claim for which relief can be granted on Counts I, II, V, and VI.

The Court should dismiss Count III of the Complaint because the Receiver has not alleged, and she cannot prove, that the Alexander Seawright Defendants owed any legal duty to Adams or Madison Timber, because no such duty exists as a matter of law.

Moreover, because the Receiver stands in the shoes of Adams and Madison Timber and not the investors or lenders, the Court should dismiss Counts I, II, III, V, and VI of the

Complaint against the Alexander Seawright Defendants pursuant to the doctrine of *in pari delicto*, which bars tort claims brought on behalf of a primary wrongdoer against other alleged wrongdoers. In other words, even if Alexander and Seawright were wrongdoers—which they are not—the Receiver stands in the shoes of the primary wrongdoers, Adams and Madison Timber. Under Mississippi law and the allegations of the Receiver's Complaint, Adams and Madison Timber cannot recover from the Alexander Seawright Defendants.

Finally, the Receiver's claims in Counts I, II, III, V, and VI against Alexander and Seawright must be dismissed because the Receiver has not sufficiently alleged facts that would allow her to pierce the limited liability company veil of protection afforded to them by Alexander Seawright. Accordingly, the Court should deny the Receiver's request for a declaratory judgment of liability against Alexander and Seawright individually.

## FACTUAL ALLEGATIONS

Jon Seawright and Brent Alexander formed Alexander Seawright to be a personal business and investment vehicle. Jon Seawright and Brent Alexander have always been the only members of Alexander Seawright.

Alexander Seawright formed Timber Fund I for the purpose of raising funds to be loaned by Timber Fund I to Madison Timber. Alexander Seawright was a member of Timber Fund I and its manager. Members of Timber Fund I contributed funds that were pooled together and loaned to Madison Timber by Timber Fund I pursuant to promissory notes. Under the terms of the notes, Madison Timber promised to pay back the loans with interest. As the manager of Timber Fund I and for its work coordinating the loans, Madison Timber paid loan-origination fees to Alexander Seawright. Those fees are the subject of Count IV of the Receiver's Complaint.[2]

---

[2] Those fees are not at issue in the Alexander Seawright Defendants' Motion to Dismiss, but the Complaint misstates the amount of fees that Alexander Seawright in fact received.

The Alexander Seawright Defendants were unaware that Adams and Madison Timber were using the loans from Timber Fund I to further a fraudulent scheme, and the Receiver does not allege facts demonstrating otherwise. Consistent with the Receiver's allegations, the Alexander Seawright Defendants believed that Madison Timber used lenders' money to purchase timber from landowners, sold the timber to lumber mills at a higher price, and repaid lenders their principal plus interest with proceeds of the timber sales. Complaint at ¶ 15.

The Alexander Seawright Defendants did in fact undertake meaningful evaluations of the loans being made from Timber Fund I to Madison Timber. Among other things, the Alexander Seawright Defendants investigated online tax and land records to verify the information was correct; they ensured the property deeds were notarized; they reviewed the agreements with timber mills; they inspected the tracts of land that were the subjects of property deeds via site visits or aerial photographs; and they talked to people who purported to know Adams to vet his reputation as a businessman. *Id.* at ¶¶ 87, 88. As the Receiver admits, the Alexander Seawright Defendants also asked about potential risks to the timber in the event of natural disasters, and they received assurances from Adams that all tracts were covered by an umbrella insurance policy. *Id.* ¶ 85. The Receiver alleges that they also "sought a few referrals" from Butler Snow LLP "to validate Madison Timber." *Id.* ¶ 58. The Alexander Seawright Defendants did not view the loans as highly risky because they were secured by land and timber deeds. *Id.* ¶ 70. Of course, the deeds ending up being fraudulent, but the Alexander Seawright Defendants had no reason to suspect that because the deeds were notarized. *Id.* ¶ 95.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Complaint must "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Complaint must set forth "'enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). As shown below, the Receiver has not alleged sufficient facts under the applicable law to raise a reasonable expectation that she will be able to establish the elements of claims set forth against the Alexander Seawright Defendants in Counts I, II, III, V, and VI of the Complaint.[3]

## ARGUMENT

I.    **Counts I, II, III, V, and VI of the Complaint Do Not State a Claim upon which Relief may be Granted against the Alexander Seawright Defendants.**

The Court should dismiss Counts I, II, III, V, and VI of the Complaint against the Alexander Seawright Defendants because those Counts of the Complaint do not state a claim for which relief can be granted. Mississippi law applies to the Receiver's claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). It is "well-settled" that the Receiver's state law claims at issue here, including the fraudulent transfer claims, "are governed by the forum state in which the federal court is sitting." *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014) (citing, among others, *Sommers Drug Stores Co. Emp. Profit Sharing*

---

[3] Although the well-pleaded facts in the Complaint must be accepted as true for purposes of their Motion to Dismiss, the Alexander Seawright Defendants do not concede that any of the factual allegations are true and in fact are separately addressing the allegations in their Answer and Affirmative Defenses.

*Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) ("A federal court exercising pendent jurisdiction over state law claims, must apply the substantive law of the state in which it sits."). Under Mississippi law, Counts I, II, III, V, and VI of the Complaint fail to state a claim for which relief can be granted against the Alexander Seawright Defendants, and the Court therefore should dismiss those Counts with prejudice.

Further, and importantly, allowing the Receiver to amend the Complaint will not reasonably cure its defects. The Alexander Seawright Defendants have already produced to the Receiver in good faith all documents, emails, correspondence, text messages, and other information in their possession that might be relevant to the Receiver's claims. *See* Compl. ¶¶ 70, 71, 75, 77. If facts existed that would allow the Receiver to cure the defects discussed below, she would have alleged them in the Complaint. But the truth is the Receiver is fully aware that the Alexander Seawright Defendants (a) *did not know* that Adams was operating a Ponzi scheme, (b) *did not act with the purpose* of furthering the fraudulent scheme, and (c) *did not owe any legal duty* to Adams or Madison Timber. Moreover, the doctrine of *in pari delicto* legally bars the Receiver's claims, and the Receiver cannot pierce the limited liability company veil of Alexander Seawright to assert claims against Alexander and Seawright individually. Under applicable law, it is clear that the Receiver "can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) ("if a complaint alleges the plaintiff's best case, there is no need to remand" and dismissal with prejudice is proper).

### A.     The Complaint Does Not State a Claim for Civil Conspiracy (Count I).

"To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a proximate result."

*Orr v. Morgan*, 230 So. 3d 368, 375 (Miss. Ct. App. 2017) (citations, brackets, and ellipsis omitted). "Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)). "It is elementary that a conspiracy requires an agreement between the co-conspirators." *Id.* (citing *Brown v. State*, 796 So. 2d 223, 226-27 (Miss. 2001) ("'persons must agree . . . for a conspiracy to exist'")). Contrary to the Receiver's allegations, to state a claim for civil conspiracy, the Receiver must plead sufficient facts to show that the Alexander Seawright Defendants knew Adams was operating a fraudulent scheme and agreed to unlawfully conspire with him to further the scheme. "For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) (citing 16 Am. Jur. 2d Conspiracy § 51); *see also Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 520 (5th Cir. 2018) (civil conspiracy requires proof that conspirator "knew of [the] fraudulent scheme").

Despite the Alexander Seawright Defendants' production of thousands of pages of all of their emails, text messages, and other documents relating to their interactions with Adams and Madison Timber, the Receiver has not alleged sufficient facts demonstrating that the Alexander Seawright Defendants knew Adams was operating a fraudulent Ponzi scheme. And if the Alexander Seawright Defendants had no knowledge of Adams's fraudulent conduct, they could not have agreed to further Adams's fraudulent scheme. To that point, the Receiver does not allege any facts demonstrating that the Alexander Seawright Defendants agreed with Adams to further his fraudulent scheme.

7

Instead, the Receiver's own allegations show that the Alexander Seawright Defendants attempted to evaluate whether "Lamar is a fraud" before doing business with him, but there was "no evidence of that." Complaint at ¶ 70. The Receiver does not allege that Adams and the Alexander Seawright Defendants had a "meeting of the minds" as to "the object or course of action" to commit an "underlying tort which could support a claim for conspiracy," as is required by Mississippi law. *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011). Accordingly, the Court should dismiss Count I against the Alexander Seawright Defendants.[4]

**B.     The Complaint Does Not State a Claim for Aiding and Abetting (Count II).**

First, as acknowledged by the Receiver, "a defendant is liable [under a claim of aiding and abetting] if he '*knows* that the other's conduct constitutes a breach of duty . . . .'" Complaint at ¶ 127 (emphasis added) (quoting Restatement (Second) of Torts § 876(b) (1979)). As stated above, the Receiver has not even alleged facts demonstrating that the Alexander Seawright Defendants *knew* about the fraud when they agreed to do business with Adams. For that reason alone, the Court should dismiss Count II against the Alexander Seawright Defendants.[5]

---

[4] In addition to failing to satisfy the knowledge element, the Receiver fails to establish any "underlying tort" or other "unlawful overt act" committed by the Alexander Seawright Defendants. As pointed out by Baker Donelson in its Motion to Dismiss, the Receiver argues that the Alexander Seawright Defendants "acted unlawfully" because they allegedly (i) operated without a license and (ii) sold unregistered securities. Complaint at ¶ 118. But a claim for civil conspiracy requires a viable underlying tort, *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002), and "cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action," *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789-90 (3d Cir. 1999). The Alexander Seawright Defendants deny that they operated unlawfully without a license or sold unregistered securities, but that is irrelevant because the Receiver "cannot invoke the mantle of conspiracy" to pursue a claim on the basis of a statutory violation for which she does not otherwise have a private right of action. 193 F.3d at 790. The Receiver fails to cite any authority that would confer a private right of action for the alleged unlawful acts by the Alexander Seawright Defendants. And again, the Receiver lacks standing to pursue claims on behalf of anyone other than Madison Timber and Adams.

[5] The Receiver's allegation that the Alexander Seawright Defendants "should have known about the dangers" of Adams's conduct due to certain "red flags" falls short of establishing that they "knew about conduct constituting a conspiracy." *Dickens v. A-1 Auto Parts & Repair, Inc.*, No. 1:18-cv-162-LG-RHW, 2018 WL 5726206, at *3 (S.D. Miss. Nov. 1, 2018) (dismissing under Rule 12(b)(6) a claim for civil

Moreover, "[n]o Mississippi court has ever recognized any of the subsections of the Restatement (Second) of Torts § 876 as viable causes of action." *In re Evans*, 467 B.R. 399, 409 (Bankr. S.D. Miss. 2011). "Additionally, no Mississippi court has recognized a claim for civil aiding and abetting, whether under § 876(b) or § 876(c)." *Id.* The "Mississippi Supreme Court has not expressly recognized the tort of aiding and abetting fraud." *Dale v. Ala Acquisitions, Inc.*, 203 F. Supp. 2d 694, 700-01 (S.D. Miss. 2002). "When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts." *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liability Lit.*, 888 F.3d 753, 781-782 (5th Cir. 2018) (reversing multi-million dollar jury verdict because, among other things, the district court recognized an aiding-and-abetting claim under Restatement § 876(b) when the Texas supreme court had not yet recognized that claim).[6] Accordingly, the Court should dismiss Count II against the Alexander Seawright Defendants.

### C.   The Complaint Does Not State a Claim for "Recklessness," "Gross Negligence," or "Negligence" (Count III).

The Receiver has failed to state a claim for negligence, gross negligence, or recklessness because she has failed to allege any facts establishing that the Alexander Seawright Defendants

---

aiding and abetting). Further, courts in jurisdictions that recognize civil liability for aiding and abetting routinely hold that allegations of "red flags" are insufficient. The "universal rule in this country" imposes no duty on "banks, lawyers, brokerage houses, [or] accountants" to scrutinize the conduct of third parties for "red flags, smoke, and other irregularities." *El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 907-08 (W.D. Mich. 2010) (internal quotation marks omitted) (collecting authority), *aff'd*, 712 F.3d 917 (6th Cir. 2013); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) ("red flags" were "insufficient to establish a claim for aiding and abetting fraud").

[6] The *Dale* court made an *Erie* guess that such a claim would be viable under Mississippi law, reasoning that a majority of other jurisdictions have recognized such a claim and that Mississippi recognizes the analogous tort of civil conspiracy. *Dale*, 203 F. Supp. 2d at 701; *In re Evans*, 467 B.R. at 409. To date, however, the Mississippi Supreme Court has not recognized the tort as viable, and therefore, this Court should follow *In re Depuy Orthopaedics*, which restrains the Court from recognizing the "novel" aiding and abetting cause of action under § 876(b) of the Restatement (Second) of Torts. 888 F.3d at 781; *see also Fikes*, 813 F. Supp. 2d at 822-23 (finding "Mississippi Supreme Court has never recognized aiding and abetting as a civil cause of action" but declining to make an *Erie* guess because plaintiff failed to allege separate underlying tort and thus failed to state claims for conspiracy and aiding and abetting).

owed a duty to Adams and Madison Timber. "Whether a duty exists is a question of law." *Midwest Feeders, Inc.*, 886 F.3d at 515 (citation omitted); *see also, e.g.*, *Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 131 (Miss. 2003). The Receiver discusses the plight of other investors or lenders who were duped by Adams, but the Receiver is not their representative. Instead, the Receiver stands only in the shoes of Adams and Madison Timber, and the Alexander Seawright Defendants did not owe any duty to Adams or Madison Timber.[7]

"It is quite elementary that there cannot be a tort without a breach of a legal duty." *Savage v. Prudential Life Ins. Co. of Am.*, 121 So. 487, 489 (Miss. 1929). Of course, to prevail on a claim of negligence, the Receiver must prove the four standard elements of a negligence claim by a preponderance of the evidence:  the existence of a duty; breach of duty; causation; and damages. *See, e.g.*, *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017); *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 922 (Miss. 2006); *Banks v. Brinker Miss., Inc.*, 146 So. 3d 388, 391 (Miss. Ct. App. 2014). "Further, the plaintiff must show 'a causal connection between the breach and the [injury], such that the breach is the proximate cause of the [injury].'" *Sanderson Farms, Inc.*, 212 So. 3d at 76 (quoting *Double Quick v. Lymas*, 50 So. 3d 292, 298 (Miss. 2010)). But importantly, the "plaintiff must first prove the existence of a duty owed." *Id.* "'Duty and breach of duty, which both involve foreseeability, are essential to finding negligence and [therefore,] must be demonstrated first.'" *Id.* (quoting *Griffith v. Entergy Miss., Inc.*, 203 So. 3d 579, 585 (Miss. 2016)). The Receiver fails to even allege that the Alexander

---

[7] *See* Order Appointing Receiver [Doc. 33], *SEC v. Adams*, No. 3:18-cv-252-CWR-FKB (S.D. Miss. June 22, 2018). It is black-letter law that the Receiver "has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013); *see also Troelstrup v. Index Futures Grp., Inc.*, 130 F.3d 1274, 1276 (7th Cir. 1997) (receiver appointed for estate of fraudster "has no possible claim against [a third-party brokerage house], or on behalf of the investors, the victims of the fraud, because he was not *their* receiver" (emphasis in original)).

Seawright Defendants owed a duty to Adams and Madison Timber, and the Receiver cannot do so because under Mississippi law no such duty existed.

The Receiver cites *Estate of St. Martin v. Hixson*, 145 So. 3d 1124, 1128 (Miss. 2014) for the following quote:  "Negligence is a failure to do what the reasonable person would do under the same or similar circumstances." *See* Complaint at ¶136. *Hixson*, however, was a legal malpractice case that analyzed duties of care and loyalty owed by the lawyer to his client. The relationship between the Alexander Seawright Defendants and Adams and Madison Timber was strictly limited to the loans that Alexander Seawright coordinated to be made by Timber Fund I to Madison Timber and payment of related loan-origination fees. The Alexander Seawright Defendants never owed a duty of any kind to Adams or Madison Timber.[8]

The Receiver alleges that the Alexander Seawright Defendants were "reckless" or "grossly negligent" in an effort to bolster the negligence claim into one for punitive damages, which are recoverable "only in cases where the negligence is so gross as to indicate reckless or wanton disregard of the safety of others." *Maupin v. Dennis*, 175 So. 2d 130, 131 (Miss. 1965). Again, however, the negligence analysis hinges on whether a duty existed in the first place. Accordingly, because the Alexander Seawright Defendants did not owe any duty to Adams or Madison Timber, the Court should dismiss Count III against them.[9]

---

[8] As Baker Donelson states in its Motion to Dismiss, the Complaint does not allege that Adams and Madison Timber were ever clients of Baker Donelson, and they were not. The Receiver does not allege that Jon Seawright, Brent Alexander, or anyone else at Baker Donelson ever performed professional work for Madison Timber or for another client on which Madison Timber relied.

[9] The Receiver quotes *Maldonado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000), for the statement that "wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." Under Mississippi law, "reckless disregard" is "defined as a 'higher standard than gross negligence, and it embraces willful or wanton conduct which requires *knowingly and intentionally* doing a thing or wrongful act.'" *Collins v. City of Newton*, 240 So. 3d 1211, 1222 (Miss. 2018) (emphasis added) (quoting *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (Miss. 2009)). Again, the Complaint is devoid of any facts establishing that the Alexander Seawright Defendants owed any duty to Adams or Madison Timber, much less that they *knowingly* or *intentionally* breached such a duty.

**D.    The Complaint Does Not State a Claim for "Violations of Mississippi's Racketeer Influenced and Corrupt Organization Act" (Count V).**

In Count V, the Receiver sets forth what may be the most outlandish of all the claims against the Alexander Seawright Defendants—alleged violations of Mississippi's Racketeer Influenced and Corrupt Organization ("RICO") Act. That claim likewise is legally insufficient.

At the core of any claim under Mississippi's RICO Act is evidence that the defendant was aware of, and a willing participant in, the wrongful racketeering activity proscribed by the RICO Act. *See* Miss. Code Ann. §§ 97-43-1 through 97-43-11. But in this case, the Receiver does not even allege facts establishing that the Alexander Seawright Defendants were aware Adams was engaged in any illegal activity, much less that they knowingly participated, managed, supervised, or otherwise engaged in it. This is fatal to the Receiver's RICO claim.[10]

The Receiver's purported "red flags" are simply not enough to parlay the fraudulent-transfer claims into viable tort claims, much less RICO claims. *See Chaney v. Dreyfus Serv. Corp.*, 595 F. 3d 219, 239-240 (5th Cir. 2010) (assertion of purported red flags and insinuations that defendants "should have known" is not enough to maintain RICO conspiracy claim). Accordingly, the Court should dismiss Count V against the Alexander Seawright Defendants.[11]

**E.    The Complaint Does Not State a Claim for "Joint Venture Liability" (Count VI).**

The Receiver apparently chooses to ignore the fact that she only stands in the shoes of Adams and Madison Timber and not in the shoes of defrauded investors or lenders. And as

---

[10] The RICO claim should be dismissed for the additional reason that the Receiver has failed to allege facts sufficient to establish a RICO "enterprise," which requires a "pattern of racketeering activity" by a "group of persons or entities associating together for the common purpose of engaging in a course of conduct," and the associated group must have "an existence that can be defined apart from the commission of the predicate acts." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559-562 (5th Cir. 2015) (citations and internal quotation marks omitted); Miss. Code Ann. § 97-43-5.

[11] Even if such a showing could be made, which it cannot, it is well established that *in pari delicto* is a defense to a civil RICO claim. *See Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008).

mentioned above and discussed further below, the Receiver's tort claims are barred by the doctrine of *in pari delicto*—the Receiver cannot recover on behalf of Adams and Madison Timber on claims against parties that she alleges participated in the fraud.

The Receiver states in conclusory fashion that a "partnership" or "joint venture" existed between Adams and the Alexander Seawright Defendants. The Receiver sets forth no factual allegations regarding the alleged "partnership" or "joint venture" other than to state that Madison Timber paid Alexander Seawright loan-origination fees. But, as shown below, that allegation alone is insufficient to establish a "partnership" or "joint venture" under Mississippi law.[12]

The Mississippi Uniform Partnership Act defines "partnership" as "an association of two (2) or more persons to carry on as co-owners a business for profit . . . ." Miss. Code Ann. § 79-13-101(8). Alexander Seawright, LLC and Madison Timber Properties, LLC are separately formed limited liability companies. They are not, and never were, a single business for profit.

"Under Mississippi law, a joint venture 'exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management.'" *Walker v. Williamson*, 2016 WL 2771792, at *2 (S.D. Miss. May 12, 2016) (quoting *Hults v. Tillman*, 480 So. 2d 1134, 1142 (Miss. 1985)). "'The three main questions that are considered in [joint venture] determination are (1) the intent of the parties, (2) the control question, and (3) profit sharing.'" *Id.* (quoting *Smith v. Redd*, 593 So. 2d 989, 994 (Miss. 1991)). The Receiver does not allege that the Alexander Seawright Defendants *intended* to join a fraudulent scheme; in fact, she does not even allege that they knew about it. Further, the Receiver does not allege that the Alexander Seawright Defendants had any control whatsoever over Madison Timber and Adams. Moreover, the

---

[12] Although a "joint venture" might be described as a single-purpose partnership, such has very "limited and circumscribed boundaries." *Duggins v. Guardianship of Washington Through Huntley*, 632 So. 2d 420, 427 (Miss. 1993).

Alexander Seawright Defendants did not share in any "profits" of the fraudulent scheme. Instead, they coordinated loans from Timber Fund I to Madison Timber, and in exchange for their work Madison Timber paid Alexander Seawright loan-origination fees. They did not share in any percentage of "profits" or "losses" as would be done in a jointly-owned business.[13]

Mississippi Code Annotated § 79-13-202(c)(3) makes clear that Madison Timber's payment of loan-origination fees to the Alexander Seawright Defendants does not constitute the creation of a joint venture, stating as follows:

> A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment . . . [f]or services as an independent contractor . . . [or] [o]f interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral.

Miss. Code. Ann. § 79-13-202(c)(3). Alexander Seawright received payment of loan-origination fees for services rendered, but Alexander Seawright did not share in the "profits" or "losses" of Madison Timber's Ponzi scheme, as those terms are defined by Mississippi law.

The Receiver states in conclusory fashion that "Alexander Seawright, Alexander, and Seawright formed a joint venture with Adams and Madison Timber . . . ." Complaint at ¶¶ 161-162. The Receiver does not allege facts, however, that establish the Alexander Seawright Defendants intended to form a joint business enterprise with Adams to defraud others or otherwise had any voice in management of Madison Timber. The Receiver does allege that the Alexander Seawright Defendants "profited" from Adams's fraud, but as a matter of law, the fees that Madison Timber paid to Alexander Seawright do not constitute the kind of profits needed to

---

[13] In *Walker v. Williamson*, the court found that, other than conclusory assertions, the plaintiff failed to plead sufficient facts to show that the defendants intended to establish a joint venture or that the defendants controlled the relevant actions. 2016 WL 2771792, at *3-4. The court also found that payment of fees to the defendants did not establish a larger agreement to split profits, but even if the shared-profits element was established, it would not have been enough to overcome the lack of intent and control. *Id.*

form a joint business venture. *See* Miss. Code. Ann. § 79-13-202(c)(3). Accordingly, the Court

should dismiss Count VI against the Alexander Seawright Defendants.

## II.     The Doctrine of *In Pari Delicto* Bars the Receiver's Claims against the Alexander Seawright Defendants in Counts I, II, III, V, and VI.[14]

Under Mississippi law, a plaintiff who is *in pari delicto* with the defendant—i.e., a "joint

tortfeasor"—may not recover against that defendant. *Sneed v. Ford Motor Co.*, 735 So. 2d 306,

308 (Miss. 1999) ("a wrongdoer is not entitled to compel contribution from a joint tortfeasor . . .

if [they] are in *pari delicto*"). The *in pari delicto* doctrine enforces the longstanding "principle

that a plaintiff who has participated in wrongdoing may not recover damages resulting from the

wrongdoing." *In Pari Delicto Doctrine*, Black's Law Dictionary (10th ed. 2014). The *in pari*

*delicto* doctrine "applies where the plaintiff is equally or more culpable than the defendant or

acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction."

*Latham v. Johnson*, 2018 WL 3121362, at *10 (Miss. Ct. App. June 26, 2018) (citing 27A Am.

Jur. 2d, Equity § 103, p. 641 (2008)), *cert. denied* 260 So. 3d 798 (Miss. 2019). As discussed

below, at this motion-to-dismiss stage, the affirmative defense of *in pari delicto* bars the

Receiver's recovery because the defense is established "on the face of the complaint." *See*

*Alexander v. Verizon Wireless Servs., LLC*, 875 F.3d 243, 249 (5th Cir. 2017).[15]

---

[14] The arguments surrounding the *in pari delicto* defense are also set forth in Baker Donelson's Motion to Dismiss and supporting Memorandum of Law. The Alexander Seawright Defendants hereby adopt such arguments, join in them, and incorporate them into this supporting memorandum.

[15] As shown above, the Complaint does not set forth sufficient facts to establish that the Alexander Seawright Defendants were parties to any criminal acts or conspiracies, but even if they were, under the *in pari delicto* doctrine the "court will not extend aid to either of the parties . . . but will leave them where their own acts have placed them." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012). On a related note, the "*in pari delicto* defense has repeatedly been used to bar the actions of 'bankruptcy trustee[s] against third parties who participated in or facilitated wrongful conduct of the debtor[s].'" *In re Fair Fin. Co.*, 834 F.3d 651, 676 (6th Cir. 2016) (quoting *Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1276 (10th Cir. 2008) (collecting cases)). Like bankruptcy trustees, the Receiver stands in the shoes of the debtors—Adams and Madison Timber.

It is readily apparent from the face of the Receiver's Complaint that Adams and Madison Timber are the primary wrongdoers—far more culpable than the Alexander Seawright Defendants. Unlike as to Adams, the Receiver alleges no facts establishing that the Alexander Seawright Defendants acted with *any knowledge* as to the illegality or wrongfulness of Adams's fraudulent scheme. *See* Complaint at pp. 2, 4-8, 20-28. Thus, there can be no dispute from the face of the Complaint that Adams's conduct was at least "equally or more culpable" than that of the Alexander Seawright Defendants. Accordingly, the Court should dismiss Counts I, II, III, V, and VI against the Alexander Seawright Defendants pursuant to the doctrine of *in pari delicto*.[16]

### III.   The Receiver Cannot Pierce the Limited Liability Company Veil of Alexander Seawright to hold Brent Alexander and Jon Seawright Personally Liable.

The Receiver asserts, without any supporting authority or factual allegations whatsoever, that "Defendants Alexander and Seawright are liable for the acts of Alexander Seawright because they authorized or directed all acts of Alexander Seawright" and "because the three are alter egos." Complaint at ¶¶ 190, 191. The Receiver's allegations are insufficient to state a claim for personal liability, and the Court should deny the Receiver's request for declaratory judgment.

Mississippi law applies to determine whether the Receiver may pierce a Mississippi LLC's veil through an action filed in federal court in Mississippi. "The decision whether to pierce the corporate veil is a question of state law." *In re World Vision Entm't, Inc.*, 275 B.R. 641, 661 (Bankr. M.D. Fla. 2002). Mississippi applies the law of the LLC's state of incorporation:  "[T]he Mississippi Limited Liability Company Act has been interpreted to mean that the veil-piercing standard of the law of the state under which an LLC exists applies when a

---

[16] As argued by Baker Donelson in its Motion to Dismiss, the Receiver cannot claim an "innocent successor" exception, or any other exception for that matter, to the doctrine of *in pari delicto*. The Alexander Seawright Defendants adopt and join Baker Donelson's arguments on that point. The Alexander Seawright Defendants' Motion to Dismiss does not address the Receiver's claim for alleged fraudulent transfer asserted in Count IV of the Complaint.

party attempts to pierce the LLC's veil." *RDS Real Estate, LLC v. Abrams Grp. Constr., LLC*, 2017 WL 338491, at *2 (S.D. Miss. Jan. 23, 2017). In turn, the Mississippi Limited Liability Company Act states: "The law of this state governs . . . [t]he liability of a member as member, a manager as manager and an officer as officer for the debts, obligations, or other liabilities of a limited liability company." Miss. Code Ann. § 79-29-119. The Mississippi Supreme Court applies the same analysis to piercing the veil of an LLC as it does to piercing the veil of a corporation: "While an LLC is a different type of legal entity than a corporation, commentators 'agree that for purposes of piercing the corporate veil, an LLC would be treated like a corporation.'" *Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d 32, 38 (Miss. Ct. App. 2012) (citation omitted).

"A fundamental principle of corporate law is that shareholders are not liable for the obligations of the corporation." *Nash Plumbing, Inc. v. Shasco Wholesale Supply, Inc.*, 875 So. 2d 1077, 1082 (Miss. 2004). "Mississippi case law generally favors maintaining corporate entities and avoiding attempts to pierce the corporate veil." *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969, 977 (Miss. 2007).

In Mississippi, "the three-prong test for piercing the veil of corporations, established in *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989), is also the appropriate test for piercing the veil of LLCs." *Rest. of Hattiesburg, LLC*, 84 So. 3d at 35. "When faced with other approaches for determining when limited liability should be disregarded, the Mississippi Supreme Court reiterated *Gray* is the test Mississippi courts must apply." *Id.* at 39.[17]

---

[17] Contrary to the Receiver's bald allegation, Alexander and Seawright are not "alter egos" of Alexander Seawright, but more importantly, that is not the test. The Mississippi Supreme Court has refused to adopt the ten factors employed by the Fifth Circuit for its "alter ego" analysis. *See Buchanan*, 957 So. 2d at 976-77. In *Buchanan*, the Court stated that "[w]hile these ten factors are instructive on the alter ego theory, this Court has not adopted the factors as applied by the federal courts . . . . this Court has held a three-factor test for piercing the corporate veil and imposing liability on corporate shareholders." *Id.*

17

Under the three-prong test set forth in *Gray*, a court may disregard corporate formalities only if the plaintiff shows: "(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." 541 So. 2d at 1047.[18]

### A.     The Complaint does not allege that Adams looked beyond the LLC for performance.

To pierce the corporate veil, a plaintiff must prove that he had a reasonable expectation of performance from a person "behind the veil." *Carpenter Props., Inc. v. J.P. Morgan Chase Bank N.A.*, 647 F. App'x 444, 452 (5th Cir. 2016). The Receiver has not even alleged that Adams had an expectation of performance from Alexander and Seawright individually. Instead, the Receiver's allegations make clear that Alexander and Seawright acted through Alexander Seawright in all interactions with Adams and Madison Timber. As stated above, Alexander Seawright did not owe any duty to Adams or Madison Timber, so there could not have been any reasonable expectation that Alexander and Seawright individually owed any such duty.

### B.     The Complaint contains no facts showing that Alexander Seawright flagrantly disregarded corporate formalities.

The Receiver has not alleged that the Alexander Seawright Defendants flagrantly disregarded any formalities of Alexander Seawright.[19] The Receiver has not alleged which

---

[18] This three-part test applies to tort as well as contract claims. *Penn. Nat. Gaming, Inc. v. Ratliff*, 954 So. 2d 427, 431-32 (Miss. 2007) (superseded by statute on other grounds) (the Mississippi Supreme Court stated it had "never articulated whether a different standard applies to tort claims," and the Court adopted the three-part test, omitting the word "contractual" from the first prong).

[19] Of course, it is uniformly recognized that "failure to adhere to formalities" in the LLC context should be given far less consideration "because LLC statutes are designed to forgo the most burdensome formalities." Eric Fox, *Piercing the Veil of Limited Liability Companies*, 62 Geo. Wash. L. Rev. 1143, 1168 (1994).

formalities that she claims should have been followed by Alexander Seawright but were disregarded to the detriment of Adams and Madison Timber.

### C.    The Complaint alleges no facts demonstrating that Alexander Seawright was a vehicle for fraud or that Brent Alexander and Jon Seawright used it for fraudulent means.

Last, and as discussed above at length, the Receiver has not alleged fraud or misfeasance on the part of Alexander and Seawright individually. The Receiver does not even allege that the Alexander Seawright Defendants knew about Adams's fraud or that he was operating Madison Timber as a Ponzi scheme. Merely alleging that the LLC loaned money in what turned out to be a fraudulent scheme engineered by Adams is insufficient to pierce the limited liability company veil in Mississippi.

Instead, there must be some allegation, supported by evidence, to show that the members of the LLC knew from the beginning about the fraud and intended to use the LLC to further the fraudulent scheme. *See, e.g.*, *Richardson v. Jenkins Builders, Inc.*, 737 So. 2d 1030, 1032 (Miss. Ct. App. 1999) (plaintiff "presented no evidence that [individual defendant], from the beginning, was intent on obtaining [plaintiff's] money for his own personal use . . . and that he used a shell corporation to shield himself from personal liability on the day of reckoning that was inevitably to come"); *In re England Motor Co.*, 426 B.R. 178, 192 (N.D. Miss. 2010) (plaintiff "failed to present any evidence whatsoever that [individual defendant] formed any of the [corporate] [e]ntities for fraudulent or wrongful purposes"); *Powertrain, Inc. v. Ma*, 88 F. Supp. 3d 679, 699 (N.D. Miss. 2015); *see also* cases from other jurisdictions, including *In re Evergreen Security, Ltd.*, 319 B.R. 245, 255-56 (M.D. Fl. 2003) (individual was not personally liable because corporation was not created to perpetuate the fraud).

The Receiver has for several months now possessed all of the documents, emails, text messages, and other information in the Alexander Seawright Defendants' possession that she

could have used to support her claims. But because the Receiver has not alleged, and cannot ultimately establish, any facts necessary to support her request to pierce Alexander Seawright's limited liability company veil, the Court should deny the Receiver's request on page 43 of the Complaint for "declaratory judgment" against Alexander and Seawright individually.

## CONCLUSION

For the reasons discussed above, Jon Seawright, Brent Alexander, and Alexander Seawright, LLC respectfully request that the Court dismiss Counts I, II, III, V, and VI of the Complaint with prejudice, and also request that the Court deny the Receiver's request for declaratory judgment against Alexander and Seawright individually.

Date:  March 6, 2019.

Respectfully submitted,

**ALEXANDER SEAWRIGHT, LLC; BRENT ALEXANDER; and JON SEAWRIGHT**

By:     */s/ R. David Kaufman*
        R. David Kaufman
        One of Their Attorneys

        R. David Kaufman (MSB #3526)
        Cody C. Bailey (MSB #103718)
        BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
        The Pinnacle Building, Suite 100
        190 East Capitol Street (39201)
        Post Office Drawer 119
        Jackson, Mississippi 39205
        Telephone: (601) 948-3101
        Facsimile: (601) 960-6902
        Email: dkaufman@brunini.com

        *Counsel for Defendants Alexander Seawright, LLC,*
        *Brent Alexander, and Jon Seawright*

**<u>CERTIFICATE OF SERVICE</u>**

I, R. David Kaufman, hereby certify that on March 6, 2019, I caused the foregoing pleading to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and registered participants.

                                               */s/ R. David Kaufman*
                                               R. David Kaufman