**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC, <br><br>         Plaintiff, <br><br>   v. <br><br> BUTLER SNOW LLP; BUTLER SNOW ADVISORY SERVICES, LLC; MATT THORNTON; BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC; ALEXANDER SEAWRIGHT, LLC; BRENT ALEXANDER; and JON SEAWRIGHT, <br><br>         Defendants. | Case No. 3:18-cv-00866-CWR-FKB <br><br> **Hon. Carlton W. Reeves** <br><br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF BAKER,
DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Michael W. Ulmer (MSB #5760)
James J. Crongeyer, Jr. (MSB #10536)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, MS  39205
Tel.:    (601) 965-1900
Fax:    (601) 965-1901
Email:  mulmer@watkinseager.com

Craig D. Singer (*pro hac vice*)
Benjamin W. Graham (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel.:    (202) 434-5000
Fax:    (202) 434-5029
Email:  csinger@wc.com

*Counsel for Defendant Baker, Donelson,
Bearman, Caldwell & Berkowitz PC*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL ALLEGATIONS ...........................................................................................3

STANDARD OF REVIEW ..............................................................................................5

ARGUMENT ......................................................................................................................6

I.    THE RECEIVER LACKS STANDING. ........................................................6

II.   BAKER DONELSON IS NOT RESPONSIBLE FOR THE ACTIONS OF
      ALEXANDER AND SEAWRIGHT. ...........................................................11

      A.    Alexander's and Seawright's Lending Activities Were Outside the Scope
            of Their Employment with Baker Donelson. ........................................11

      B.    The Amended Complaint Does Not State an "Apparent Authority" Claim. .........14

      C.    The Amended Complaint Does Not State a Claim for Negligent
            Supervision and Retention (Count VIII). ..............................................16

III.  THE AMENDED COMPLAINT'S CAUSES OF ACTION DO NOT STATE
      A CLAIM FOR RELIEF .............................................................................18

      A.    The Amended Complaint Does Not State a Claim for Civil Conspiracy
            (Count I). ...............................................................................................18

      B.    The Amended Complaint Does Not State a Claim for Aiding and Abetting
            (Count II). ..............................................................................................20

      C.    The Amended Complaint Does Not State a Claim for "Recklessness,"
            "Gross Negligence," or "Negligence" (Count III). ..............................21

IV.   IN PARI DELICTO BARS THE RECEIVER'S CLAIMS. ..........................23

      A.    The Receiver Stands in the Shoes of the Most Culpable Parties, Madison
            Timber and Adams. ................................................................................23

      B.    The Receiver Cannot Claim an "Innocent Successor" Exception. ........25

V.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
      PREJUDICE .................................................................................................27

CONCLUSION .................................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>:                                                                          <u>Page(s)</u>

*Alexander v. Verizon Wireless Servs., L.L.C.*,
    875 F.3d 243 (5th Cir. 2017) ...................................................................................23

*Amato v. United States*,
    549 F. Supp. 863 (D.N.J. 1982), *aff'd*, 729 F.2d 1445 (3d Cir. 1984)....................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................6

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013).......................................................................................17

*Cuyler v. United States*,
    362 F.3d 949 (7th Cir. 2004) ....................................................................................22

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)....................................................................................................7

*Dickens v. A-1 Auto Parts & Repair, Inc.*,
    No. 1:18-cv-162-LG-RHW, 2018 WL 5726206 (S.D. Miss. Nov. 1, 2018) ...........21

*El Camino Res., LTD. v. Huntington Nat'l Bank*,
    722 F. Supp. 2d 875 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013).......21

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)..................................................................................................10

*Hays v. Pearlman*,
    2010 WL 4510956 (D.S.C. Nov. 2, 2010) ...............................................................26

*Hymel v. FDIC*,
    925 F.2d 881 (5th Cir. 1991) ....................................................................................24

*In re Evans*,
    467 B.R. 399 (Bankr. S.D. Miss. 2011).....................................................................20

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
    193 F.3d 781 (3d Cir. 1999)......................................................................................19

*In re S. Scrap Material Co., LLC*,
    541 F.3d 584 (5th Cir. 2008) ...............................................................................6

*Janvey v. Adams & Reese, LLP*,
    2013 WL 12320921 (N.D. Tex. Sept. 11, 2013).................................................8, 26

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
    712 F.3d 185 (5th Cir. 2013) ...........................................................23, 24, 25, 26

*Jones v. Greninger*,
    188 F.3d 322 (5th Cir. 1999) ...........................................................................28

*Jones v. Wells Fargo Bank, N.A.*,
    666 F.3d 955 (5th Cir. 2012) .......................................................................26, 27

*Knauer v. Jonathon Roberts Fin. Grp., Inc.*,
    348 F.3d 230 (7th Cir. 2003) ..................................................................23, 26, 27

*Latitude Sols., Inc. v. DeJoria*,
    922 F.3d 690 (5th Cir. 2019), *cert. denied*,
    Case No. 19-340, 2019 WL 6107784 (U.S. Nov. 18, 2019)....................6, 7, 8, 9, 10

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)............................................................................21

*Litson-Gruenber v. JPMorgan Chase & Co.*,
    2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) ...................................................21

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................................5, 7

*MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.*,
    281 F. Supp. 3d 1278 (S.D. Fla. 2017) .............................................................11

*Midwest Feeders, Inc. v. Bank of Franklin*,
    886 F.3d 507 (5th Cir. 2018) ...........................................................................19

*Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*,
    2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) ...................................................8

*Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*,
    2009 WL 10676449 (W.D. Wash. Oct. 30, 2009),
    *aff'd*, 395 F. App'x 442 (9th Cir. 2010)............................................................11

*Peterson v. McGladrey & Pullen, LLP*,
    676 F.3d 594 (7th Cir. 2012) .......................................................................25, 27

*Pinter v. Dahl*,
    486 U.S. 622 (1988)......................................................................................20

*Raines v. Byrd*,
    521 U.S. 811 (1997)........................................................................................6

*Reneker v. Offill*,
    2009 WL 804134 (N.D. Tex. Mar. 26, 2009) ....................................................8, 9

*Reneker v. Offill*,
    2012 WL 2158733 (N.D. Tex. June 14, 2012) ..................................................8, 9

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ................................................8, 24, 25, 26, 27

*SEC v. Cook*,
    2001 WL 256172 (N.D. Tex. Mar. 8, 2001) ..........................................................8

*SEC v. Stanford Int'l Bank, Ltd.*,
    927 F.3d 830 (5th Cir. 2019) ........................................................7, 8, 24

*Soc'y of Separationists, Inc. v. Herman*,
    939 F.2d 1207 (5th Cir. 1991) ....................................................................10

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008)........................................................................................6

*Thornton v. Micrografix, Inc.*,
    878 F. Supp. 931 (N.D. Tex. 1995) ..............................................................12

*Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*,
    32 F.3d 953 (5th Cir. 1994) ..........................................................................17

*Troelstrup v. Index Futures Grp., Inc.*,
    130 F.3d 1274 (7th Cir. 1997) ......................................................................24

*Trustcash Holdings, Inc. v. Moss*,
    668 F. Supp. 2d 650 (D.N.J. 2009) ................................................................20

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464 (1982).......................................................................6

*Wells v. Shelter Gen. Ins. Co.*,
    217 F. Supp. 2d 744 (S.D. Miss. 2002)...........................................................19

*Zacarias v. Stanford Int'l Bank, Ltd.*,
    931 F.3d 382 (5th Cir. 2019), *opinion withdrawn and superseded on reh'g*,
    2019 WL 6907376 (Dec. 19, 2019) ..............................................................9, 10

State Cases:

*Adams Cmty. Care Ctr., LLC v. Reed*,
    37 So. 3d 1155 (Miss. 2010) ...................................................................16

*Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*,
    42 So. 3d 474 (Miss. 2010) ...............................................11, 12, 13, 17

*Bradley v. Kelley Bros. Contractors*,
    117 So. 3d 331 (Miss. Ct. App. 2013) .................................................19

*Century 21 Deep S. Props., Ltd. v. Corson*,
    612 So. 2d 359 (Miss. 1992) ...............................................................22

*Children's Med. Grp., P.A. v. Phillips*,
    940 So. 2d 931 (Miss. 2006) ...............................................................12

*Christian Methodist Episcopal Church v. S & S Constr. Co., Inc.*,
    615 So. 2d 568 (Miss. 1993) ...............................................................15

*Forest Hill Nursing Ctr., Inc. v. McFarlan*,
    995 So. 2d 775 (Miss. Ct. App. 2008) .................................................16

*Glidewell v. Hite*,
    6 Miss. 110 (Miss. Err. & App. 1840) ................................................25

*Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*,
    100 So. 3d 420 (Miss. 2012) ...........................................................21, 22

*Harris v. Town of Woodville*,
    196 So. 3d 1121 (Miss. Ct. App. 2016) ...............................................18

*Kirschner v. KPMG LLP*,
    938 N.E.2d 941 (N.Y. 2010) ...............................................................25

*Latham v. Johnson*,
    262 So. 3d 569 (Miss. Ct. App. 2018),
    *cert. denied*, 260 So. 3d 798 (Miss. Jan. 24, 2019) ............................23

*Long Term Care, Inc. v. Jesco, Inc.*,
    560 So. 2d 717 (Miss. 1990) ...............................................................25

*McFarland v. Entergy Miss., Inc.*,
    919 So. 2d 894 (Miss. 2005) ...............................................................16

*Mississippi Bar v. Thompson*,
    5 So. 3d 330 (Miss. 2008) ...................................................................16

*Morgan v. MML Inv'rs Servs., Inc.*,
  226 So. 3d 590 (Miss. Ct. App. 2017) ...................................................................15

*Oden v. Pepsi Cola Bottling Co.*,
  621 So. 2d 953 (Ala. 1993) ............................................................................22, 23

*Parmenter v. J & B Enters., Inc.*,
  99 So. 3d 207 (Miss. Ct. App. 2012) ...................................................................17

*Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc.*,
  928 So. 2d 856 (Miss. 2006) .........................................................................14, 15

*Savage v. Prudential Life Ins. Co. of Am.*,
  121 So. 487 (Miss. 1929) ....................................................................................21

*Sneed v. Ford Motor Co.*,
  735 S. 2d 306, 308 (Miss. 1999) .........................................................................23

Other Authorities:

27A Am. Jur. 2d, Equity § 103 (2008) .........................................................................23

Black's Law Dictionary (10th ed. 2014) .......................................................................23

Federal Rule of Civil Procedure 12(b)(1) ......................................................................5

Federal Rule of Civil Procedure 12(b)(6) ......................................................................6

Miss. Code § 79-10-67(2) ...........................................................................................11

Restatement (Second) of Agency § 261 .......................................................................15

Restatement (Second) of Torts § 876 ..........................................................................20

Securities Exchange Act § 12(a)(1) .............................................................................20

Securities Exchange Act § 3(4) ...................................................................................19

## INTRODUCTION

After Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. ("Baker Donelson") moved to dismiss the original Complaint, the Court on October 1, 2019 directed the Receiver to file an amended complaint, giving her an opportunity "to present her 'best case' before a dispositive ruling[.]" ECF No. 49.  The Court's Order invited the Receiver to "add anything to the complaint that she learned in the last nine months" and "to amend any of her theories in light of recent Fifth Circuit decisions." *Id.*  Yet the Receiver's Amended Complaint ("AC"), ECF No. 57, makes no new factual allegations concerning Baker Donelson, and the Receiver's legal theories are unchanged.  The Receiver's "best case," in other words, is her original case – and it does not state a claim.

In the Amended Complaint, as in the original one, the Receiver seeks to hold Baker Donelson liable for the Ponzi scheme perpetrated by Madison Timber Properties, LLC ("Madison Timber") and Arthur Lamar Adams ("Adams").  It remains undisputed that: (a) Baker Donelson did not represent Madison Timber or Adams; (b) Baker Donelson did not perpetrate the Ponzi scheme; (c) no one at Baker Donelson knew Adams was engaged in fraud; and (d) Baker Donelson never profited or stood to profit from the scheme – not by a single penny.  Nothing in the Amended Complaint alleges otherwise.

The Amended Complaint should be dismissed for multiple reasons:

I.        As an initial matter, jurisdiction is lacking because the Receiver lacks standing to bring her claims.  The Receiver stands in the shoes of Madison Timber and Adams, and she sues on their behalf to recover "damages" in the form of an alleged increase in their outstanding liabilities to third parties.  Under Fifth Circuit law, an estate's unpaid liabilities to third parties are injuries to those third parties – not to the estate.  The Receiver therefore cannot sue, on behalf of Madison Timber, for injuries to the investors.

II.     Assuming *arguendo* that the Receiver has standing to sue, the Amended Complaint also should be dismissed for failure to state a claim against Baker Donelson.  The Receiver's only purported basis for suing Baker Donelson is that two individuals who work at the law firm, Brent Alexander and Jon Seawright, also operated an *unaffiliated* personal LLC, Alexander Seawright Timber Fund I, LLC, which lent its members' funds to Madison Timber.  But the Receiver does not allege, because she cannot allege, that Baker Donelson owned or controlled this LLC or profited from it in any way.  Baker Donelson is not in the investment business, much less the timber business.  Alexander and Seawright operated their LLC separately from the business of the law firm, and the Amended Complaint alleges nothing to the contrary.  Nor does it allege a single fact about any other person at Baker Donelson.  Whatever Alexander's or Seawright's responsibility allegedly may be – and the Receiver does not allege that they knew Madison Timber was fraudulent – there is no basis to hold Baker Donelson liable.

III.     In addition, the Amended Complaint fails to state a claim on the elements of the causes of action it asserts:  *First*, it alleges no facts that could support a finding that Baker Donelson had *actual knowledge* of Adams's fraud, an essential element of the Receiver's claim for civil conspiracy.  *Second*, the same defect would defeat the Receiver's claim for aiding and abetting – if such a cause of action existed in Mississippi, which it does not.  *Third*, the Receiver's claim of "recklessness," "gross negligence," or "negligence" fails because the Receiver stands in the shoes of Madison Timber and Adams, who were not clients of Baker Donelson.  Under settled Mississippi law, a law firm owes no duty of professional care to non-clients absent rare circumstances not arguably present here.  That rule ensures that lawyers can exercise their duties to those who *are* their clients with uncompromised loyalty.

IV.     That the Receiver stands in the shoes of Madison Timber and Adams gives rise to another reason why the Amended Complaint should be dismissed:  The doctrine of *in pari delicto* bars tort claims brought on behalf of a primary wrongdoer against other alleged wrongdoers.  Receivers and trustees have no greater powers than the entities in receivership, which means this Receiver is subject to the same defenses that would have been available to Baker Donelson if Madison Timber and Adams were the plaintiffs.  To be sure, receivers may be shielded from *in pari delicto* when they assert *non-tort* causes of action, like fraudulent transfer claims (no such claims are alleged against Baker Donelson); but many courts hold otherwise when, as here, a receiver asserts *tort* claims.  The Mississippi courts have not spoken on this issue, but they would likely apply the traditional rule that a receiver inherits tort claims as she finds them, subject to all existing defenses.

The Court need not consider *in pari delicto* if it finds the Amended Complaint deficient because the Receiver lacks standing, or because Baker Donelson is not liable for the acts of Alexander and Seawright, or because the allegations do not establish the elements of a cause of action.  In all events, the Amended Complaint does not state a claim and should be dismissed.

### FACTUAL ALLEGATIONS[1]

Baker Donelson is a law firm based in Memphis, Tennessee, which employs more than 650 attorneys and public policy advisors around the country, including in its Jackson, Mississippi office.  Through its professionals, the firm provides legal and consulting services to a diverse set of clients.  The Amended Complaint does not allege, however, that Madison Timber and Arthur Lamar Adams were clients of Baker Donelson – because they were not clients.  *Cf.* AC ¶¶ 179–90.

_____

[1]  The Amended Complaint's factual allegations must be taken as true for purposes of this motion to dismiss.  Baker Donelson does not concede that any such allegations are true.

The Amended Complaint also does not allege that anyone at Baker Donelson had any contact with Adams or Madison Timber, with the exception of two individuals, Brent Alexander and Jon Seawright, who did business with Adams through an LLC that bears their names, Alexander Seawright Timber Fund I, LLC.  AC ¶ 77.  Jon Seawright is an attorney and shareholder in the firm, who works primarily on corporate law matters for healthcare clients. Brent Alexander is a non-lawyer political consultant who works primarily in healthcare policy.

According to the Amended Complaint, in 2011 Alexander and Seawright became acquainted with Adams, who offered an opportunity to lend money to Madison Timber.  *Id.* ¶ 73. They asked Adams about the potential risks to the timber stock and received assurances of an umbrella insurance policy on all tracts.  *Id.* ¶ 92.  They viewed the opportunity as posing little risk because it was secured by the land and timber deed.  *Id.* ¶ 73.  From time to time, Adams would present them with tranches of timber investments, for which they would locate lenders.  In exchange, they received certain loan origination fees.  *Id.* ¶¶ 75–77.  The Amended Complaint does not allege that Baker Donelson received any fees.  Nor does it allege that anyone at Baker Donelson other than Alexander and Seawright did anything wrong.  As to Alexander and Seawright, the Amended Complaint does not allege they knew Madison Timber was a Ponzi scheme.  It alleges instead that they missed "red flags" – e.g., that the returns were too stable and too high, and that the signatures on the deeds had been forged.  *See id.* ¶¶ 101–07.[2]

On May 11, 2018, "Adams pleaded guilty to the federal crime of wire fraud and 'admit[ted] to all of the conduct of the entire scheme and artifice to defraud.'"  AC ¶ 24 (quoting Plea Agreement, D.I. 11, *United States v. Adams*, No. 3:18-cr-00088 (S.D. Miss)).  In a separate

---

[2]  The Amended Complaint also alleges that Alexander and Seawright planned to expand their business with Madison Timber through a second LLC, Alexander Seawright Timber Fund II, LLC, but this fund never launched.  *See* AC ¶¶ 108–19.  The Amended Complaint does not allege that this LLC had any connection to the law firm either.

action, the SEC charged Adams with federal securities violations, and this Court appointed Alysson Mills (the "Receiver") as a federal equity receiver for Madison Timber and the Adams estate.  The Receiver has filed several lawsuits to collect for the benefit of investors funds that were fraudulently transferred from Madison Timber.  This lawsuit is different:  The Receiver seeks to impose tort liability on parties who she alleges permitted the scheme to grow, even if – as in Baker Donelson's case – there is no allegation that they received any payments from Madison Timber or were complicit in Adams's scheme.

The Amended Complaint names as defendants, in addition to Baker Donelson: Alexander, Seawright, and Alexander Seawright, LLC[3] (the "Alexander Seawright Defendants"); and Matt Thornton, Butler Advisory Services LLC, and Butler Snow LLP (the "Butler Snow Defendants").  The Receiver brings four counts against Baker Donelson:  civil conspiracy (Count I); aiding and abetting (Count II); "recklessness, gross negligence, and at a minimum negligence" (Count III); and negligent supervision and retention (Count VIII), and alleges that Baker Donelson is vicariously liable for the acts of Alexander and Seawright.  The Receiver brings other counts but *not* against Baker Donelson, including legal malpractice (Baker Donelson did not represent Adams or Madison Timber), fraudulent transfer (Baker Donelson received no payments as a result of the Ponzi scheme); and Mississippi's civil RICO statute.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(1), the Amended Complaint must plead facts sufficient to allege subject-matter jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  To survive a motion to dismiss under Rule 12(b)(6), the Amended Complaint

---

[3]  Alexander Seawright, LLC, a separate entity from Alexander Seawright Timber Fund I, LLC, allegedly also participated in the Madison Timber loans.  *See* AC ¶ 176.  Again, there is no allegation that this LLC had any connection to Baker Donelson.

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement extends to every essential element of each claim. *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008). Legal conclusions without well-pleaded facts do not suffice to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I.     THE RECEIVER LACKS STANDING.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982). There is no "controversy" where the plaintiff lacks standing. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).

The Receiver identifies as her basis for "standing" Baker Donelson's alleged "contribut[ion] . . . to the debts of the Receivership Estate." AC ¶ 6. Under the Fifth Circuit's recent decision in *Latitude Sols., Inc. v. DeJoria*, however, an estate's unpaid debts do not "injure" the estate and do not give the receiver Article III standing. 922 F.3d 690, 696–97 (5th Cir. Apr. 30, 2019), *cert. denied*, Case No. 19-340, 2019 WL 6107784 (Nov. 18, 2019).

In *DeJoria*, a clean-water company, LSI, entered into a contract with a third-party manufacturer, Jabil, Inc., to produce remediation equipment. 922 F.3d at 694. Jabil manufactured and delivered the equipment, but LSI failed to pay Jabil for it. When LSI later entered bankruptcy, Jabil became a creditor with a claim for $9.5 million in outstanding debt. The bankruptcy trustee sued the LSI officers who had arranged the contract. The trustee alleged

that the officers had operated LSI as an engine to perpetrate securities fraud against third parties, and that the purchase of equipment from Jabil was an effort to make the company appear legitimate; but the debt to Jabil allegedly caused LSI to collapse.  *Id*. at 697.  The trustee claimed that LSI had been injured through the increase in its balance-sheet debt and sought to recover the value of the outstanding liabilities.  The trustee prevailed at a jury trial, and the officers appealed from the $9.5 million judgment against them.  *Id.* at 695.

The Fifth Circuit reversed the judgment and held that the trustee lacked standing.  *Id.* at 698.  That is because Article III standing requires a plaintiff to have "suffered an 'injury in fact,'" *Lujan*, 504 U.S. at 560, "for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  But the unpaid debt "represent[s] Jabil's injury, not LSI's."  *DeJoria*, 922 F.3d at 696.  LSI actually benefitted from the exchange:  it received the equipment, which it later sold in bankruptcy, and it "did not pay the invoices" for that equipment.  *Id.*  Accordingly, the Fifth Circuit reasoned, LSI "benefitted and even had cash available for other needs."  *Id.*  The Fifth Circuit therefore reversed the district court's judgment on the jury verdict and rendered judgment for the defendants on that claim.  *Id.* at 700.  The trustee petitioned for rehearing and requested en banc review; both were denied.  *DeJoria*, Orders of May 31 and June 12, 2019, Case No. 18-10382.  The trustee then petitioned for certiorari to the U.S. Supreme Court; that too was denied.  *See* Case No. 19-340, 2019 WL 6107784 (Nov. 18, 2019).

While *DeJoria* concerned a bankruptcy trustee, its holding applies equally to equity receivers in federal securities cases.  *DeJoria* explained that "the receiver and bankruptcy trustee are similarly situated."  922 F.3d at 696.  Even more recently, in *SEC v. Stanford Int'l Bank, Ltd.* (*Lloyd's*), the Fifth Circuit emphasized the fundamental limitation of "the Receiver's standing: '[l]ike a trustee in bankruptcy . . . , an equity receiver may sue only to redress injuries to the

entities in receivership[.]'"  927 F.3d 830, 841 (5th Cir. June 17, 2019) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995)).  In *Lloyd's*, the Fifth Circuit reversed a district court's order approving a receiver's settlement agreement that would have extinguished claims held by third parties other than the receivership estate.  *Id.*

Before *DeJoria*, the Fifth Circuit had "not squarely addressed Article III standing under the circumstances presented in this case," 922 F.3d at 696, and some district courts had concluded that receivers or trustees could recover for the estate's increased debts to third parties. *See, e.g.*, *Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *4 (N.D. Tex. Dec. 17, 2014); *Janvey v. Adams & Reese, LLP*, 2013 WL 12320921, at *8 (N.D. Tex. Sept. 11, 2013); *SEC v. Cook*, 2001 WL 256172, at *2 (N.D. Tex. Mar. 8, 2001).  Those cases no longer are good law in the Fifth Circuit.

In contrast, the *DeJoria* court endorsed the reasoning in *Reneker v. Offill*, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009), which dismissed a similar claim on standing grounds.  *See DeJoria*, 922 F.3d at 696.  In *Reneker*, an SEC receiver sued a law firm that had represented the receivership entities, alleging that the firm's negligence allowed the entities "to continue their illegal [securities] sales . . . [and] thereby rendered [them] liable to third party investors in the sum of at least $36.5 million."  *Id.* (internal quotation marks omitted).  The Fifth Circuit agreed with the *Reneker* court that the receiver lacked Article III standing because "'[t]he Receivership Estate's financial inability to satisfy liabilities owed to investors as a result of securities-laws violations harm[ed] the investors,' not the receiver."  *DeJoria*, 922 F.3d at 696 (quoting *Reneker*, 2009 WL 804134 at *6); *see also Reneker v. Offill*, 2012 WL 2158733, at *6 (N.D. Tex. June 14, 2012) (after further proceedings, dismissing receiver's "professional negligence claim for lack of

standing to the extent it is based on liabilities incurred to defrauded investors or the increased amount of such liabilities").[4]

The Receiver's theory of injury in this case is precisely the theory that *DeJoria* rejects. The Receiver alleges that "Madison Timber would not have grown without Defendants' encouragement" and that "Defendants contributed . . . to the debts of the Receivership Estate to investors." AC at 2–3. The alleged "growth" came from "hundreds of new unwitting investors" who gave their capital to Madison Timber and are owed repayment. *Id.* ¶ 133. Each count of the Amended Complaint alleges as its corresponding injury "the Receivership Estate's liabilities today." *Id.* ¶¶ 134, 145, 156, 171, 188, 198.

After *DeJoria*, the Receiver lacks standing to sue. Madison Timber received the benefit of its bargain with investors when it obtained their funds. The company then received more than it bargained for when it misappropriated those funds and did not repay them. As the entity that committed the fraud and stole the investors' money, Madison Timber was the fraud's beneficiary, not its victim. Madison Timber's unpaid debts are injuries to the investors who are out the money; they are not injuries-in-fact to Madison Timber. *DeJoria*, 922 F.3d at 696. Just as the trustee in *DeJoria* could not sue to recover liabilities that "are still owed and have not yet been paid," *id.* at 695, the Receiver cannot sue to recover "the Receivership Estate's liabilities today." AC ¶¶ 134, 145, 156, 171, 188, 198.

The Receiver has argued that the question of standing is governed, not by *DeJoria*, but by the Fifth Circuit's recent opinion in *Zacarias v. Stanford Int'l Bank, Ltd*., 931 F.3d 382 (5th Cir. 2019), *opinion withdrawn and superseded on reh'g,* 2019 WL 6907376 (5th Cir. Dec. 19, 2019).

---

[4] The Receiver's theory in this case is more obviously meritless because, unlike the law firm in *Reneker*, Baker Donelson did not represent the receivership entity, Madison Timber, and had no duty to Madison Timber to prevent it from incurring liabilities to third parties. In any event, such debt is not an injury-in-fact and does not confer standing on the Receiver.

*See* ECF 46-1 at 7–10.  Not so.  While it is true that the majority of a divided panel in *Zacarias* accepted that a receiver could sue third parties for an "increase in . . . unsustainable liabilities resulting from [a] Ponzi scheme," 931 F.3d at 396–97, that language was dicta.  The question presented in *Zacarias* was whether the district court had jurisdiction "to bar claims not before the court" by enjoining future third-party claims as part of a receiver's settlement agreement.  *Id*. at 392–93.  The parties did not dispute that the receiver could sue for increased liabilities to the receivership estate, *see id*. at 396, and the panel in *Zacarias* did not distinguish or even cite *DeJoria*, which was controlling precedent at the time *Zacarias* was issued, and still is today.[5]

If the Fifth Circuit had wished to overrule *DeJoria*, it had an opportunity to do so when the losing party in *Zacarias* filed a petition for rehearing en banc.  Instead, the Fifth Circuit treated the petition as one for panel rehearing and issued a revised opinion, which also does not mention *DeJoria* and clarifies that it "address[es] only the effect of . . . bar orders enjoining third-party investors' claims"—not any issue of a receiver's standing to sue for increased debts to the receivership estate.  *Zacarias*, 2019 WL 6907376, at *12 (5th Cir. Dec. 19, 2019).

Finally, the Amended Complaint mentions that certain unnamed "investors have assigned their claims . . . to the Receivership Estate."  AC ¶ 8.  To the extent this is intended to be a basis for standing, it fails.  "[I]t is the burden of the party who seeks the exercise of jurisdiction in [its] favor, clearly to allege facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute."  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citations omitted).  The Receiver does not identify any assignors or offer a single allegation about their allegedly assigned claims.  She offers no basis to conclude that the assignors have any claim against Baker

---

[5] A later panel opinion cannot displace an earlier panel's holding.  *See Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991) ("In this circuit, one panel may not overrule the decision, right or wrong, of a prior panel in the absence of an intervening contrary or superseding decision by the court en banc or the Supreme Court.").

Donelson – not even an allegation that they dealt or communicated in any way with the firm or with the Alexander Seawright defendants.  That complete vacuum of facts does not state a claim based on an assignment.  *See Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*, 2009 WL 10676449, at *5 (W.D. Wash. Oct. 30, 2009) ("Plaintiff has failed to establish that it has standing to litigate the rights of the aggrieved Indonesian investors . . . .  In fact, Plaintiff's complaint nowhere mentions a single investor's name."), *aff'd*, 395 F. App'x 442 (9th Cir. 2010).[6]

## II.   BAKER DONELSON IS NOT RESPONSIBLE FOR THE ACTIONS OF ALEXANDER AND SEAWRIGHT.

The Receiver's entire case depends on holding Baker Donelson responsible for the acts of Alexander and Seawright.  This theory fails as a matter of law.  Baker Donelson is a professional corporation doing business in Mississippi.  AC ¶ 12.  By statute, the liability of a professional corporation is limited to the acts of its employees that are performed either "within the scope [1] of their employment or [2] of their apparent authority to act for the corporation[.]"  Miss. Code § 79-10-67(2).  The allegations concerning Alexander and Seawright satisfy neither condition.

### A.   Alexander's and Seawright's Lending Activities Were Outside the Scope of Their Employment with Baker Donelson.

"If an employee deviates or departs from his work to accomplish some purpose of his own not connected with his employment – goes on a 'frolic of his own' – the relation of master and servant is temporarily suspended."  *Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 489 (Miss. 2010) (internal quotation marks omitted).  "Some actions are so clearly beyond an employee's course and scope of employment that they cannot form the basis

---

[6]  *See also MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc*., 281 F. Supp. 3d 1278, 1283 (S.D. Fla. 2017) ("Here, Plaintiffs allege that they have valid assignment agreements from the [Medicare Advantage Organizations], but they plead no facts supporting that legal conclusion.  Plaintiffs fail to allege the identity of the MAOs whose reimbursement rights they claim to own, the dates of the assignments, or the essential terms . . . Plaintiffs have failed to show that they have suffered an injury in fact, and therefore they lack standing.").

for a claim of vicarious liability, as a matter of law." *Children's Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 935 (Miss. 2006).  The Mississippi Supreme Court in *Seay* applied these principles to the conduct of (coincidentally) a shareholder of Baker Donelson, granting summary judgment to the law firm where the shareholder's actions – an alleged adulterous affair with an alleged client's spouse – were not in furtherance of the firm's practice of law and were not approved by Baker Donelson.  42 So. 3d at 489.  While the plaintiff claimed that he relied on the lawyer's legal advice, the Court emphasized that Baker Donelson had obtained no benefit from the shareholder's wrongdoing, and that the affair did not relate to the attorney-client relationship.  *Id.*

*Seay*'s reasoning compels dismissal here, because the Amended Complaint's allegations do not plausibly demonstrate that Alexander and Seawright were acting within the scope of their employment at Baker Donelson.  Alexander and Seawright worked as, respectively, a lobbyist and a lawyer at Baker Donelson.  AC ¶ 72.  The Receiver does not allege, however, that Madison Timber or Adams sought or received legal advice from Seawright or public-policy advice from Alexander, or that any of the wrongdoing attributed to Alexander or Seawright occurred in the course of providing such services to anyone.  Rather, Alexander and Seawright are alleged to have missed "red flags" in the course of managing loans through their separate LLC.

Reading their full website biographies, as the Court is permitted to do on a motion to dismiss,[7] demonstrates that investment management is not part of Alexander's or Seawright's job at Baker Donelson.  Brent Alexander is employed as a lobbyist and public-policy consultant working primarily "in health care, on behalf of health care providers and related service industries."  Ex. A (Website) at 2.  Jon Seawright is a lawyer who advises and represents firm

---

[7] "When a plaintiff quotes from a document used as a foundation for allegations in the complaint," *see* AC ¶ 84, "the Court may examine the entire document to review a motion to dismiss." *Thornton v. Micrografix, Inc.*, 878 F. Supp. 931, 933 (N.D. Tex. 1995).

clients "with a particular focus on issues unique to community and non-profit hospitals" and an emphasis on "new market tax credits . . . and historic tax credits[.]"  Ex. B (Website) at 2.

The Amended Complaint's suggestions to the contrary are based entirely on misleading partial quotations from the website.[8]  *See* AC ¶ 84.  Alexander supposedly has "a 'rapidly growing' practice in 'advising venture capital and related investors.'"  *Id.*  The quoted sentence does not end with a period after "investors."  It actually says that Alexander advises "venture capital and related investors *on public policy issues*" – not on their investments.  Ex. A at 2.  Seawright supposedly has "'extensive experience' in business development and capital formation."  AC ¶ 84.  That quotation omits the immediately preceding words, which explain that Seawright provides legal advice on "*structuring of tax incentives for* business development and capital formation[.]"  Ex. B at 2.  Interpreting the tax code and structuring tax incentives are legal services, not the investment services the Amended Complaint would suggest.

The Mississippi Supreme Court in *Seay* cited the Restatement (Second) of Agency, emphasizing that "[c]onduct of a servant is *not* within the scope of employment if it is *different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.*"  42 So. 3d at 488 (emphases in original).  The lawyer's conduct was outside the scope of his employment because it "was not in any way related to [a legal] representation" and "not motivated by a desire to benefit" the firm.  *Id.* at 489 (internal quotation marks omitted).  The same is true in this case.  Madison Timber and Adams were not clients of Baker Donelson.  Baker Donelson did not profit from Madison Timber or Adams; the firm had no business relationship with them whatsoever.  Alexander and Seawright dealt with Madison Timber through a separate legal entity, Alexander Seawright Timber Fund I, LLC.

---

[8] Although Baker Donelson pointed out the misleading nature of these quotations in its original motion to dismiss, *see* ECF No. 29 at 6–7, the Receiver's Amended Complaint repeats them.

Baker Donelson has no ownership interest in the LLC, exercised no control over it, and received no benefit from it.  The Receiver concedes this.[9]

The separateness of the Alexander Seawright Defendants' conduct from Baker Donelson stands in contrast to the Amended Complaint's allegations about the Butler Snow Defendants. Unlike Baker Donelson, Butler Snow allegedly had "attorney-client relationships with Adams and Madison Timber[.]"  AC ¶ 69.  Where Alexander and Seawright acted through personal LLCs, "Butler Snow launched Butler Snow Advisory Services, [as] 'a wholly owned subsidiary that provides non-legal business advice.'"  *Id.* ¶ 41.

### B.  The Amended Complaint Does Not State an "Apparent Authority" Claim.

The Receiver claims that even if Alexander and Seawright did not have actual authority to act for Baker Donelson in their Madison Timber-related activities, they had *apparent* authority.  This theory does not rescue the Amended Complaint from dismissal, both because (1) if anyone could have been misled by an appearance of authority, it was not Adams or Madison Timber, in whose shoes the Receiver stands; and (2) Alexander and Seawright had no more "apparent" than "actual" authority to bind the firm in investment-management matters – Baker Donelson is a law firm, not an investment management organization.  *See* AC ¶ 84.

Apparent authority is "authority that the principal has by words or conduct held the alleged agent out as having."  *Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc.*, 928 So. 2d 856, 864 (Miss. 2006).  It requires a "showing of (1) acts or conduct of the principal indicating the agent's authority, (2) reasonable reliance upon those acts by a third person, and (3) a detrimental change in position by the third person as a result of that reliance."  *Christian Methodist Episcopal Church v. S & S Constr. Co., Inc.*, 615 So. 2d 568, 573 (Miss. 1993).

---

[9] *See* ECF No. 35 at 2 ("Yes, [Alexander and Seawright] formed a separate LLC for their investment fund and named it after themselves[.]").

Apparent authority must be assessed "from the point of view of the third person" who is suing

the principal.  Restatement (Second) of Agency § 261, cmt. a.

The Amended Complaint alleges that "*Investors* reasonably believed that their investment

in Madison Timber, through Alexander and Seawright's fund, was backed and promoted by, and

had been vetted by, Baker Donelson."  AC ¶ 82 (emphasis added).[10]  But the Receiver asserts the

claims of Madison Timber and Adams, and apparent authority must be assessed from *their*

perspective.  The Amended Complaint does not allege that Madison Timber or Adams believed

Alexander and Seawright were acting on behalf of Baker Donelson, far less that they relied on

any such mistaken belief or that such reliance would be reasonable.  *See Morgan v. MML Inv'rs*

*Servs., Inc.*, 226 So. 3d 590, 598 (Miss. Ct. App. 2017) (reliance was unreasonable where

plaintiff "did not pay the funds to [the principal;] . . . never received any receipt, contract,

statement, or other documentation from them[; and where the agent] never even said that the

investments would be with or through [the principal]").  To the contrary, Madison Timber and

Adams were engaged in fraud and presumably did not care whether Baker Donelson supported

the transactions as long as they got the money from Alexander Seawright Timber Fund I, LLC.[11]

The Amended Complaint also does not state a claim for vicarious liability because it does

not allege any conduct by Baker Donelson that indicated Alexander's or Seawright's authority to

act for the firm in recommending the Madison Timber transactions.  "Apparent authority of an

agent only binds the principal when the plaintiff can show '*acts or conduct of principal*

_____

[10]  *See also id.* ¶ 74 (alleging Seawright told an investor his funds could be run through Baker
Donelson's escrow account); ¶ 78 (alleging Alexander told investors Baker Donelson attorneys
invested); ¶ 84 (alleging they "referred potential investors" to firm website); ¶ 92 ("Investors
were led to believe . . . [each investment] was backed by Baker Donelson's reputation.").

[11]  As discussed above, to the extent the Receiver may purport to sue on assigned claims, she has
not alleged anything about the assignors or their claims.  She has not alleged that any assignor
even communicated with Baker Donelson much less relied on a mistaken belief that Alexander
and Seawright were acting for Baker Donelson.

indicating agent's authority[.]'" *Forest Hill Nursing Ctr., Inc. v. McFarlan*, 995 So. 2d 775, 781 (Miss. Ct. App. 2008) (emphasis in original) (quoting *McFarland v. Entergy Miss., Inc.*, 919 So. 2d 894, 902 (Miss. 2005)).  Absent some indication by Baker Donelson that Alexander and Seawright were agents of Baker Donelson for the specific purpose on which Madison Timber allegedly relied – i.e., for investment services – apparent authority is lacking.  *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1160 (Miss. 2010) (no apparent authority where "[t]he record is devoid of any action on the part of [the principal] indicating that [the putative agent] was her agent for the purpose of making health-care decisions").  An employer's indication that an agent is affiliated with the business – here, hosting Alexander's and Seawright's biographies on the firm website – therefore does not confer authority outside the scope of the agent's employment. *See McFarland*, 919 So. 2d at 902 ("not reasonable . . . to assume" that use of a company utility vehicle conferred apparent authority to repair power lines); *Mississippi Bar v. Thompson*, 5 So. 3d 330, 337 (Miss. 2008) (paralegal lacked apparent authority to create client relationship).

Because conduct by the *principal* is required, it is not enough for the Amended Complaint to allege that the putative *agents*, Alexander and Seawright, referred to their affiliation with Baker Donelson.  *McFarlan*, 995 So. 2d at 781–82 (insufficient that agent "held herself out" as authorized because "the acts or conduct indicating the authority of the agent must be made by the principal").  In any event, none of Alexander's or Seawright's alleged statements about Baker Donelson say that the firm stood behind the Madison Timber loans.  *See supra* n.10.

### C.    The Amended Complaint Does Not State a Claim for Negligent Supervision and Retention (Count VIII).

The Amended Complaint also attempts to hold Baker Donelson liable for Alexander's and Seawright's conduct through a claim that Baker Donelson negligently retained and supervised them in their employment.  AC ¶¶ 191–200.  This claim fails for the same reasons as

the vicarious liability theory:  Under Mississippi law, "employers do not have a duty to supervise their employees when the employees are off-duty or not working," especially where the employer gains no "corporate benefit therefrom."  *Seay*, 42 So. 3d at 489 (internal quotation marks omitted).  Because Alexander's and Seawright's Madison Timber-related activities were outside the scope of their employment, the firm was under no duty to supervise them.  *See also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 491 (3d Cir. 2013) (dismissing negligent supervision claim where employee operated a Ponzi scheme; employer has no duty "to discover, at its peril, the fraudulent machinations in which [employee] was involved outside the scope of his employment"); *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994) (applying Mississippi law, "[e]mployers also are not liable for failure to supervise when the employee engages in independent criminal conduct").

But even assuming Baker Donelson were under such an obligation, the Amended Complaint does not state a claim for breach.  "A plaintiff must prove the defendant had either actual or constructive knowledge of an employee's incompetence or unfitness before the employer will become liable for the negligent hiring or retention of an employee who injures a third party."  *Parmenter v. J & B Enters., Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (internal quotation marks omitted).  The Receiver alleges that "[i]n view of the numerous red flags described in this complaint, . . . Baker Donelson knew or should have known of [its] agents' incompetence or unfitness."  AC ¶ 194.  But the only alleged "red flags" are about Madison Timber – e.g., uniform high-yield profits, forged documents, etc.; *see id*. ¶¶ 101–07 – and Baker Donelson is not alleged even to have known about them.  There are no alleged "red flags" that speak to Alexander's or Seawright's competence or fitness to practice law or consulting.  Baker Donelson does not supervise its employees' personal business, and the Alexander-Seawright LLCs were just that:  Alexander's and Seawright's personal business.

III.   **THE AMENDED COMPLAINT'S CAUSES OF ACTION DO NOT STATE A CLAIM FOR RELIEF.**

The Receiver brings three additional causes of action against Baker Donelson:  civil conspiracy (Count I); aiding and abetting (Count II); and recklessness, gross negligence, and negligence (Count III).  The Court should dismiss each of these counts because the Amended Complaint does not state a claim.  *First*, each count presumes that Alexander and Seawright were acting for the firm in connection with the Madison Timber loans, which is incorrect for the reasons discussed in Part II above.  *Second*, as discussed below, these counts should be dismissed against the law firm no matter how the Court resolves the imputation question.

A.   **The Amended Complaint Does Not State a Claim for Civil Conspiracy (Count I).**

The essential elements of civil conspiracy are "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a proximate result."  *Harris v. Town of Woodville*, 196 So. 3d 1121, 1131 (Miss. Ct. App. 2016) (internal brackets omitted).

The Amended Complaint does not state a conspiracy claim because it does not allege that anyone at Baker Donelson, including Alexander or Seawright, knew that Madison Timber was a Ponzi scheme.  The Receiver contends only that Alexander and Seawright missed red flags.  AC ¶ 101.  "For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement."  *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013).  Under settled law, therefore, the Receiver is wrong to argue that "Defendants need not have known that Madison Timber was a Ponzi scheme to unlawfully conspire with Adams," AC ¶ 130.  *See also Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 520 (5th Cir. 2018) (civil conspiracy requires proof that conspirator

"knew of [the] fraudulent scheme").  Absent such knowledge, it is also implausible to allege the other central conspiracy element: that Baker Donelson intentionally *agreed* to the illegal scheme.

Aside from "red flags," the Receiver offers one other allegation in support of her "actual knowledge" claim:  that "Alexander and Seawright falsely represented that they personally inspected the timber and 'mill contracts,'" when "there was no timber and were no 'mill contracts' to inspect."  AC ¶ 130.  That inference is a non sequitur.  Failing to read a document does not mean one knows the document does not exist or that the transaction is a Ponzi scheme.

The Receiver also has no viable conspiracy claim based on her allegations that Alexander and Seawright (i) operated without a broker's license and (ii) sold unregistered securities.  AC ¶ 128.  Civil conspiracy requires that the plaintiff allege a viable underlying tort.  *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002).  The cause of action "cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action."  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 790 (3d Cir. 1999).  Where the Receiver "could not sue an individual defendant for an alleged violation of the [statute], it follows that [she] cannot invoke the mantle of conspiracy to pursue the same cause of action against a group of defendants."  *Id.* at 789.  With respect to licensure, the Receiver alleges that a license is required under Section 3(4) of the Securities Exchange Act, *see* AC ¶ 98, but cites no statutory provision that would confer a private right of action for such a violation.  With respect to registration, "only a *purchaser* of the unregistered security may sue" for a registration violation under Section 12(a)(1) of the Securities Act.  *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 654 (D.N.J. 2009) (citing *Pinter v. Dahl*, 486 U.S. 622, 644 (1988)).  Madison Timber and Adams were not the purchasers of the alleged securities.

All of the above applies to Alexander and Seawright, but if their conduct is not imputed to Baker Donelson, the conspiracy claim should be dismissed for the additional reason that the Amended Complaint alleges no facts showing that *anyone* at the firm entered into any agreement concerning Madison Timber, or committed any overt acts in furtherance of Adams's scheme.

### B. The Amended Complaint Does Not State a Claim for Aiding and Abetting (Count II).

The Court should dismiss Count II because Mississippi law does not recognize a cause of action for civil aiding and abetting. The Receiver cites Section 876(b) of the Restatement (Second) of Torts for the proposition that "a defendant is liable if he 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" AC ¶ 138. The Receiver cites no Mississippi statute or case because "[n]o Mississippi court has ever recognized any of the subsections of the Restatement (Second) of Torts § 876 as viable causes of action," and "no Mississippi court has recognized a claim for civil aiding and abetting." *In re Evans*, 467 B.R. 399, 409 (Bankr. S.D. Miss. 2011).

Assuming *arguendo* that an aiding and abetting cause of action exists, the Amended Complaint does not state a claim because, again, neither Alexander, Seawright, nor anyone at Baker Donelson is alleged to have known that Madison Timber was a Ponzi scheme. The Restatement provides that a defendant is liable only if he "*knows* that the other's conduct constitutes a breach[.]" Restatement (Second) of Torts § 876(b); AC ¶ 138. Allegations that a defendant "should have known about the dangers" of an alleged confederate's conduct fall short of establishing that the defendant "knew about conduct constituting a conspiracy[.]" *Dickens v. A-1 Auto Parts & Repair, Inc.*, No. 1:18-cv-162-LG-RHW, 2018 WL 5726206, at *3 (S.D. Miss. Nov. 1, 2018); *Litson-Gruenber v. JPMorgan Chase & Co.*, 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009) (dismissing claims in a Ponzi-scheme case because "pleading based on an

20

allegation the defendant 'knew or should have known' is insufficient" for actual knowledge).

Courts in those jurisdictions that recognize civil liability for aiding and abetting routinely dismiss

claims based on "red flags" like the Receiver alleges here.  Consistent with the "universal rule in

this country," "banks, lawyers, brokerage houses, [or] accountants" are not liable for aiding and

abetting based on "red flags, smoke, and other irregularities[.]"  *El Camino Res., LTD. v.*

*Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 907–08 (W.D. Mich. 2010) (collecting authority),

*aff'd*, 712 F.3d 917 (6th Cir. 2013); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006)

("red flags" were "insufficient to establish a claim for aiding and abetting fraud").

Nor does the Receiver's allegation that Defendants "knew that Adams owed Madison

Timber fiduciary duties" support a claim for aiding and abetting.  AC ¶ 140.  Knowledge of

Adams's fiduciary duties to Madison Timber does not plausibly establish actual knowledge that

Adams had *breached* such duties by operating a Ponzi scheme.  *See Lerner*, 459 F.3d at 294 ("A

claim for aiding and abetting a breach of fiduciary duty requires . . . that the defendant

knowingly induced or participated in the breach[.]") (quotation omitted).

## C. The Amended Complaint Does Not State a Claim for "Recklessness," "Gross Negligence," or "Negligence" (Count III).

"It is quite elementary that there cannot be a tort without a breach of a legal duty."

*Savage v. Prudential Life Ins. Co. of Am.*, 121 So. 487, 489 (Miss. 1929).  Lawyers owe

"absolute and uncompromised" duties to their clients.  *Great Am. E & S Ins. Co. v. Quintairos,*

*Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 426 (Miss. 2012).  But the Mississippi Supreme

Court has strictly limited the scope of an attorney's obligations to *non-clients*.  *Id.* at 425–26

(declining to adopt a regime that would hold attorneys "liable for all foreseeable harm . . . to

nonclients").  This ensures that a lawyer's absolute obligation to her clients is not compromised

by duties to non-clients.  *Id.*  Mississippi recognizes only narrow exceptions to this rule, in

certain circumstances where a non-client foreseeably relies on the attorney's work. *Century 21 Deep S. Props., Ltd. v. Corson*, 612 So. 2d 359, 373–74 (Miss. 1992); *see also, e.g.*, *Great Am. E & S Ins. Co.*, 100 So. 3d at 425 (permitting suit by non-client because title lawyers "are fully aware that their work will be relied upon by subsequent purchasers").

Baker Donelson is accused of professional negligence – that it breached a duty to Madison Timber "to discover Adams's fraud" by virtue of the "advantageous position" it occupied as the law-firm employer of Alexander and Seawright. AC ¶ 152. Under the well-established law cited above, there was no such duty. The Receiver does not allege that Adams or Madison Timber were clients of the firm – they were not. Baker Donelson is not alleged to have performed any professional work for Madison Timber, nor any work for another client on which Madison Timber relied. There is no authority under Mississippi law, or any other law, that would impose a duty on a law firm to monitor the conduct of non-client third parties, much less a duty to discover a criminal fraud that the wrongdoer went to great lengths to disguise.

Any claim of "ordinary" negligence would also fail because Baker Donelson owed Adams and Madison Timber no duty of "ordinary" care to prevent their Ponzi scheme. The law does not impose duties on citizens to stop tortious conduct. *See, e.g.*, *Cuyler v. United States*, 362 F.3d 949, 954 (7th Cir. 2004) ("no common law duty to warn or rescue"). And as *the perpetrators* of the conduct, Adams and Madison Timber certainly cannot claim a duty owed *to them*. *See, e.g.*, *Oden v. Pepsi Cola Bottling Co.*, 621 So. 2d 953, 954–55 (Ala. 1993) (thief cannot recover in tort for injury while stealing); *Amato v. United States*, 549 F. Supp. 863, 867 (D.N.J. 1982) (criminal cannot recover for injury during robbery on theory that "the government was negligent in not arresting [him] sooner"), *aff'd*, 729 F.2d 1445 (3d Cir. 1984). In the absence of an attorney-client duty of care, the Receiver's claim is untenable.

## IV.    *IN PARI DELICTO* BARS THE RECEIVER'S CLAIMS.

Under Mississippi law,[12] a plaintiff who is *in pari delicto* with the defendant may not recover.  *Sneed v. Ford Motor Co.*, 735 S. 2d 306, 308 (Miss. 1999) ("a wrongdoer is not entitled to compel contribution from a joint tortfeasor . . . if [they] are *in pari delicto*").  The *in pari delicto* doctrine enforces the longstanding equitable "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing."  *In Pari Delicto Doctrine*, Black's Law Dictionary (10th ed. 2014).  The doctrine "applies where [i] the plaintiff is equally or more culpable than the defendant or [ii] acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction."  *Latham v. Johnson*, 262 So. 3d 569, 582 (Miss. Ct. App. 2018) (citing 27A Am. Jur. 2d, Equity § 103, p. 641 (2008)), *cert. denied*, 260 So. 3d 798 (Miss. Jan. 24, 2019).  At the motion to dismiss stage, an affirmative defense like *in pari delicto* bars recovery where the defense is established "on the face of the complaint."  *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).

### A.    The Receiver Stands in the Shoes of the Most Culpable Parties, Madison Timber and Adams.

As discussed above, the Receiver is suing on the claims of Madison Timber and Adams, as she "has standing to assert only the claims of the entities in receivership and not the claims of the entities' investor-creditors."  *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013).  The Fifth Circuit reiterated this principle in *Lloyd's*: "[l]ike a trustee in bankruptcy . . . , an equity receiver may sue only to redress injuries to the entities in receivership[.]"  927 F.3d at 841 (quoting *Scholes*, 56 F.3d at 753).[13]

---

[12]  The Receiver's claims are all brought under Mississippi law, which therefore also governs the *in pari delicto* defense.  *Knauer v. Jonathon Roberts Fin. Grp., Inc.*, 348 F.3d 230, 235 (7th Cir. 2003) (court "must look to [the relevant state] law to determine the rights of the receiver").

[13]  *See also* Order Appointing Receiver, D.I. 33, *SEC v. Adams*, No. 3:18-cv-00252 (S.D. Miss.); *Hymel v. FDIC*, 925 F.2d 881, 883 (5th Cir. 1991) ("[T]he FSLIC as receiver 'stands in the shoes

Madison Timber and Adams have no viable tort claims against defendants, like Baker Donelson, who allegedly failed to discover their fraud.  On the face of the Amended Complaint, the defense of *in pari delicto* bars such claims as a matter of law.  "Madison Timber was a Ponzi scheme[.]"  AC ¶ 127.  Adams operated Madison Timber for more than ten years, during which time he purported to purchase timber from Mississippi landowners and resell it to lumber mills for a profit.  *Id.* ¶ 16.  But "[t]here was no timber and no proceeds from sales of timber."  *Id.* at 2.  Madison Timber conducted no legitimate business – it was created solely as a vehicle for fraud.  *See id.* ¶¶ 20, 127.  Outside of the Ponzi scheme, "Madison Timber had no revenues whatsoever[.]"  *Id.* ¶ 20.  Adams "pleaded guilty to the federal crime of wire fraud" and "'admit[ted] to all of the conduct of the entire scheme and artifice to defraud.'"  *Id.* ¶ 24 (quoting Plea Agreement, D.I. 11, *United States v. Adams*, No. 3:18-cr-00088 (S.D. Miss)).

Beyond question, Adams's and Madison Timber's wrongdoing ("*delicto*") was at least equal ("*in pari*") to anything alleged against Baker Donelson.  In contrast to Adams's active and criminal fraud, the Amended Complaint alleges that Baker Donelson is responsible for the conduct of the Alexander Seawright Defendants, who allegedly missed "red flags" in the course of introducing potential lenders to Adams.  Where two parties allegedly are responsible for a tort, the "active wrongdoer" is more at fault than the "passive wrongdoer."  *Long Term Care, Inc. v. Jesco, Inc.*, 560 So. 2d 717, 721 (Miss. 1990).  In any event, there can be no dispute that Adams's fault was at least "equal" to anything alleged against Baker Donelson.[14]

---

of the insured institution.'") (citation omitted); *Troelstrup v. Index Futures Grp., Inc.*, 130 F.3d 1274, 1276 (7th Cir. 1997) (receiver appointed for wrongdoer's estate "has no possible claim against [a third-party brokerage], or on behalf of the investors, the victims of the fraud, because he was not their receiver").

[14]  There also can be no dispute that Adams's fraud was within the scope of his relationship with Madison Timber, as Adams allegedly operated Madison Timber as a pure Ponzi scheme with no legitimate business activities.  AC at 2.

**B.      The Receiver Cannot Claim an "Innocent Successor" Exception.**

While Mississippi courts have not yet spoken on this question, some states recognize a limited exception to the *in pari delicto* doctrine for so-called "innocent successors."  *See, e.g.*, *Scholes*, 56 F.3d at 754–55 (applying Illinois law); *Janvey*, 712 F.3d at 191 (discussing *Scholes* and applying Texas law).  Where the exception is available, it permits a receiver "to assert the claims of a receivership entity against third-party recipients of the entity's assets that have been fraudulently transferred by the principal of the Ponzi scheme[.]"  *Janvey*, 712 F.3d at 191.

An innocent-successor exception does not apply to the Receiver's tort claims for two reasons:  *First*, Mississippi has never recognized the exception and would not do so in these circumstances.  The Mississippi Supreme Court has recognized the doctrine of *in pari delicto* since at least 1840, *see Glidewell v. Hite*, 6 Miss. 110, 134 (Miss. Err. & App. 1840), without once excusing a corporation from its own fraud.  Since the Seventh Circuit first recognized the innocent successor rule in *Scholes* in 1995, that court has criticized and progressively narrowed it.  *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 599 (7th Cir. 2012).  Other courts in recent years have flatly refused to adopt the exception, including the highest court of New York in *Kirschner v. KPMG LLP*, 938 N.E.2d 941 (N.Y. 2010).  *Kirschner* rejected a litigation trustee's attempt to sue professional firms and evade the *in pari delicto* defense, reasoning that even after a fraudster has been removed, a corporation cannot foist liability for his conduct onto third parties that allegedly failed to prevent his fraud.  The court refused to permit "the interests of innocent stakeholders of corporate fraudsters [to] trump those of innocent stakeholders of the outside professionals who are the defendants in these cases."  *Id.* at 958.

*Second*, even where the exception is recognized, it typically applies to fraudulent transfer claims, or similar claims designed to recoup monies expended from the estate – not tort claims like the ones asserted against Baker Donelson in this case.  *Janvey*, 712 F.3d at 191 (claims

against "recipients of the entity's assets that have been fraudulently transferred"). Thus, in *Hays v. Pearlman*, 2010 WL 4510956 (D.S.C. Nov. 2, 2010), the court dismissed an action like this one, holding that "in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate a fraud may not seek recovery against an alleged third-party co-conspirator in the fraud." *Id*. at *5. The Receiver has not alleged a fraudulent transfer claim against Baker Donelson, nor could she, as Baker Donelson received no payments as a result of the Ponzi scheme. *Cf.* AC ¶¶ 159–63 (count for fraudulent transfer against other defendants).

To be sure, the Fifth Circuit has applied an innocent successor rule under Texas law, when considering a claim for conversion of a cashier's check, *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955 (5th Cir. 2012); and the district court in *Janvey* applied the exception to certain tort claims, again under Texas law, while at the same time recognizing that "*Scholes* is not universally accepted, especially outside the fraudulent transfer context." *Janvey v. Adams & Reese, LLP*, 2013 WL 12320921, at *3 (N.D. Tex. Sept. 11, 2013). The Seventh Circuit's post-*Scholes* opinion in *Knauer v. Jonathon Roberts Fin. Grp., Inc.* explains why the exception should apply only to fraudulent transfer claims and the like, not to tort claims:

> The key difference, for purposes of equity, between fraudulent conveyance cases such as *Scholes* and the instant case is the identities of the defendants. The receiver here is not seeking to recover the diverted funds from the beneficiaries of the diversions (e.g., the recipients of [the fraudster's] transfers in *Scholes*). Rather, this is a claim for tort damages from entities that derived no benefit from the embezzlements, but that were allegedly partly to blame for their occurrence. In the equitable balancing before us, we find *Scholes* less pertinent than the general Indiana rule that the receiver stands precisely in the shoes of the corporations for which he has been appointed.

348 F.3d 230, 236 (7th Cir. 2003). More recently, the Seventh Circuit has further limited *Scholes*, describing some of its most-quoted language as "dictum" and explaining that "*Scholes* should not be generalized beyond the law of fraudulent conveyances and preferential transfers."

26

*Peterson*, 676 F.3d at 599 (applying *in pari delicto* to claims by bankruptcy trustee for Ponzi scheme against third-party auditor).

The Mississippi Supreme Court likely would follow this clear trend in the caselaw and hold that appointing a receiver does not automatically nullify the well-established defense of *in pari delicto* in tort cases.  At a minimum, Mississippi would not apply an "innocent successor" rule in a case like this one, where Baker Donelson is not alleged to have been involved in Adams's fraud, nor to have derived any benefit from it.  Notably, the *Jones* court found the question of benefit important:  It declined to apply an *in pari delicto* defense, and distinguished *Knauer*, because in *Knauer* (as here, but unlike in *Jones*) "the defendants were neither directly involved in the embezzlements at issue nor benefitted from them."  666 F.3d at 968 n.12.

## V.     THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Despite the Court's express invitation "to add anything to the complaint that she learned in the last nine months," or "to amend any of her theories in light of recent Fifth Circuit decisions," ECF No. 49, the Receiver's Amended Complaint offers no new factual information and suffers from the same core defects as the original Complaint: the Receiver lacks Article III standing, Alexander and Seawright acted for their own personal business without any connection to or authority from Baker Donelson, Baker Donelson is not vicariously liable for acts outside the scope of employment, Baker Donelson (and Alexander Seawright) did not know Madison Timber was a Ponzi scheme, and the doctrine of *in pari delicto* bars the claims.  If there were facts to remedy these flaws, the Receiver would have alleged them by now.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (dismissal with prejudice proper where "a complaint alleges the plaintiff's best case").

The Amended Complaint should be dismissed with prejudice.

27

## CONCLUSION

Wherefore, premises considered, Baker Donelson respectfully requests that this honorable Court dismiss the Amended Complaint with prejudice and requests all further relief, both general and special, as mandated by the premises and as justice requires.

Dated this 20th day of December, 2019          Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC**

 /s/ Michael W. Ulmer

Michael W. Ulmer (MSB #5760)
James J. Crongeyer, Jr. (MSB #10536)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, MS  39205
Tel.:  (601) 965-1900
Fax:  (601) 965-1901
Email:  mulmer@watkinseager.com

Craig D. Singer (*pro hac vice*)
Benjamin W. Graham (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel.:  (202) 434-5000
Fax:  (202) 434-5029
Email:  csinger@wc.com

*Counsel for Defendant Baker, Donelson, Bearman, Caldwell & Berkowitz PC*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

  */s/ Benjamin W. Graham*  
Benjamin W. Graham

29