**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC** | **PLAINTIFF** |
| **vs.** | **CASE NO. 3:18-cv-866-CWR-FKB** |
| **BUTLER SNOW LLP; BUTLER SNOW ADVISORY SERVICES, LLC; MATT THORNTON; BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC; ALEXANDER SEAWRIGHT, LLC; BRENT ALEXANDER; and JON SEAWRIGHT** | **DEFENDANTS** |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FILED BY
ALEXANDER SEAWRIGHT, LLC AND BRENT ALEXANDER**

---

R. David Kaufman (MSB #3526)
Cody C. Bailey (MSB #103718)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
Email: dkaufman@brunini.com

*Counsel for Defendants Alexander Seawright,
LLC, Brent Alexander, and Jon Seawright*

**\*Oral Argument Requested**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS ....................................................................................4

STANDARD OF REVIEW ......................................................................................6

ARGUMENT ...........................................................................................................7

I.      The Receiver Lacks Standing to Bring Tort Claims Against the Alexander
        Seawright Defendants on Behalf of Adams and Madison Timber. ...................7

II.     Counts I, II, III, V, and VI of the Complaint Do Not State a Claim upon which
        Relief may be Granted against the Alexander Seawright Defendants. ..............10

        A.      The Court should dismiss Counts I, II, V, and VI because the Receiver has
                not sufficiently pled the required element that the Alexander Seawright
                Defendants *knew* Madison Timber was a Ponzi scheme. ......................11

                1.      The Complaint does not state a claim for civil conspiracy (Count
                        I). ..................................................................................................13

                2.      The Complaint does not state a claim for aiding and abetting
                        (Count II). .....................................................................................16

                3.      The Complaint does not state a claim for "violations of
                        Mississippi's Racketeer Influenced and Corrupt Organization Act"
                        (Count V). .....................................................................................17

                4.      The Complaint does not state a claim for "joint venture liability"
                        (Count VI). ....................................................................................18

        B.      The Court should dismiss the claims in Count III for "recklessness,"
                "gross negligence," or "negligence" because the Alexander Seawright
                Defendants did not owe any duty to Adams or Madison Timber. .........................20

III.    The Doctrine of *In Pari Delicto* Bars the Receiver's Claims against the Alexander
        Seawright Defendants in Counts I, II, III, V, and VI. ........................................23

IV.     The Receiver Cannot Pierce the Limited Liability Company Veil of Alexander
        Seawright to hold Brent Alexander Personally Liable. ....................................26

        A.      The Complaint does not allege that Adams looked beyond the LLC for
                performance. ....................................................................................28

B.    The Complaint contains no facts showing that Alexander Seawright flagrantly disregarded corporate formalities. ........................................................29

C.    The Complaint alleges no facts demonstrating that Alexander Seawright was a vehicle for fraud or that Brent Alexander used it for fraudulent means. ...........................................................................................................29

CONCLUSION .........................................................................................................................30

## INTRODUCTION

Alexander Seawright, LLC ("Alexander Seawright"), Brent Alexander ("Alexander"), and Jon Seawright ("Seawright")[1] previously moved to dismiss Counts I, II, III, V, and VI of the Receiver's original complaint. On October 1, 2019, the Court issued an order denying the motion without prejudice and directing the Receiver to file an amended complaint "to present her 'best case' before a dispositive ruling." [Doc. 49]. The Court's order stated that if the Receiver "wishes to add anything to the complaint that she learned in the last nine months, or wishes to amend any of her theories in light of recent Fifth Circuit decisions, now is the time." *Id.* Notwithstanding that invitation, the Receiver's Amended Complaint [Doc. 57] ("Complaint") adds *zero* new factual allegations to sustain her claims against the Alexander Seawright Defendants. Moreover, the Receiver did not alter any of her legal theories. For the reasons discussed below, the Court should dismiss the Receiver's claims in Counts I, II, III, V, and VI against the Alexander Seawright Defendants for lack of standing and for failure to state a claim.

It is true that Alexander Seawright coordinated loans from Alexander Seawright Timber Fund I, LLC ("Timber Fund I"), of which Alexander Seawright was a member, to Madison Timber Properties, LLC ("Madison Timber"). It is also true that in exchange for its work in coordinating the loans, Alexander Seawright received loan-origination fees from Madison Timber. But that was the extent of the Alexander Seawright Defendants' involvement with Arthur Lamar Adams ("Adams") and Madison Timber. The Alexander Seawright Defendants never were aware that Adams and Madison Timber were engaged in what federal prosecutors have described as a complex financial fraud. The Receiver still does not assert any facts

---

[1] Alexander Seawright and Brent Alexander will be collectively referred to as the "Alexander Seawright Defendants." The Receiver's Amended Complaint [Doc. 57] acknowledges that Jon Seawright ("Seawright") filed individual bankruptcy on November 3, 2019, automatically staying the Receiver's claims against him. *See* Complaint at ¶ 120–122. Accordingly, this Motion does not seek adjudication of any claims against Mr. Seawright individually, at this time.

demonstrating that the Alexander Seawright Defendants knew about the fraud or agreed to further the fraud—because they did not. Alexander and Seawright, like dozens of other sophisticated businesspersons and professionals, were duped by Adams and became victims of his fraudulent scheme. But they did not conspire with Adams; they did not aid or abet Adams; they did not enter into a partnership or joint venture with Adams; they did not owe any duty to Adams or Madison Timber; and they did not purposefully act to further Adams's fraud. The Complaint remains devoid of any facts supporting such claims.

The Receiver's Complaint sets forth six causes of action against the Alexander Seawright Defendants and separately alleges that Alexander and Seawright are "personally liable for payment of all damages or other relief awarded in favor of the Receiver and against Defendant Alexander Seawright." Complaint at ¶ 206. The six causes of action against the Alexander Seawright Defendants are:  civil conspiracy (Count I); aiding and abetting (Count II); "recklessness, gross negligence, and at a minimum negligence" (Count III); "violations of Mississippi's Fraudulent Transfer Act" (Count IV); "violations of Mississippi's Racketeer Influenced and Corrupt Organization Act" (Count V); and "joint venture liability" (Count VI). The Alexander Seawright Defendants' Motion to Dismiss seeks the dismissal with prejudice of every count and claim against them except for Count IV.

Before addressing the elements of the Receiver's claims, the Court should find that the Receiver lacks standing to bring her tort-based claims (Counts I, II, III, V, and VI) against the Alexander Seawright Defendants. As noted in the Alexander Seawright Defendants' original Motion to Dismiss, the Receiver stands in the shoes of Madison Timber and Adams, and she sues on their behalf to recover "damages" in the form of an alleged increase in the debts of the Receivership Estates to third parties. Under controlling Fifth Circuit law, the Receivership

Estate's unpaid liabilities to third parties are injuries to those third parties – not to the Estate. The Receiver therefore cannot sue, on behalf of Adams and Madison Timber, for injuries to third parties. And to the extent the Receiver purports to sue on assigned claims, she has not alleged anything about the assignors, their purported claims, or the scope of the assignments.

If the Court finds that the Receiver has standing to bring her tort-based claims, then the Court should dismiss Counts I, II, V, and VI of the Complaint against the Alexander Seawright Defendants because the Receiver failed to allege facts to demonstrate that the Alexander Seawright Defendants *actually knew* about the fraud perpetrated by Adams, much less that they *agreed* to participate in it. The Receiver's amendment makes clear that no such facts exist. Indeed, the only allegations in the *entire Complaint* regarding the Alexander Seawright Defendants' knowledge of Adams's fraud state:  (1) "In view of the numerous red flags described in this complaint, Defendants knew or should have known that Madison Timber was a Ponzi scheme;" and (2) "Defendants Alexander and Seawright falsely represented that they personally inspected the timber and 'mill contracts' underlying each investment—a factual impossibility because there was no timber and were no 'mill contracts' to inspect," which "give[s] rise to the strong inference that they knew Madison Timber was a Ponzi scheme." Complaint at ¶¶ 130, 131, 141, 142, 151, 168. In other words, the Receiver rests her claims in Counts I, II, V, and VI solely on conclusory allegations of "knew or should have known" and what she deems a "strong inference" of knowledge, which are insufficient as a matter of law.

Moreover, the Court should dismiss the Receiver's negligence claim in Count III of the Complaint because the Receiver has not alleged, and she cannot prove, that the Alexander Seawright Defendants owed any legal duty to Adams or Madison Timber, in whose shoes she stands, because no such duty exists as a matter of law.

3

Further, because the Receiver stands in the shoes of Adams and Madison Timber, the Court should dismiss Counts I, II, III, V, and VI of the Complaint against the Alexander Seawright Defendants pursuant to the doctrine of *in pari delicto*, which bars tort claims brought on behalf of a primary wrongdoer against other alleged wrongdoers. In other words, even if Alexander and Seawright were wrongdoers—which they are not—the Receiver stands in the shoes of the primary wrongdoers, Adams and Madison Timber. Under Mississippi law and the allegations of the Receiver's Complaint, Adams and Madison Timber cannot recover from the Alexander Seawright Defendants on the Receiver's tort claims.

Finally, the Receiver's claims in Counts I, II, III, V, and VI against Alexander must be dismissed because the Receiver has not alleged facts that would allow her to pierce the limited liability company veil of protection afforded by Alexander Seawright. Thus, the Court should deny the Receiver's request for declaratory judgment against Alexander individually.

## FACTUAL ALLEGATIONS

Jon Seawright and Brent Alexander formed Alexander Seawright to be a personal business and investment vehicle. Jon Seawright and Brent Alexander have always been the only members of Alexander Seawright.

Alexander Seawright formed Timber Fund I for the purpose of raising funds to be loaned by Timber Fund I to Madison Timber. Alexander Seawright was a member of Timber Fund I and its manager. Members of Timber Fund I contributed funds that were pooled together and loaned to Madison Timber by Timber Fund I pursuant to promissory notes. Under the terms of the notes, Madison Timber promised to pay back the loans with interest. As the manager of Timber Fund I

and for its work coordinating the loans, Madison Timber paid loan-origination fees to Alexander Seawright. Those fees are the subject of Count IV of the Receiver's Complaint.[2]

The Alexander Seawright Defendants were unaware that Adams and Madison Timber were using the loans from Timber Fund I to further a fraudulent scheme, and the Receiver does not allege facts demonstrating otherwise. Consistent with the Receiver's allegations, the Alexander Seawright Defendants believed that Madison Timber used lenders' money to purchase timber from landowners, sold the timber to lumber mills at a higher price, and repaid lenders their principal plus interest with proceeds of the timber sales. Complaint at ¶ 18.

The Alexander Seawright Defendants did in fact undertake meaningful evaluations of the loans being made from Timber Fund I to Madison Timber. Among other things, the Alexander Seawright Defendants investigated online tax and land records to verify the information was correct; they ensured the property deeds were notarized; they reviewed the purported agreements with timber mills; they inspected the tracts of land that were the subjects of property deeds via site visits or aerial photographs; and they talked to people who purported to know Adams to vet his reputation as a businessman. *Id.* at ¶¶ 94, 95. As the Receiver admits, the Alexander Seawright Defendants also asked about potential risks to the timber in the event of natural disasters, and they received assurances from Adams that all tracts were covered by an umbrella insurance policy. *Id.* at ¶ 92. The Receiver alleges that they also "sought a few referrals" from Butler Snow LLP "to validate Madison Timber." *Id.* at ¶ 61. The Alexander Seawright Defendants did not view the loans as highly risky because they were secured by land and timber deeds. *Id.* at ¶ 73. Of course, the deeds ending up being fraudulent, but the Alexander Seawright Defendants had no reason to suspect that because the deeds were notarized. *Id.* at ¶ 102.

---

[2] Those fees are not at issue in the Alexander Seawright Defendants' Motion to Dismiss, but the Complaint misstates the amount of fees that Alexander Seawright in fact received.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the Receiver bears the burden to plead facts sufficient to establish a justiciable case or controversy, including that she has standing to assert the claims she brings on behalf of the Receivership Estate. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341–42 (2006); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element" of standing, including "injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "'[S]tanding is not dispensed in gross.'" *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). "To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.*

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008).[3] "'Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.'" *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting 2A Moore's Federal Practice ¶ 12.07 at 12–91) (internal brackets omitted). And the Court should "'accept all *well-pleaded* facts as true'" but should not "'accept as true conclusory allegations or unwarranted deductions of fact.'" *Great Plains Trust Co. v. Morgan Stanley Dean & Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002) (emphasis added) (quoting

---

[3] Although the well-pleaded facts in the Complaint must be accepted as true for purposes of this Motion to Dismiss, the Alexander Seawright Defendants do not concede that any of the factual allegations are true and in fact are separately addressing the allegations in their Answer and Affirmative Defenses.

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "When considering a motion to dismiss for failure to state a claim . . . conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). A court should not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

## ARGUMENT

**I.    The Receiver Lacks Standing to Bring Tort Claims Against the Alexander Seawright Defendants on Behalf of Adams and Madison Timber.[4]**

The "issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006). Foremost among standing requirements is that the plaintiff must have suffered an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "We have made it clear time and time again that an injury in fact must be both concrete and particularized." *Spokeo*, 136 S. Ct. at 1548 (citing, among others, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)). To be "particularized," the "injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. The "'injury in fact' test requires . . . that the party seeking review be himself among the injured." *Id.* at 563 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)).

The Receiver attempts to bring tort claims against the Alexander Seawright Defendants on behalf of the Receivership Estate (Adams and Madison Timber) that are separate and apart

---

[4] The arguments surrounding the Receiver's lack of standing to bring her tort claims, and therefore the Court's lack of subject matter jurisdiction to adjudicate those tort claims, are also set forth in Baker Donelson's Motion to Dismiss and supporting Memorandum of Law. The Alexander Seawright Defendants hereby adopt such arguments, join in them, and incorporate them into this supporting memorandum as if fully set forth herein.

from her fraudulent transfer claims. As stated, Madison Timber paid loan-origination fees to Alexander Seawright, and those fees are the subject of Count IV of the Receiver's Complaint, which is not at issue in this Motion. While the Receiver has standing to bring her fraudulent transfer claims, standing "'is not dispensed in gross'" and must be demonstrated "'for each claim'" the Receiver makes and "'for each form of relief that is sought.'" *Town of Chester, N.Y.*, 137 S. Ct. at 1650 (quoting *Davis*, 554 U.S. at 734). The Receiver does not have standing to bring her separate tort claims because, apart from Madison Timber's payment of loan-origination fees, the Receivership Estate has not been injured by the Alexander Seawright Defendants.

The Receiver alleges that her basis for "standing" to bring tort claims is the Alexander Seawright Defendants' alleged "contribut[ion] . . . to the debts of the Receivership Estate." Complaint at ¶¶ 6, 134, 145, 156, 171, 178. Under the Fifth Circuit's recent decision in *Latitude Solutions, Inc. v. DeJoria*, however, an estate's unpaid debts do not "injure" the estate and do not therefore bestow Article III standing upon the Receiver. 922 F.3d 690, 696 (5th Cir. Apr. 30, 2019), *cert. denied*, Case No. 19-340, 2019 WL 6107784 (Nov. 18, 2019).

In *DeJoria*, the trustee for LSI's bankruptcy estate argued at trial that a $9.5 million debt owed by LSI to Jabil (an equipment manufacturer) was the result of securities fraud perpetuated by LSI's officers and therefore constituted an injury to the bankruptcy estate, even though Jabil actually manufactured and delivered the equipment at issue to LSI. 922 F.3d at 694–697. The trustee sought to recover from LSI's officers the $9.5 million debt owed by LSI to Jabil. The trustee prevailed at trial on that claim against LSI's officers, but the officers appealed. The Fifth Circuit reversed the trial court's judgment and held that the trustee lacked standing to bring that claim on behalf of LSI's bankruptcy estate because the estate was not injured. The Fifth Circuit held that the $9.5 million debt represented "Jabil's injury, not LSI's." *Id.* at 696. The Court

reasoned that LSI actually "benefitted" from receipt of the equipment, for which it never paid, and which it later sold through the bankruptcy proceedings. *Id.*[5]

*DeJoria* controls in this case, despite the fact that it concerned a bankruptcy trustee and not a receiver in a federal securities case. The Court in *DeJoria* explained that "the receiver and bankruptcy trustee are similarly situated." *Id.*; *see also SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir. June 17, 2019) (discussing "Receiver's standing" and reiterating that "'[l]ike a trustee in bankruptcy . . . an equity receiver may sue onl*y to redress injuries to the entities in receivership* . . . .'") (emphasis in original) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995)); *Reneker v. Offill*, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009) (cited favorably by *DeJoria* and holding that the receiver lacked Article III standing because "the only harm alleged is the Receivership Estate's inability to satisfy its liabilities").

The Receiver's theory of injury has been flatly rejected by the Fifth Circuit in *DeJoria*. The Receiver alleges "Madison Timber would not have grown without Defendants' encouragement" and "Defendants contributed . . . to the debts of the Receivership Estate to investors." Complaint at pp. 2–3. Pursuant to *DeJoria*, however, that theory of injury does not give the Receiver standing to bring tort claims against the Alexander Seawright Defendants. Adams and Madison Timber benefitted from their fraud—they kept the money that they fraudulently misappropriated and did not repay it to investors. Thus, the unpaid debts of Adams and Madison Timber do not constitute an injury to the Receivership Estate.

The Complaint mentions that certain unnamed "investors have assigned their claims . . . to the Receivership Estate." Complaint at ¶ 8. That also fails as a basis for standing. "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts

---

[5] The trustee petitioned for rehearing and requested en banc review, but both were denied. *DeJoria*, Orders of May 31 and June 12, 2019, Case No. 18-10382. The trustee also petitioned for certiorari to the U.S. Supreme Court, but that was denied. *See* Case No. 19-340, 2019 WL 6107784 (Nov. 18, 2019).

demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citations omitted). The Receiver does not identify any of the alleged assignors and she sets forth no allegations regarding the scope or terms of the purported assignments, including what claims were allegedly assigned. She offers no basis for a finding that the assignors have any claim against the Alexander Seawright Defendants. Accordingly, the purported assignments, and the dearth of facts related to them, do not create a basis for the Receiver's standing. *See Perkumpulan Inv'r Crisis Ctr. Dressel-WBG v. Wong*, 2009 WL 10676449, at *5 (W.D. Wash. Oct. 30, 2009) (plaintiff failed to establish standing to litigate rights of aggrieved investors because plaintiff's complaint failed to mention a single investor's name), *aff'd*, 395 F. App'x 442 (9th Cir. 2010).[6] Accordingly, the Court should dismiss the Receiver's tort claims for lack of standing.

## II.     Counts I, II, III, V, and VI of the Complaint Do Not State a Claim upon which Relief may be Granted against the Alexander Seawright Defendants.

The Court should dismiss Counts I, II, III, V, and VI of the Complaint against the Alexander Seawright Defendants because those Counts of the Complaint do not state a claim for which relief can be granted. Mississippi law applies to the Receiver's claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). It is "well-settled" that the Receiver's state law claims at issue here, including the fraudulent transfer claims, "are governed by the forum state in which the federal court is sitting." *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014) (citations omitted).

---

[6] *See also MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc*., 281 F. Supp. 3d 1278, 1283 (S.D. Fla. 2017) ("Plaintiffs allege that they have valid assignment agreements from the MAOs, but they plead no facts supporting that legal conclusion. Plaintiffs fail to allege the identity of the MAOs whose reimbursement rights they claim to own, the dates of the assignments, or the essential terms . . . Plaintiffs have failed to show that they have suffered an injury in fact, and therefore they lack standing.").

Allowing the Receiver to amend the Complaint did not cure its defects. The Alexander Seawright Defendants have produced to the Receiver in good faith all documents, emails, correspondence, text messages, and other information in their possession that might be relevant to the Receiver's claims. *See* Compl. ¶¶ 73, 74, 78, 80. And despite the Court giving the Receiver a second opportunity to "present her 'best case,'" the Receiver added no new factual allegations to the Complaint and again failed to state a claim against the Alexander Seawright Defendants for which relief could be granted. Indeed, if facts existed that would allow the Receiver to cure the defects discussed below, she would have alleged them. But the truth is the Receiver is fully aware that the Alexander Seawright Defendants (a) *did not know* that Adams was operating a Ponzi scheme, (b) *did not act with the purpose* of furthering the fraudulent scheme, and (c) *did not owe any legal duty* to Adams or Madison Timber. Moreover, the doctrine of *in pari delicto* legally bars the Receiver's claims, and the Receiver cannot pierce the limited liability company veil of Alexander Seawright to assert claims against Alexander. It is clear that the Receiver "can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) ("if a complaint alleges the plaintiff's best case, there is no need to remand" and dismissal with prejudice is proper). Accordingly, the Court should dismiss the claims in Counts I, II, III, V, and VI with prejudice.

A. **The Court should dismiss Counts I, II, V, and VI because the Receiver has not sufficiently pled the required element that the Alexander Seawright Defendants *knew* Madison Timber was a Ponzi scheme.**

Actual knowledge of Adams's fraud is a required element of the Receiver's claims in Counts I, II, V, and VI. First, the allegation that the Alexander Seawright Defendants "knew or should have known" Madison Timber was a Ponzi scheme due to purported "red flags" is the epitome of a "legal conclusion masquerading as factual conclusions" which should not "suffice

to prevent a motion to dismiss." *Fernandez–Montes*, 987 F.2d at 284.[7] In fact, the Complaint contains zero facts establishing the Alexander Seawright Defendants *actually were aware* Adams was operating a Ponzi scheme. As for the Receiver's claim that they *should have known* of the Ponzi scheme, the Complaint's "red flags" allegations are merely recitations of what the Receiver thinks the Alexander Seawright Defendants should have done in dealing with Adams. *See* Comp. at ¶ 102 ("Neither Alexander nor Seawright, nor anyone at Baker Donelson, ever called a landowner or checked a tract's title."); ¶ 103 ("Neither Alexander nor Seawright, nor anyone at Baker Donelson, ever called a mill."); ¶ 104 ("[N]either Alexander nor Seawright, nor anyone at Baker Donelson, questioned this requirement [to abstain from recording deeds]."); ¶ 105 ("The 'profit' that Adams promised . . . should have been a glaring warning sign"); ¶ 106 ("Neither Alexander nor Seawright . . . ever evaluated the investment in light of such [market] information."); ¶ 107 ("Seawright blindly passed on to investors the dubious explanation that mills shut down in December for OSHA inspections . . . .").[8] Those allegations do not set forth facts demonstrating the required knowledge element, and the statement that the Alexander Seawright Defendants "should have known" is nothing more than a legal conclusion.

---

[7] As previously noted, that the Receiver felt obliged to hedge her claim ("or should have known") underscores that she cannot in good faith allege the required actual knowledge. *Litson-Gruenber v. JPMorgan Chase & Co.*, 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009) (dismissing claims in Ponzi-scheme case because "pleading based on an allegation the defendant 'knew or should have known' is insufficient" for actual knowledge)).

[8] As previously asserted, "red flags" do not support an allegation of actual knowledge. *See Rosner v. Bank of China*, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008) ("courts overwhelmingly recognize" that "actual knowledge of a fraud" is not established "based on allegations of . . . ignorance of obvious 'red flags'"), *aff'd*, 349 F. App'x 637 (2d Cir. 2009); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018) ("red flags fail to establish actual knowledge"); *Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege actual knowledge"); *In re Int'l Mgmt. Assocs., LLC*, 563 B.R. 393, 420 (Bankr. N.D. Ga. 2017) ("allegations of 'red flags' were insufficient to establish the bank's actual knowledge of existence of the Ponzi scheme")).

Second, the Receiver alleges as follows:  "Defendants Alexander and Seawright falsely represented that they personally inspected the timber and 'mill contracts' underlying each investment—a factual impossibility because there was no timber and were no "mill contracts" to inspect" which "give[s] rise to the strong inference that they knew Madison Timber was a Ponzi scheme." *Id.* at ¶ 130-31, 141-42, 151, 168. The Receiver's reliance on those allegations as support for having pled the required *knowledge* element is puzzling at best. Even if those allegations are accepted as true—and they are not because they are not well pled—they do not in any way demonstrate that Alexander and Seawright were *aware* that Adams was operating a Ponzi scheme. And even assuming *arguendo* that the Alexander Seawright Defendants were obligated to inspect the timber and mill agreements, the false allegation that they failed to do so does not equate to an allegation that they failed to do so *because they knew* Adams was operating a Ponzi scheme. Failing to do something that a person arguably should do in connection with a transaction does not mean that person knows that the transaction is part of a Ponzi scheme. Thus, the Complaint fails to sufficiently plead that the Alexander Seawright Defendants knew Madison Timber was a Ponzi scheme, and the Court therefore should dismiss Counts I, II, V, and VI.

      **1.**      **The Complaint does not state a claim for civil conspiracy (Count I).**

"To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a proximate result." *Orr v. Morgan*, 230 So. 3d 368, 375 (Miss. Ct. App. 2017) (citations, brackets, and ellipsis omitted). "Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)). "It is elementary that a conspiracy requires an *agreement* between the co-

conspirators." *Id.* (emphasis added) (citing *Brown v. State*, 796 So. 2d 223, 226-27 (Miss. 2001) ("'persons must agree . . . for a conspiracy to exist'")). Contrary to the Receiver's allegations, to state a claim for civil conspiracy, the Receiver must plead sufficient facts to show that the Alexander Seawright Defendants *knew* Adams was operating a fraudulent scheme and *agreed* to unlawfully conspire with him to further the scheme. The Receiver pleads no such facts.

"For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) (citing 16 Am. Jur. 2d Conspiracy § 51); *see also Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 520 (5th Cir. 2018) (civil conspiracy requires proof that conspirator "knew of [the] fraudulent scheme"). Despite the Alexander Seawright Defendants' production of thousands of pages of all of their emails, text messages, and other documents relating to their interactions with Adams and Madison Timber, and after having a second opportunity to do so, the Receiver has still not alleged sufficient facts demonstrating that the Alexander Seawright Defendants knew Adams was operating a fraudulent Ponzi scheme. And if the Alexander Seawright Defendants had no knowledge of Adams's fraudulent conduct, they could not have agreed to further Adams's fraudulent scheme. To that point, the Receiver does not allege any facts whatsoever demonstrating that the Alexander Seawright Defendants agreed with Adams to further his fraudulent scheme.

The Receiver's own allegations show that the Alexander Seawright Defendants attempted to evaluate whether "Lamar is a fraud" before doing business with him, but there was "no evidence of that." Complaint at ¶ 73. The Receiver does not allege that Adams and the Alexander Seawright Defendants had a "meeting of the minds" as to "the object or course of action" to commit an "underlying tort which could support a claim for conspiracy," as is required by

14

Mississippi law. *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011). Instead, the Receiver admits that the best she can do is to state that: "Defendants' [allegedly] false representations *give rise to the strong inference* that they knew Madison Timber was a Ponzi scheme." Complaint at ¶ 131, 142, 151, 168. That is not enough. Accordingly, the Court should dismiss Count I against the Alexander Seawright Defendants.

In addition to failing to satisfy the knowledge element, the Receiver fails to establish any "underlying tort" or other "unlawful overt act" committed by the Alexander Seawright Defendants. The Receiver argues that the Alexander Seawright Defendants "acted unlawfully" because they allegedly operated without a license, sold unregistered securities, and made "material misstatements" in the sales of securities. Complaint at ¶ 128. But a claim for civil conspiracy requires a viable underlying tort, *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002), and "cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action," *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789-90 (3d Cir. 1999). The Alexander Seawright Defendants deny that they operated unlawfully without a license, sold unregistered securities, or made material misstatements in the sales of securities, but that is irrelevant because the Receiver "cannot invoke the mantle of conspiracy" to pursue a claim on the basis of a statutory violation for which she does not otherwise have a private right of action. 193 F.3d at 790. The Receiver fails to cite any authority that would confer a private right of action for the alleged unlawful acts by the Alexander Seawright Defendants. With respect to licensure, the Receiver alleges that a license is required under Section 3(4) of the Securities Exchange Act, *see* Complaint at ¶ 98, but she cites no statutory provision that would confer a private right of action for such a violation. With respect to registration, "only a *purchaser* of the unregistered security may sue" for a registration

15

violation under Section 12(a)(1) of the Securities Act. *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 654 (D.N.J. 2009) (citing *Pinter v. Dahl*, 486 U.S. 622, 644 (1988)). Madison Timber and Adams were not the purchasers of the alleged securities.

### 2. The Complaint does not state a claim for aiding and abetting (Count II).

First, the Court should dismiss Count II because "[n]o Mississippi court has ever recognized any of the subsections of the Restatement (Second) of Torts § 876 as viable causes of action." *In re Evans*, 467 B.R. 399, 409 (Bankr. S.D. Miss. 2011). To be clear, "no Mississippi court has recognized a claim for civil aiding and abetting, whether under § 876(b) or § 876(c)." *Id.* The "Mississippi Supreme Court has not expressly recognized the tort of aiding and abetting fraud." *Dale v. Ala Acquisitions, Inc.*, 203 F. Supp. 2d 694, 700-01 (S.D. Miss. 2002). "When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts." *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liability Lit.*, 888 F.3d 753, 781-782 (5th Cir. 2018) (reversing jury verdict because, among other things, district court recognized an aiding-and-abetting claim under Restatement § 876(b) when the Texas supreme court had not yet recognized that claim).[9]

Further, even if a civil claim for aiding and abetting existed in Mississippi, which it does not, as acknowledged by the Receiver "a defendant is liable [under a claim of aiding and abetting] if he '*knows* that the other's conduct constitutes a breach of duty . . . .'" Complaint at ¶ 138 (emphasis added) (quoting Restatement (Second) of Torts § 876(b) (1979)). As stated above,

---

[9] The *Dale* court made an *Erie* guess that such a claim would be viable under Mississippi law, reasoning that a majority of other jurisdictions have recognized such a claim and that Mississippi recognizes the analogous tort of civil conspiracy. *Dale*, 203 F. Supp. 2d at 701; *In re Evans*, 467 B.R. at 409. To date, however, the Mississippi Supreme Court has not recognized the tort as viable, and therefore, this Court should follow *In re Depuy Orthopaedics*, which restrains the Court from recognizing the "novel" aiding and abetting cause of action under § 876(b) of the Restatement (Second) of Torts. 888 F.3d at 781; *see also Fikes*, 813 F. Supp. 2d at 822-23 (finding "Mississippi Supreme Court has never recognized aiding and abetting as a civil cause of action" but declining to make an *Erie* guess because plaintiff failed to allege separate underlying tort and thus failed to state claims for conspiracy and aiding and abetting).

the Receiver has still not even alleged facts demonstrating that the Alexander Seawright

Defendants *knew* about the fraud when they agreed to do business with Adams.[10]

And that the Alexander Seawright Defendants might have known "that Adams owed

Madison Timber fiduciary duties" does not establish that they knew Adams breached such duties

by operating a Ponzi scheme and does not support a claim for aiding and abetting. Complaint at ¶

140; *see Lerner*, 459 F.3d at 294 ("'A claim for aiding and abetting a breach of fiduciary duty

requires . . . that the defendant knowingly induced or participated in the breach[.]'") (quoting

*Kaufman v. Cohen*, 307 A.D.2d 113, 125 (N.Y. App. Div. 2003)). Here, the Complaint sets forth

no allegations demonstrating that the Alexander and Seawright Defendants actually became

aware of facts to show Adams was conducting a fraudulent scheme. Accordingly, the Court

should dismiss Count II against the Alexander Seawright Defendants.

### 3.    The Complaint does not state a claim for "violations of Mississippi's Racketeer Influenced and Corrupt Organization Act" (Count V).

The Receiver's claim in Count V for alleged violations of Mississippi's Racketeer

Influenced and Corrupt Organization ("RICO") Act likewise is legally insufficient. At the core of

any claim under Mississippi's RICO Act is evidence that the defendant was aware of, and a

willing participant in, the wrongful racketeering activity proscribed by the RICO Act. *See* Miss.

Code Ann. §§ 97-43-1 through 97-43-11. But in this case, the Receiver does not even allege facts

establishing that the Alexander Seawright Defendants were aware Adams was engaged in any

---

[10] The Receiver's allegation that the Alexander Seawright Defendants "should have known about the dangers" of Adams's conduct due to certain "red flags" falls short of establishing that they "knew about conduct constituting a conspiracy." *Dickens v. A-1 Auto Parts & Repair, Inc.*, No. 1:18-cv-162-LG-RHW, 2018 WL 5726206, at *3 (S.D. Miss. Nov. 1, 2018) (dismissing under Rule 12(b)(6) a claim for civil aiding and abetting). Further, courts in jurisdictions that recognize civil liability for aiding and abetting routinely hold that allegations of "red flags" are insufficient. The "universal rule in this country" imposes no duty on "banks, lawyers, brokerage houses, [or] accountants" to scrutinize the conduct of third parties for "red flags, smoke, and other irregularities." *El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 907-08 (W.D. Mich. 2010) (internal quotation marks omitted) (collecting authority), *aff'd*, 712 F.3d 917 (6th Cir. 2013); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) ("red flags" were "insufficient to establish a claim for aiding and abetting fraud").

illegal activity, much less that they knowingly participated, managed, supervised, or otherwise engaged in it. This is fatal to the Receiver's RICO claim.

The Receiver's purported "red flags" are simply not enough to parlay the fraudulent-transfer claims into viable tort claims, much less RICO claims. *See Chaney v. Dreyfus Serv. Corp.*, 595 F. 3d 219, 239-240 (5th Cir. 2010) (assertion of purported red flags and insinuations that defendants "should have known" is not enough to maintain RICO conspiracy claim). The Receiver states that the Alexander Seawright Defendants *should have recognized* the "red flags" as evidence of the Ponzi scheme because of their respective professions. But that is, again, a legal conclusion. "Neither awareness of some probability of illegal conduct nor a showing the defendant should have known is enough" to establish the element of knowledge. *Id.* The Complaint sets forth no facts whatsoever showing that the Alexander Seawright Defendants, with *actual knowledge* of the Ponzi scheme, adopted "the goal of furthering or facilitating the criminal behavior." *Id.* Accordingly, the Court should dismiss Count V against the Alexander Seawright Defendants.[11]

### 4.    The Complaint does not state a claim for "joint venture liability" (Count VI).

The Receiver stands in the shoes of only Adams and Madison Timber. And the Receiver has plead no facts whatsoever regarding claims that other investors or lenders allegedly assigned to the Receivership Estate—i.e., Adams and Madison Timber. Thus, the Receiver's tort claims

---

[11] The RICO claim should be dismissed for the additional reason that the Receiver has failed to allege facts sufficient to establish a RICO "enterprise," which requires a "pattern of racketeering activity" by a "group of persons or entities associating together for the common purpose of engaging in a course of conduct," and the associated group must have "an existence that can be defined apart from the commission of the predicate acts." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559-562 (5th Cir. 2015) (citations and internal quotation marks omitted); Miss. Code Ann. § 97-43-5. And even if such a showing could be made, which it cannot, it is well established that *in pari delicto* is a defense to a civil RICO claim. *See Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008).

are barred by the doctrine of *in pari delicto*. The Receiver cannot recover on behalf of Adams

and Madison Timber on claims against parties that she alleges participated in the fraud.

The Receiver states in conclusory fashion that a "partnership" or "joint venture" existed

between Adams and the Alexander Seawright Defendants. The Receiver sets forth no factual

allegations regarding the alleged "partnership" or "joint venture" other than to state that Madison

Timber paid Alexander Seawright loan-origination fees. But, as shown below, that allegation

alone is insufficient to establish a "partnership" or "joint venture" under Mississippi law.[12]

The Mississippi Uniform Partnership Act defines "partnership" as "an association of two

(2) or more persons to carry on as co-owners a business for profit . . . ." Miss. Code Ann. § 79-

13-101(8). Alexander Seawright, LLC and Madison Timber Properties, LLC are separately

formed limited liability companies. They are not, and never were, a single business for profit.

"Under Mississippi law, a joint venture 'exists when two or more persons combine in a

joint business enterprise for their mutual benefit with an understanding that they are to share in

profits or losses and each to have a voice in its management.'" *Walker v. Williamson*, 2016 WL

2771792, at *2 (S.D. Miss. May 12, 2016) (quoting *Hults v. Tillman*, 480 So. 2d 1134, 1142

(Miss. 1985)). "'The three main questions that are considered in [joint venture] determination are

(1) the intent of the parties, (2) the control question, and (3) profit sharing.'" *Id.* (quoting *Smith v.

Redd*, 593 So. 2d 989, 994 (Miss. 1991)). The Receiver does not allege that the Alexander

Seawright Defendants *intended* to join a fraudulent scheme; in fact, she does not even allege that

they knew about it. Further, the Receiver does not allege that the Alexander Seawright

Defendants had any control whatsoever over Madison Timber. Moreover, the Alexander

Seawright Defendants did not share in any "profits" of the fraudulent scheme. Instead, they

---

[12] Although a "joint venture" has been described as a single-purpose partnership, such has very "limited and circumscribed boundaries." *Duggins v. Guardianship of Washington Through Huntley*, 632 So. 2d 420, 427 (Miss. 1993).

coordinated loans from Timber Fund I to Madison Timber, and in exchange for their work Madison Timber paid Alexander Seawright loan-origination fees. They did not share in any percentage of "profits" or "losses" as would be done in a jointly-owned business.[13]

Mississippi Code Annotated § 79-13-202(c)(3) makes clear that Madison Timber's payment of loan-origination fees to the Alexander Seawright Defendants does not constitute the creation of a joint venture, stating as follows:

> A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment . . . [f]or services as an independent contractor . . . [or] [o]f interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral.

Miss. Code. Ann. § 79-13-202(c)(3). Alexander Seawright received payment of loan-origination fees for services rendered, but Alexander Seawright did not share in the "profits" or "losses" of Madison Timber's Ponzi scheme, as those terms are defined by Mississippi law.[14] The Complaint does not even allege that the Alexander Seawright Defendants shared in Madison Timber's "profits *and losses*." Accordingly, the Court should dismiss Count VI against the Alexander Seawright Defendants.

**B.    The Court should dismiss the claims in Count III for "recklessness," "gross negligence," or "negligence" because the Alexander Seawright Defendants did not owe any duty to Adams or Madison Timber.**

The Receiver has failed to state a claim for negligence, gross negligence, or recklessness because she failed to allege any facts establishing that the Alexander Seawright Defendants owed

---

[13] In *Walker v. Williamson*, the court found that, other than conclusory assertions, the plaintiff failed to plead sufficient facts to show that the defendants intended to establish a joint venture or that the defendants controlled the relevant actions. 2016 WL 2771792, at *3-4. The court also found that payment of fees to the defendants did not establish a larger agreement to split profits, but even if the shared-profits element was established, it would not have been enough to overcome the lack of intent and control. *Id.*

[14] Under the Receiver's approach, every lender in the country would be deemed a legal "partner" or member of a "joint venture" with any entity to which it made a loan. That obviously is not the law.

a duty to Adams and Madison Timber. "Whether a duty exists is a question of law." *Midwest*

*Feeders, Inc.*, 886 F.3d at 515 (citation omitted); *see also, e.g.*, *Brown ex rel. Ford v. J.J.*

*Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 131 (Miss. 2003). The Receiver discusses the

plight of other investors who were duped by Adams, but the Receiver is not their representative.

And she alleges no facts whatsoever regarding the purported "assignments" she states that she

received on behalf of the Receivership Estate. Instead, the Receiver stands in the shoes of Adams

and Madison Timber, to whom the Alexander Seawright Defendants owed no duty.[15]

"It is quite elementary that there cannot be a tort without a breach of a legal duty."

*Savage v. Prudential Life Ins. Co. of Am.*, 121 So. 487, 489 (Miss. 1929); *see also Sanderson*

*Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). "'Duty and breach of duty, which

both involve foreseeability, are essential to finding negligence and [therefore,] must be

demonstrated first.'" *Sanderson Farms, Inc.*, 212 So. 3d at 76 (quoting *Griffith v. Entergy Miss.,*

*Inc.*, 203 So. 3d 579, 585 (Miss. 2016)). The Receiver fails to even allege that the Alexander

Seawright Defendants owed a duty to Adams and Madison Timber, and the Receiver cannot do

so because under Mississippi law no such duty existed.

The Receiver cites *Estate of St. Martin v. Hixson*, 145 So. 3d 1124, 1128 (Miss. 2014) for

the following quote: "Negligence is a failure to do what the reasonable person would do under

---

[15] *See* Order Appointing Receiver [Doc. 33], *SEC v. Adams*, No. 3:18-cv-252-CWR-FKB (S.D. Miss. June 22, 2018). It is black-letter law that the Receiver "has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013); *see also Troelstrup v. Index Futures Grp., Inc.*, 130 F.3d 1274, 1276 (7th Cir. 1997) (receiver appointed for estate of fraudster "has no possible claim against [a third-party brokerage house], or on behalf of the investors, the victims of the fraud, because he was not *their* receiver" (emphasis in original)). The Court's October 28, 2019 Order amended the order of appointment to allow the Receiver "to accept on behalf of the Receivership Estate assignments of rights or interests that persons or entities may choose to assign to the Receivership Estate." That Order, however, does not change the definition of the "Receivership Estate," but instead confirms that the "Receivership Estate" is comprised of the "estates of Arthur Lamar Adams and Madison Timber Properties." [Doc. 190]. Accordingly, the Receiver continues to represent only the "Receivership Defendants," Adams and Madison Timber, in connection with collecting "Receivership Property." The Receiver has alleged no details of the purported assignments.

the same or similar circumstances." *See* Complaint at ¶ 149. *Hixson*, however, was a legal malpractice case that analyzed duties of care and loyalty owed by the lawyer to his client. The relationship between the Alexander Seawright Defendants and Adams and Madison Timber was strictly limited to the loans that Alexander Seawright coordinated to be made by Timber Fund I to Madison Timber and payment of related loan-origination fees. The Receiver does not allege that the Alexander Seawright Defendants ever owed a duty to Adams or Madison Timber.[16]

The Receiver alleges that the Alexander Seawright Defendants were "reckless" or "grossly negligent" in an effort to bolster the negligence claim into one for punitive damages, which are recoverable "only in cases where the negligence is so gross as to indicate reckless or wanton disregard of the safety of others." *Maupin v. Dennis*, 175 So. 2d 130, 131 (Miss. 1965). Again, however, the negligence analysis hinges on whether a duty existed in the first place.[17]

"In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury." *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 99-100 (N.Y. 1928) (citations and internal quotation marks omitted). "Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. Proof of *negligence in the air*, so to speak, will not do." *Id.* (citation and internal quotation marks omitted) (emphasis

---

[16] The Complaint does not allege that Adams and Madison Timber were ever clients of Baker Donelson, and they were not. The Receiver does not allege that Jon Seawright, Brent Alexander, or anyone else at Baker Donelson ever performed professional work for Madison Timber or for another client on which Madison Timber relied.

[17] The Receiver quotes *Maldonado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000), for the statement that recklessness "is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." Under Mississippi law, "reckless disregard" is "defined as a 'higher standard than gross negligence, and it embraces willful or wanton conduct which requires *knowingly and intentionally* doing a thing or wrongful act.'" *Collins v. City of Newton*, 240 So. 3d 1211, 1222 (Miss. 2018) (emphasis added) (quoting *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (Miss. 2009)). Again, the Complaint is devoid of any facts establishing that the Alexander Seawright Defendants owed any duty to Adams or Madison Timber, much less that they *knowingly* or *intentionally* breached such a duty.

added).[18] The Receiver implies that the purported "red flags" show what amounts to "negligence in the air," but that is not enough. *See* Comp. at ¶ 152. The Complaint does not sufficiently plead any duty owed by the Alexander Seawright Defendants to Adams and Madison Timber, "the observance of which would have averted or avoided" the significant damages and injury caused by Adams's operation of a Ponzi scheme. *Palsgraf*, 162 N.E. at 99-100. Accordingly, the Court should dismiss Count III against the Alexander Seawright Defendants.

## III.     The Doctrine of *In Pari Delicto* Bars the Receiver's Claims against the Alexander Seawright Defendants in Counts I, II, III, V, and VI.[19]

Under Mississippi law, a plaintiff who is *in pari delicto* with the defendant—i.e., a "joint tortfeasor"—may not recover against that defendant. *Sneed v. Ford Motor Co.*, 735 So. 2d 306, 308 (Miss. 1999) ("a wrongdoer is not entitled to compel contribution from a joint tortfeasor . . . if [they] are in *pari delicto*"). The *in pari delicto* doctrine enforces the longstanding "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *In Pari Delicto Doctrine*, Black's Law Dictionary (10th ed. 2014). The *in pari delicto* doctrine "applies where the plaintiff is equally or more culpable than the defendant or acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction." *Latham v. Johnson*, 2018 WL 3121362, at *10 (Miss. Ct. App. June 26, 2018) (citing 27A Am. Jur. 2d, Equity § 103, p. 641 (2008)), *cert. denied* 260 So. 3d 798 (Miss. 2019). As discussed below, at this motion-to-dismiss stage, the affirmative defense of *in pari delicto* bars the

---

[18] As previously noted, the law does not impose duties on citizens to stop criminal conduct. *See, e.g.*, *Cuyler v. United States*, 362 F.3d 949, 954 (7th Cir. 2004) ("no common law duty to warn or rescue"). And as *the perpetrators* of the criminal conduct, Adams and Madison Timber certainly cannot claim a duty owed *to them*. *See, e.g.*, *Oden v. Pepsi Cola Bottling Co. of Decatur, Inc.*, 621 So. 2d 953, 954-55 (Ala. 1993) (thief cannot recover in tort for injury while stealing); *Amato v. United States*, 549 F. Supp. 863, 867 (D.N.J. 1982) (criminal cannot recover for injury during robbery on theory that "the government was negligent in not arresting [him] sooner"), *aff'd*, 729 F.2d 1445 (3d Cir. 1984).

[19] The arguments surrounding the *in pari delicto* defense are also set forth in Baker Donelson's Motion to Dismiss and supporting Memorandum of Law. The Alexander Seawright Defendants hereby adopt such arguments, join in them, and fully incorporate them into this supporting memorandum.

Receiver's recovery because the defense is established "on the face of the complaint." *See Alexander v. Verizon Wireless Servs., LLC*, 875 F.3d 243, 249 (5th Cir. 2017).[20]

It is readily apparent from the face of the Receiver's Complaint that Adams and Madison Timber are the primary wrongdoers—far more culpable than the Alexander Seawright Defendants. Unlike as to Adams, the Receiver alleges no facts establishing that the Alexander Seawright Defendants acted with *any knowledge* as to the illegality or wrongfulness of Adams's fraudulent scheme. Thus, there can be no dispute from the face of the Complaint that Adams's conduct was at least "equally or more culpable" than that of the Alexander Seawright Defendants. Because the Receiver stands in the shoes of Madison Timber and has standing to assert only the claims of Madison Timber, the Court should dismiss Counts I, II, III, V, and VI against the Alexander Seawright Defendants pursuant to the doctrine of *in pari delicto*.[21] *See, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013).

The Receiver's objection to this Court's application of the *in pari delicto* doctrine is based in large part on the Fifth Circuit's interpretation of Texas law in *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955 (5th Cir. 2012). The Receiver claims the "exception" to the *in pari delicto* doctrine recognized in *Jones* allows her to assert tort claims against the Defendants here even though she has stepped into the primary wrongdoer's shoes. The Receiver is mistaken.

---

[20] As shown above, the Complaint does not set forth sufficient facts to establish that the Alexander Seawright Defendants were parties to any criminal acts or conspiracies, but even if they were, under the *in pari delicto* doctrine the "court will not extend aid to either of the parties . . . but will leave them where their own acts have placed them." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012). On a related note, the "*in pari delicto* defense has repeatedly been used to bar the actions of 'bankruptcy trustee[s] against third parties who participated in or facilitated wrongful conduct of the debtor[s].'" *In re Fair Fin. Co.*, 834 F.3d 651, 676 (6th Cir. 2016) (quoting *Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1276 (10th Cir. 2008) (collecting cases)). Like bankruptcy trustees, the Receiver stands in the shoes of the debtors—Adams and Madison Timber.

[21] The Receiver cannot claim an "innocent successor" exception, or any other exception for that matter, to the doctrine of *in pari delicto*. The Alexander Seawright Defendants adopt and join Baker Donelson's arguments on that point. The Alexander Seawright Defendants' Motion to Dismiss does not address the Receiver's claim for alleged fraudulent transfer asserted in Count IV of the Complaint.

In *Jones*, the fraudster, Wahab, was just one of several owners of W Financial, the business from which the fraudster stole funds.[22] 666 F.3d at 958. Jones, the receiver for W Financial (but not Wahab), filed conversion and breach-of-contract claims against Wells Fargo to recover amounts Wahab stole from W Financial. Wells Fargo asserted the *in pari delicto* defense because Wahab was "primarily at fault for the conversion of the cashier's check." *Id.* at 965. The Fifth Circuit affirmed that *in pari delicto* was inapplicable there because "Wahab's actions could not be rightfully imputed to W Financial because Wahab's actions were taken against the interest and authorization of the principal." *Id.* (internal quotation marks omitted). The Court elaborated:

> Wells Fargo's *in pari delicto* argument fails to acknowledge the important distinction between W Financial as a corporation and Wahab as an individual. While it is undisputed that Wahab played a central role in the conversion of the cashier's check, W Financial is composed of more than Wahab or the other individuals who operated the company. . . . To conclude that W Financial stands *in pari delicto* simply because Wahab is a wrongdoer ignores the fundamental distinction between a corporation and its officers.

*Id.* at 965-66.

But here, the Complaint alleges no distinction between Adams and Madison Timber, and none exists; there is no allegation that Madison Timber is "composed of more than" Adams. *See* Complaint at 2 (alleging Madison Timber was one of "his companies"); *see also* 3:18-cr-00088-CWR-LRA at Doc. 1 (Bill of Information, stating: "In 2012, Adams formed and was the sole owner of Madison Timber Properties, LLC"); 3:18-cv-00252-CWR-FKB at Doc. 3 (Complaint, stating: "Arthur Lamar Adams . . . through his wholly-owned company, Madison Timber

---

[22] Wahab withdrew $1,701,250 from W Financial's account at a Wells Fargo branch in Houston, Texas. Wahab used the funds to buy a cashier's check payable to another group of people, but Wahab later returned to a different Wells Fargo branch in Texas and deposited the cashier's check into the Wells Fargo account of a separate entity of which Wahab was the managing member and only authorized signer on the account. Wells Fargo stamped the back of the check as follows: "CREDITED TO THE ACCOUNT OF WITHIN NAMED PAYEE LACK OF ENDORSEMENT GUARANTEED WELLS FARGO BANK, N.A." *See* 666 F.3d at 958.

Properties, LLC . . . committed securities fraud"). Thus, Adams's actions should be "rightfully imputed to" Madison Timber, and the Court should not follow the *Jones* decision for this case.[23]

Also in *Jones*, the receiver was appointed to pursue actions for the benefit of both W Financial and all innocent investors who may have been victims of the fraud. *See* 666 F.3d at 966 (noting receiver "brought this suit on behalf of W Financial . . . and other innocent victims" which allowed receiver to bring claims that W Financial would not be permitted to bring). *See also* Doc. 36 at Ex. C at 9 (receiver in *Jones* appointed as "representative of such investors"). In this case, however, the Receiver has been appointed only to pursue claims for Adams and Madison Timber. *See* 3:18-cv-252 at Doc. 33. The Receiver has no standing to bring claims for any person or entity other than Adams and Madison Timber. Again, the Complaint alleges no factual details of the purported assignments that the Receiver claims to have received. Accordingly, the Court should dismiss Counts I, II, III, V, and VI against the Alexander Seawright Defendants pursuant to the doctrine of *in pari delicto*.

## IV. The Receiver Cannot Pierce the Limited Liability Company Veil of Alexander Seawright to hold Brent Alexander Personally Liable.

The Receiver asserts, without any supporting authority or factual allegations whatsoever, that "Defendants Alexander and Seawright are liable for the acts of Alexander Seawright because they authorized or directed all acts of Alexander Seawright" and "because the three are alter egos." Complaint at ¶¶ 204, 205. The Receiver's allegations are insufficient to state a claim for personal liability, and the Court should deny the Receiver's request for declaratory judgment.

---

[23]  *See also Jones*, 666 F.3d at 966-67 (citing *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947) for the proposition that application of the *in pari delicto* doctrine "depends upon the peculiar facts and equities of the case, and the answer usually given is that which it is thought will better serve public policy"). In *Jones*, the court declined to apply *in pari delicto* because it would have the consequence of preventing other owners of W Financial from recovering against Wells Fargo Bank. *Id.* at 958. Here, Adams is the only owner of Madison Timber, and thus there are no "policy considerations" or "equitable considerations" that should prevent the Court from applying *in pari delicto*.

Mississippi law applies to determine whether the Receiver may pierce a Mississippi LLC's veil through an action filed in federal court in Mississippi. "The decision whether to pierce the corporate veil is a question of state law." *In re World Vision Entm't, Inc.*, 275 B.R. 641, 661 (Bankr. M.D. Fla. 2002). Mississippi applies the law of the LLC's state of incorporation: "[T]he Mississippi Limited Liability Company Act has been interpreted to mean that the veil-piercing standard of the law of the state under which an LLC exists applies when a party attempts to pierce the LLC's veil." *RDS Real Estate, LLC v. Abrams Grp. Constr., LLC*, 2017 WL 338491, at *2 (S.D. Miss. Jan. 23, 2017). In turn, the Mississippi Limited Liability Company Act states: "The law of this state governs . . . [t]he liability of a member as member, a manager as manager and an officer as officer for the debts, obligations, or other liabilities of a limited liability company." Miss. Code Ann. § 79-29-119. The Mississippi Supreme Court applies the same analysis to piercing the veil of an LLC as it does to piercing the veil of a corporation: "While an LLC is a different type of legal entity than a corporation, commentators 'agree that for purposes of piercing the corporate veil, an LLC would be treated like a corporation.'" *Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d 32, 38 (Miss. Ct. App. 2012) (citation omitted).

"A fundamental principle of corporate law is that shareholders are not liable for the obligations of the corporation." *Nash Plumbing, Inc. v. Shasco Wholesale Supply, Inc.*, 875 So. 2d 1077, 1082 (Miss. 2004). "Mississippi case law generally favors maintaining corporate entities and avoiding attempts to pierce the corporate veil." *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969, 977 (Miss. 2007).

In Mississippi, "the three-prong test for piercing the veil of corporations, established in *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989), is also the appropriate

test for piercing the veil of LLCs." *Rest. of Hattiesburg, LLC*, 84 So. 3d at 35. "When faced with other approaches for determining when limited liability should be disregarded, the Mississippi Supreme Court reiterated *Gray* is the test Mississippi courts must apply." *Id.* at 39.[24]

Under the three-prong test set forth in *Gray*, a court may disregard corporate formalities only if the plaintiff shows: "(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." 541 So. 2d at 1047.[25]

### A.   The Complaint does not allege that Adams looked beyond the LLC for performance.

To pierce the corporate veil, a plaintiff must prove that he had a reasonable expectation of performance from a person "behind the veil." *Carpenter Props., Inc. v. J.P. Morgan Chase Bank N.A.*, 647 F. App'x 444, 452 (5th Cir. 2016). The Receiver has not even alleged that Adams had an expectation of performance from Alexander individually. Instead, the Receiver's allegations make clear that Alexander acted through Alexander Seawright in all interactions with Adams and Madison Timber. As stated above, Alexander Seawright did not owe any duty to Adams or Madison Timber, so there could not have been any reasonable expectation that Alexander individually owed any such duty.

---

[24] Contrary to the Receiver's bald allegation, Alexander is not an "alter ego" of Alexander Seawright, but more importantly, that is not the test. The Mississippi Supreme Court has refused to adopt the ten factors employed by the Fifth Circuit for its "alter ego" analysis. *See Buchanan*, 957 So. 2d at 976-77. In *Buchanan*, the Court stated that "[w]hile these ten factors are instructive on the alter ego theory, this Court has not adopted the factors as applied by the federal courts . . . . this Court has held a three-factor test for piercing the corporate veil and imposing liability on corporate shareholders." *Id.*

[25] This three-part test applies to tort as well as contract claims. *Penn. Nat. Gaming, Inc. v. Ratliff*, 954 So. 2d 427, 431-32 (Miss. 2007) (superseded by statute on other grounds) (the Mississippi Supreme Court stated it had "never articulated whether a different standard applies to tort claims," and the Court adopted the three-part test, omitting the word "contractual" from the first prong).

**B.    The Complaint contains no facts showing that Alexander Seawright flagrantly disregarded corporate formalities.**

The Receiver has not alleged that the Alexander Seawright Defendants flagrantly disregarded any formalities of Alexander Seawright.[26] The Receiver has not alleged which formalities that she claims should have been followed by Alexander Seawright but were disregarded to the detriment of Adams and Madison Timber.

**C.    The Complaint alleges no facts demonstrating that Alexander Seawright was a vehicle for fraud or that Brent Alexander used it for fraudulent means.**

Last, the Receiver has not alleged fraud or misfeasance on the part of Alexander individually. The Receiver does not even allege that the Alexander Seawright Defendants knew about Adams's fraud or that he was operating Madison Timber as a Ponzi scheme. Merely alleging that the LLC loaned money in what turned out to be a fraudulent scheme engineered by Adams is insufficient to pierce the limited liability company veil in Mississippi.

Instead, there must be some allegation, supported by evidence, to show that the members of the LLC knew from the beginning about the fraud and intended to use the LLC to further the fraudulent scheme. *See, e.g.*, *Richardson v. Jenkins Builders, Inc.*, 737 So. 2d 1030, 1032 (Miss. Ct. App. 1999) (plaintiff "presented no evidence that [individual defendant], from the beginning, was intent on obtaining [plaintiff's] money for his own personal use . . . and that he used a shell corporation to shield himself from personal liability on the day of reckoning that was inevitably to come"); *In re England Motor Co.*, 426 B.R. 178, 192 (N.D. Miss. 2010) (plaintiff "failed to present any evidence whatsoever that [individual defendant] formed any of the [corporate] [e]ntities for fraudulent or wrongful purposes"); *Powertrain, Inc. v. Ma*, 88 F. Supp. 3d 679, 699 (N.D. Miss. 2015); *see also* cases from other jurisdictions, including *In re Evergreen Security,*

---

[26] It is uniformly recognized that "failure to adhere to formalities" in the LLC context should be given far less consideration "because LLC statutes are designed to forgo the most burdensome formalities." Eric Fox, *Piercing the Veil of Limited Liability Companies*, 62 Geo. Wash. L. Rev. 1143, 1168 (1994).

*Ltd.*, 319 B.R. 245, 255-56 (M.D. Fl. 2003) (individual was not personally liable because corporation was not created to perpetuate the fraud).

The Receiver has for several months now possessed all of the documents, emails, text messages, and other information in the Alexander Seawright Defendants' possession that she could have used to support her claims. And she has now had a second opportunity to present her "best case." But because the Receiver has not alleged, and cannot ultimately establish, any facts necessary to support her request to pierce Alexander Seawright's limited liability company veil, the Court should deny the Receiver's request on page 49 of the Complaint for "declaratory judgment" against Alexander individually.

## CONCLUSION

For the reasons discussed above, Alexander Seawright, LLC and Brent Alexander respectfully request that the Court dismiss Counts I, II, III, V, and VI of the Complaint with prejudice, and also request that the Court deny the Receiver's request for declaratory judgment against Alexander individually.

Date:  December 20, 2019.

Respectfully submitted,

**ALEXANDER SEAWRIGHT, LLC and BRENT ALEXANDER**

By:     */s/ R. David Kaufman*
        R. David Kaufman
        One of Their Attorneys

        R. David Kaufman (MSB #3526)
        Cody C. Bailey (MSB #103718)
        Brunini, Grantham, Grower & Hewes, PLLC
        The Pinnacle Building, Suite 100
        190 East Capitol Street (39201)
        Post Office Drawer 119
        Jackson, Mississippi 39205
        Telephone: (601) 948-3101
        Facsimile: (601) 960-6902
        Email: dkaufman@brunini.com

        *Counsel for Defendants Alexander Seawright, LLC, Brent Alexander, and Jon Seawright*

## CERTIFICATE OF SERVICE

I, R. David Kaufman, hereby certify that on December 20, 2019, I caused the foregoing pleading to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and registered participants.

        */s/ R. David Kaufman*
        R. David Kaufman