IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ALYSSON MILLS,** *in her capacity as receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*      PLAINTIFF

V.      CAUSE NO. 3:18-CV-866-CWR-FKB

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC; ALEXANDER SEAWRIGHT, LLC; BRENT ALEXANDER; JON SEAWRIGHT**      DEFENDANTS

## ORDER

Suppose Jane Doe invested $100,000 in a venture that promised to pay her $113,000 in a year's time. The venture was an illusion—a Ponzi scheme, in fact—and her money disappeared almost immediately into earlier investors' pockets. Suppose too that when the scheme collapsed, a federal equity Receiver was appointed and sued the firms and persons that aided the Ponzi scheme. Would the Receiver be permitted to recover $113,000 on Jane's behalf, a sum representing her lost principal **and** expected "profit"? Or would the Receiver be permitted to recover $100,000 on her behalf—a sum representing **only** her lost principal?

This is not an abstract scenario for the Baker Donelson law firm. As the parties know all too well, this case features a collapsed Ponzi scheme, more than 200 investor-victims, and a federal equity Receiver. The Receiver sued Baker Donelson and two of its former employees— individuals now with federal criminal convictions—for aiding and abetting, civil conspiracy, and other claims under Mississippi law. She seeks to hold them accountable for "the unsustainable liabilities inflicted by the Ponzi scheme" that harmed Madison Timber Properties' "ability to

repay [its] investors." *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 899 (5th Cir. 2019). If the Receiver prevails, the money she recovers goes to the investor-victims. *Id.*

A jury has not adjudicated the Receiver's claims against Baker Donelson. Her allegations remain contested. But Baker Donelson knows that it can be "advantageous for professional defendants to examine ways to narrow the plaintiff's potential damages claims on legal grounds at an early stage." Craig D. Singer, PROFESSIONALS, FIRMS, AND FRAUD 54 (2015). So it is here, well before trial, arguing that the Receiver can recover only the lost principal of Madison Timber's investors—rather than their lost principal and anticipated profits. In its own words, the firm seeks a ruling limiting its "maximum possible exposure." Docket No. 119 at 3.

After reviewing the arguments against the applicable law, the Court agrees in part. It will exclude from trial that portion of the Receiver's damages seeking anticipated profits. The Court cannot, however, attempt to set a cap on Baker Donelson's exposure in this litigation.

Baker Donelson largely presents securities cases to support its position. One is a case from the fallout of Bernie Madoff's Ponzi scheme. In that dispute, courts permitted the Trustee to make Securities Investor Protection Corporation payments based on each victim's "net equity." *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 232-34 (2d Cir. 2011). The Trustee was allowed to disregard victims' final customer statements as "entirely fictitious" and "unwind, rather than legitimize, the fraudulent scheme." *Id.* at 234 (cleaned up).

Our dispute is distinguishable in key respects. It does not turn on the statute authorizing the Madoff Trustee's payments. Neither party can argue that its preferred calculation is "more consistent with the statutory definition of 'net equity'" than their opponent's, because there is no statutory definition to apply here. *Id.* at 235. In addition, it appears that this particular Madoff case grew out of an intra-victim dispute, rather than a defendant's attempt to cap its damages.

That obviously isn't the case today. *See Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, No. 19-CV-1756 (WMW), 2022 WL 4547022, at *12 (D. Minn. Sept. 29, 2022) (stating that parties and courts should be careful not to "conflate two distinct concepts: the collection of estate assets and the process of distributing estate assets."). And the Second Circuit was careful to limit its decision to "[t]he extraordinary facts of this case," rather than all Ponzi scheme cases. *In re Madoff*, 654 F.3d at 238.

One of the principles Baker Donelson advances, however, is soundly applied in our dispute. As the Second Circuit reasoned in *Madoff*, letting Ponzi scheme victims include lost expected profits in their damages calculations "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to [the Ponzi scheme perpetrator's] machinations." *Id.* at 235. This Court agrees with its colleagues that it should not be in that business.[1] As a result, the Receiver cannot ask the jury empaneled in this case to award the investor-victims' expected profits. *See also Janvey v. Brown*, 767 F.3d 430, 442 (5th Cir. 2014) ("investor-defendants have no claim for contractual interest from a Ponzi scheme").

Still, answering that question does not establish the "maximum possible exposure" that Baker Donelson or other similarly-situated defendants may face in these kinds of suits. The determination that one type of damages is not recoverable does not preclude a party from seeking other types of damages.

---

[1] In other areas of the law, too, courts prefer not to give credence to fictitious, arbitrary "facts." *See, e.g.*, *United States v. Washington*, 869 F.3d 193, 223 (3d Cir. 2017) (McKee, J., concurring in part and dissenting in part) (collecting cases describing "the potential for abuse and mischief that is endemic to fictitious stash-house stings"); *United States v. Flowers*, 712 F. App'x 492, 510 (6th Cir. 2017) (Stranch, J., concurring) (describing "increasing awareness of the problems and inequities inherent in fictitious stash house stings"); *United States v. Brown*, 299 F. Supp. 3d 976, 983-84 (N.D. Ill. 2018) ("It is time for these false stash house cases to end and be relegated to the dark corridors of our past. To put it simply, our criminal justice system should not tolerate false stash house cases in 2018.").

The most obvious example is punitive damages, which may be awarded in Mississippi given a sufficiently robust evidentiary showing, *see* Miss. Code Ann. § 11-1-65, and must "comport with due process," *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 425 (2003). The other common request in Mississippi is the "intermediate form of relief" known as *Veasley* damages. *Fulton v. Miss. Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 288 (Miss. 2012) (citing *Universal Life Ins. v. Veasley*, 610 So. 2d 290 (Miss. 1992)). Whether that doctrine applies in this circumstance remains to be seen.

At trial, evidence excludable when offered for one purpose can be admissible when offered for another. *See United States v. Abel*, 469 U.S. 45, 56 (1984). A similar concept applies here. The unavailability of one category of damages does not preclude other categories of damages *that may have greater value*. That means it is not possible to affix a damages cap at this juncture. To return to the hypothetical one last time, the fact that Jane Doe cannot seek the $13,000 profit she anticipated does not mean her damages are limited to $100,000.

For these reasons, Baker Donelson's motion is granted in part and denied in part. Other issues implied but not addressed in the current papers, such as any offset Baker Donelson might seek from other defendants' settlements with the Receiver, are reserved for future motion practice.

**SO ORDERED**, this the 15th day of February, 2024.

                                        s/ Carlton W. Reeves
                                        UNITED STATES DISTRICT JUDGE