## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

ALYSSON MILLS, IN HER CAPACITY
AS RECEIVER FOR ARTHUR LAMAR
ADAMS AND MADISON TIMBER
PROPERTIES, LLC,

                    Plaintiff,

      v.

BUTLER SNOW LLP et al.,

                    Defendants.

Case No. 3:18-cv-00866-CWR-BWR

**Hon. Carlton W. Reeves**

## MEMORANDUM OF LAW IN SUPPORT OF
## BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

James J. Crongeyer, Jr. (MSB #10536)
James M. Tyrone (MSB #102381)
WATKINS & EAGER PLLC
400 East Capitol Street, Suite 300 (39201)
Post Office Box 650
Jackson, MS 39205
Tel.:   (601) 965-1900
Email:  jcrongeyer@watkinseager.com

Craig D. Singer (*pro hac vice*)
Charles Davant (*pro hac vice*)
Benjamin W. Graham (*pro hac vice*)
Hope E. Daily (*pro hac vice*)
William M. Schmidt (*pro hac vice*)
C. Mark Aneke (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel.:   (202) 434-5000
Email:  csinger@wc.com

*Counsel for Defendant Baker, Donelson,
Bearman, Caldwell & Berkowitz PC*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

SUMMARY OF UNDISPUTED FACTS .............................................................................3

LEGAL STANDARD..............................................................................................................5

ARGUMENT ...........................................................................................................................5

I.    BAKER DONELSON IS NOT VICARIOUSLY LIABLE FOR THE PERSONAL
      ACTIVITIES OF ALEXANDER AND SEAWRIGHT NOR DID IT BREACH
      AN ALLEGED DUTY TO SUPERVISE THEM .............................................................5

      A.    Alexander's and Seawright's Timber Business Was Outside the Scope of
            Their Baker Donelson Employment ........................................................................6

            1.    A timber business is not activity "of the kind" Baker Donelson
                  employed Alexander and Seawright to perform ..........................................6

            2.    Alexander and Seawright were not "motivated by a desire to benefit"
                  Baker Donelson...............................................................................................8

      B.    The Receiver Cannot Prove "Apparent Authority" ...............................................10

      C.    The Receiver Cannot Prove Ratification ................................................................13

      D.    The Receiver Cannot Prove Negligent Supervision/Retention (Count VIII) ........15

II.   THE RECEIVER CANNOT PROVE THE ELEMENTS OF HER CLAIMS .................17

      A.    The Receiver Cannot Prove the Elements of Her Tort Claims Because
            Adams and Madison Timber Were Not Defrauded ................................................17

      B.    Defendants Had No Actual Knowledge or Awareness of Madison
            Timber's Ponzi Scheme, Precluding Counts I and II.............................................21

      C.    The Receiver Cannot Prove a RICO Claim (Count V)..........................................22

      D.    The Receiver Cannot Prove Joint Venture Liability (Count VI) ...........................24

III.  THE RECEIVER'S CLAIMS ARE BARRED BY *IN PARI DELICTO* .........................25

IV.   THE RECEIVER CANNOT PROVE RECOVERABLE DAMAGES ...........................28

      A.    The Receiver Cannot Recover the Debts of the Estate as Damages.....................28

B.    Any Damages Attributable to Baker Donelson Would Be Limited to the ASTFI Investors' Losses.................................................................................28

C.    There Are No Remaining Losses to Investors in ASTFI......................................30

D.    The Evidence Cannot Support Punitive Damages Against Baker Donelson.........31

CONCLUSION............................................................................................................................32

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page(s)</u>

*Adams v. Hughes*,
    191 So. 3d 1236 (Miss. 2016) ........................................................................... 25

*Andrew Jackson Life Ins. Co. v. Williams,*
    566 So. 2d 1172 (Miss.1990) ....................................................................... 10, 11

*Armstrong Bus. Servs., Inc. v. AmSouth Bank,*
    817 So. 2d 665 (Ala. 2001) ............................................................................. 16

*Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay,*
    42 So. 3d 474 (Miss. 2010) ...................................................................... passim

*Baker v. Wal-Mart Stores E., LP,*
    2021 WL 4050850 (S.D. Miss. Aug. 12, 2021) ................................................. 16

*Berhow v. The Peoples Bank,*
    423 F. Supp. 2d 562 (S.D. Miss. 2006) ......................................................... 8, 21

*Berry v. E-Z Trench Mfg., Inc.,*
    772 F. Supp. 2d 757 (S.D. Miss. 2011) ........................................................... 29

*Bolton v. John Lee, P.A.,*
    405 So. 3d 1 (Miss. Ct. App. 2023) ............................................................ 18, 20

*Bradley v. Kelley Bros. Contractors,*
    117 So. 3d 331 (Miss. Ct. App. 2013) ............................................................. 22

*Campbell v. Novartis Pharm. Co.,*
    2020 WL 3452240 (S.D. Miss. Mar. 30, 2020) ................................................ 16

*Carpenter v. Nobile,*
    620 So. 2d 961 (Miss. 1993) ........................................................................... 20

*Cascio v. Cascio Investments, LLC,*
    327 So. 3d 59 (Miss. 2021) ............................................................................. 12

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................................... 5

*City of Jackson v. Est. of Stewart*,
    908 So. 2d 703 (Miss. 2005) ........................................................................... 31

*Collier v. Trustmark Nat'l Bank,*
    678 So. 2d 693 (Miss. 1996) ........................................................................... 22

*Com. Bank v. Hearn*,
    923 So. 2d 202 (Miss. 2006)........................................................................6, 9, 10

*Deliefde v. Nixon*,
    2021 WL 4164680 (S.D. Miss. Sept. 13, 2021)...............................................31

*Dickens v. A-1 Auto Parts & Repair, Inc.*,
    2018 WL 5726206 (S.D. Miss. Nov. 1, 2018)...................................................22

*Doe ex rel. Doe v. Salvation Army*,
    835 So. 2d 76 (Miss. 2003)...............................................................................32

*Doe v. Hunter Oaks Apartments, L.P.*,
    105 So. 3d 422 (Miss. Ct. App. 2013) ..............................................................20

*Ebert v. DeJoria*,
    922 F.3d 690 (5th Cir. 2019) ............................................................................28

*Evans v. Englund Equip. Co.*,
    2025 WL 2164549 (S.D. Miss. July 30, 2025) .................................................32

*Forest Hill Nursing Ctr., Inc. v. McFarlan*,
    995 So. 2d 775 (Miss. Ct. App. 2008) ..............................................................11

*Franklin v. Turner*,
    220 So. 3d 1003 (Miss. Ct. App. 2016) ............................................................14

*Freeman v. Dean Witter Reynolds, Inc.*,
    865 So. 2d 543 (Fla. Dist. Ct. App. 2003) ........................................................20

*FSC Sec. Corp. v. McCormack*,
    630 So. 2d 979 (Miss. 1994)..............................................................................12

*Gallagher Bassett Servs., Inc. v. Jeffcoat*,
    887 So. 2d 777 (Miss. 2004)..............................................................................21

*Glidewell v. Hite*,
    6 Miss. 110 (Miss. Err. & App. 1840) ..............................................................26

*Glover v. Jackson State Univ.*,
    968 So. 2d 1267 (Miss. 2007).....................................................................29, 30

*Guardian Consumer Fin. Corp. v. Langdeau*,
    329 S.W.2d 926 (Tex. Civ. App. 1959) ............................................................26

*Gulf Coast Hospice LLC v. LHC Grp. Inc.*,
    273 So. 3d 721 (Miss. 2019).............................................................................19

*Gulledge v. Shaw*,
    880 So. 2d 288 (Miss. 2004) ............................................................6, 8, 9, 10

*Haney v. Cont'l Cas. Co.*,
    2010 WL 235025 (S.D. Miss. Jan. 15, 2010) ........................................19

*Hays v. Pearlman*,
    2010 WL 4510956 (D.S.C. Nov. 2, 2010) ..............................................27

*Hults v. Tillman*,
    480 So. 2d 1134 (Miss. 1985) ..........................................................24, 25

*In re Hellenic Inc.*,
    252 F.3d 391 (5th Cir. 2001) ................................................................17

*In re Refco Sec. Litig.*,
    2010 WL 3911780 (S.D.N.Y. Sept. 28, 2010) ......................................23

*In re SI Restructuring, Inc.*,
    532 F.3d 355 (5th Cir. 2008) ................................................................28

*James v. Antarctic Mech. Servs., Inc.*,
    2020 WL 86209 (S.D. Miss. Jan. 7, 2020) ............................................31

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
    712 F.3d 185 (5th Cir. 2013) ..........................................................19, 27

*Javier v. City of Milwaukee*,
    670 F.3d 823 (7th Cir. 2012) ................................................................15

*JESCO Constr. Corp. v. Wells Fargo Bank, N.A.*,
    579 F. Supp. 3d 827 (S.D. Miss. 2022) ................................................32

*Jimenez v. Tuna Vessel Granada*,
    652 F.2d 415 (5th Cir. 1981) ................................................................23

*Joan Cravens, Inc. v. Deas Constr. Inc.*,
    2016 WL 6997508 (S.D. Miss. Nov. 30, 2016) ....................................11

*Jones v. Wells Fargo Bank, N.A.*,
    666 F.3d 955 (5th Cir. 2012) ..........................................................26, 27

*JP Morgan Chase Bank v. Winnick*,
    406 F. Supp. 2d 247 (S.D.N.Y. 2005) ..................................................29

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982) ................................................................................24

*Kirschner v. Grant Thornton LLP,*
  2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009) .......................................................................28

*Latham v. Johnson,*
  262 So. 3d 569 (Miss. Ct. App. 2018) ................................................................................25

*Life & Cas. Ins. Co. of Tennessee v. Bristow,*
  529 So. 2d 620 (Miss. 1988) ..............................................................................................32

*Logan v. RedMed, LLC,*
  377 So. 3d 956 (Miss. 2024) ..............................................................................................24

*Maldonado v. Kelly,*
  768 So. 2d 906 (Miss. 2000) ..............................................................................................21

*Morgan v. MML Invs. Servs., Inc.,*
  226 So. 3d 590 (Miss. Ct. App. 2017) ..........................................................................10, 13

*MultiPlan, Inc. v. Holland,*
  937 F.3d 487 (5th Cir. 2019) .........................................................................................21, 22

*Northlake Dev. L.L.C. v. BankPlus,*
  60 So. 3d 792 (Miss. 2011) ...........................................................................................14, 15

*Okoloise v. Yost,*
  283 So. 3d 49 (Miss. 2019) .................................................................................................24

*Orr v. Morgan,*
  230 So. 3d 368 (Miss. Ct. App. 2017) ................................................................................29

*Patriot Com. Leasing Co. v Jerry Enis Motors, Inc.,*
  928 So. 2d 856 (Miss. 2006) ..............................................................................................10

*Peoples Bank v. Bryan Bros. Cattle Co.,*
  504 F.3d 549 (5th Cir. 2007) ..............................................................................................25

*Reed v. Marshall,*
  142 F.4th 338 (5th Cir. 2025) ...............................................................................................5

*Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC,*
  271 So. 3d 445 (Miss. 2019) ..............................................................................................19

*RGH Enters., Inc. v. Ghafarianpoor,*
  329 So. 3d 447 (Miss. 2021) ........................................................................................6, 7, 9

*SEC v. W. Fin. Grp. et al.,*
  Case No. 3:08-cv-00499-N (N.D. Tex.) ..............................................................................26

*Smith v. Redd*,
    593 So. 2d 989 (Miss. 1991) ..................................................................................25

*Sneed v. Ford Motor Co.*,
    735 S. 2d 306, 308 (Miss. 1999) ...........................................................................25

*Tatum v. Smith*,
    887 F. Supp. 918 (N.D. Miss. 1995) .....................................................................23

*Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*,
    32 F.3d 953 (5th Cir. 1994) .....................................................................................6

*Troelstrup v. Index Futures Grp., Inc.*,
    130 F.3d 1274 (7th Cir. 1997) ...............................................................................20

*U.S. v. King*,
    93 F.4th 845 (5th Cir. 2024) ..................................................................................31

*U.S. v. Mathew*,
    916 F.3d 510 (5th Cir. 2019) .................................................................................31

*Wiand v. ATC Brokers Ltd.*,
    96 F.4th 1303 (11th Cir. 2024) .......................................................................18, 20

<u>Statutes and Rules</u>

18 U.S.C. § 3663A ...........................................................................................30, 31

Fed. R. Civ. P. 56 ....................................................................................................5

Miss. Code § 11-1-65 .............................................................................................32

Miss. Code § 79-10-67 .............................................................................................6

Miss. Code § 79-13-202 .........................................................................................25

Miss. Code § 79-13-404 .........................................................................................21

Miss. Code § 97-43-3.1 ..........................................................................................23

Miss. Code § 97-43-9 .............................................................................................23

<u>Other Authorities</u>

Restatement (Second) of Torts § 876 ...............................................................19, 22

Restatement (Second) of Agency § 261 ...........................................................10, 11

**INTRODUCTION**

The Receiver for Madison Timber and Lamar Adams seeks to hold the Baker Donelson law firm vicariously liable for all losses occasioned by the Madison Timber Ponzi scheme. No factual or legal basis exists for these broad sweeping claims. The Receiver's claims are based entirely on the conduct of Jon Seawright and Brent Alexander, but they were running their own timber investment business through their personal LLCs, wholly separate from Baker Donelson.

The Court observed in its prior Order, if "the evidence generated through discovery shows that Alexander and Seawright were truly out on their own, abusing their positions without their employer's knowledge . . . Baker Donelson will have strong arguments at summary judgment." ECF No. 70 at 14.

Discovery has concluded, and the evidence shows exactly that: Alexander and Seawright acted on their own. Baker Donelson did not have anything to do with Adams, Madison Timber, or the Alexander Seawright LLC entities. It never represented them. Baker Donelson received zero proceeds or benefits from Alexander's and Seawright's timber business. Discovery also has proven Alexander and Seawright *never* used Baker Donelson's client escrow account for their timber business, thus disproving the inference from the Receiver's complaint the Court found significant at the 12(b)(6) stage. ECF No. 112 at 2 ("[F]or better or for worse, in our system of justice inferential errors are to be resolved at the summary judgment stage.").

These facts are dispositive. The law does not impose vicarious liability on a law firm or other business for the actions of an employee who was not acting within the scope of his employment and without a purpose to benefit the employer. Nor does the law impose a duty to "supervise" employees in their conduct outside of their work, which Alexander and Seawright timber fund indisputably was. Baker Donelson is not, and never has been, in the business of timber investments, and it did not profit or stand to profit from this timber business. There also

1

was no "apparent authority." The Receiver stands in the shoes of the fraudster, Lamar Adams, and his wholly-owned entity, and Adams knew he was not dealing with Baker Donelson. In all events, Baker Donelson did nothing to make anyone think it was sponsoring the timber investments, which it indisputably was not doing. *See infra* **Part I.**

That Alexander and Seawright were running their timber fund as a side business is enough to end this case at summary judgment, because there is no other possible basis to find Baker Donelson liable if it is not responsible for Alexander's and Seawright's acts. But summary judgment is warranted for additional reasons:

Madison Timber cannot prove it was defrauded or that Baker Donelson owed, much less breached, some duty to it. And several of the Receiver's claims fail because they require actual knowledge of wrongdoing. Although Alexander and Seawright misled investors (e.g., about the rigor of their due diligence), there is zero evidence they knew Madison Timber was a Ponzi scheme. Adams alone knew that. Nor did Alexander and Seawright enter into a "joint venture" with Adams to defraud investors. *See infra* **Part II**.

Even if the Receiver could make out the elements of her claims, they are nonetheless barred by the doctrine of *in pari delicto*. The Receiver stands in the shoes of the fraudster and his instrumentality, which bars any recovery against Baker Donelson. *See infra* **Part III.**

In any event, the Receiver cannot prove any recoverable damages. Even assuming the Receiver could pursue investors' losses—a "deepening insolvency" theory the Fifth Circuit prohibits—proximate causation would limit any recovery against Baker Donelson to the losses of investors in Alexander Seawright Timber Fund I, LLC, the only investors who had contact with Alexander and Seawright. All of those losses have been repaid through Alexander's and Seawright's criminal restitution—the remaining damages are zero. And there is no basis under Mississippi law for punitive damages. *See infra* **Part IV**.

The Court should enter summary judgment for Baker Donelson on all counts.

## SUMMARY OF UNDISPUTED FACTS

Lamar Adams operated a Ponzi scheme through his company, Madison Timber Properties, LLC ("Madison Timber"). SOF ¶ 1.[1] Adams told investors he would use their funds to buy rights to timber tracts, which he would sell to mills at a profit. *Id.* He issued promissory notes to investors to obtain funding. *Id.* He told investors the notes were secured by timber deeds and cutting agreements. *Id.* The notes were fraudulent: there were no timber rights or profits. *Id.* Adams was operating Madison Timber as a Ponzi scheme. *Id.*

Adams has always maintained he—and he alone—knew Madison Timber was a fraud. *Id.* ¶ 2. He surrendered to federal authorities in April 2018 and "admit[ted] to all of the conduct of the entire scheme and artifice to defraud." *Id.* ¶ 6. The Court appointed Alysson Mills as a receiver for the estate of Adams and Madison Timber (the "Receiver"). *Id.* ¶ 7. The Receiver filed this and other lawsuits against parties who she alleges caused the scheme to grow.

Baker Donelson is a law firm. *Id.* ¶ 36. Madison Timber was never a firm client and the firm did no legal work related to Madison Timber. *Id.* ¶ 40. Baker Donelson is not an investment advisory. *Id.* ¶ 38. The firm does not employ anyone as investment advisors for clients. *Id.* ¶ 39. The firm did not manage investments in Madison Timber. *Id.* ¶¶ 28, 39–40.

Baker Donelson employed Jon Seawright as a transactional lawyer, focused on the healthcare industry. *Id.* ¶¶ 10–11. The firm employed Brent Alexander as a lobbyist. *Id.* ¶¶ 8–9.

Alexander and Seawright had personal outside businesses in addition to their work at Baker Donelson. Relevant here, they personally formed and operated LLCs that bore their names: Alexander Seawright, LLC and Alexander Seawright Timber Fund I, LLC ("ASTFI").

---

[1] Baker Donelson submits with this Motion for Summary Judgment a separate Statement of Undisputed Facts ("SOF"), with support for the propositions in this brief. *See* Ex. 1.

*Id.* ¶¶ 15–18.[2]  Through their LLCs, Alexander and Seawright pooled money from investors to extend loans to Madison Timber.  *Id.* ¶ 17.  These investors signed subscription agreements to purchase membership interests in ASTFI.  *Id.* ¶ 21.  The subscription agreements included a merger clause: "Subscriber acknowledges that the entire terms and conditions of this investment are contained in the LLC Agreement of the Company," which "supersede[s]" any "prior materials or information."  *Id.* ¶ 22.  Baker Donelson was not a party to any of those agreements, and those documents did not mention Baker Donelson.  *Id.* ¶¶ 23, 51.

Baker Donelson had no ownership interest or managerial authority with respect to the Alexander-Seawright LLCs.  *Id.* ¶ 44.  The firm did not profit from the LLCs or from Madison Timber.  *Id.* ¶¶ 43, 46.  No money from Madison Timber or Alexander's and Seawright's timber fund ever passed through the firm's bank accounts.  *Id.* ¶ 45.

Alexander and Seawright never informed Baker Donelson's management about their timber business prior to April 2018 when it became public knowledge.  *Id.* ¶¶ 84–89.  Nor did anyone at Baker Donelson, including Alexander and Seawright, know Adams was engaged in fraud.  *Id.* ¶¶ 26, 84–90.  Alexander and Seawright each eventually pled guilty to a count of conspiracy to commit wire fraud on the ground that they falsely represented to investors they would perform certain due diligence and misled investors about the commissions they received.  *Id.* ¶¶ 31–32.  They were not charged with, and did not plead guilty to, knowing complicity in Adams's Ponzi scheme.  *Id.* ¶¶ 32–33.  The evidence corroborates that they had no such knowledge.  *Id.* ¶¶ 2, 26.

The Receiver seeks to recover from Baker Donelson all losses sustained by all investors in Madison Timber.  That includes not only investors in ASTFI, but also the much larger

---

[2] Alexander and Seawright also formed Alexander Seawright Timber Fund II, LLC, but it never began operations and never provided any money to Madison Timber.  SOF ¶ 25.

universe of direct investors in Madison Timber who never dealt with Alexander or Seawright. A few of those direct investors "heard" Adams had worked with Baker Donelson. *Id.* ¶ 77. But none of them had spoken with anyone at Baker Donelson about such inadmissible hearsay—nor knew Alexander or Seawright existed. *Id.* ¶ 78.

As of November 2025, the remaining net losses to investors in ASTFI are approximately $596,775.59, even without subtracting the fees paid to the Receiver and her lawyers. *Id.* ¶¶ 107, 109. Alexander and Seawright paid $977,044.52 in restitution, which the Receiver is holding. *Id.* ¶¶ 34–35, 110. If the Receiver were to distribute the restitution to the victims of Alexander's and Seawright's conspiracy to commit wire fraud, they would be made whole. *Id.* ¶¶ 107, 110.

## LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). When the non-moving party bears the burden of proof and cannot "make a showing sufficient to establish the existence of an element essential to [its] case," summary judgment is required. *Reed v. Marshall*, 142 F.4th 338, 349 (5th Cir. 2025).

## ARGUMENT

## I.    BAKER DONELSON IS NOT VICARIOUSLY LIABLE FOR THE PERSONAL ACTIVITIES OF ALEXANDER AND SEAWRIGHT NOR DID IT BREACH AN ALLEGED DUTY TO SUPERVISE THEM

The Receiver's claims against Baker Donelson are based solely on the law firm's alleged vicarious liability for the conduct of Jon Seawright and Brent Alexander, and the firm's alleged failure to supervise that conduct.[3] The Receiver's evidence cannot support these claims because

---

[3] The Amended Complaint asserts Counts I–VI against Alexander and Seawright, for which the Receiver argues Baker Donelson is vicariously liable. Although it also purports to assert Counts I–III against Baker Donelson directly, the Receiver clarified at her deposition these claims are based solely on vicarious liability for the conduct of Alexander and Seawright. SOF ¶ 96.

Alexander and Seawright's timber business was separate from Baker Donelson.

Mississippi law limits the vicarious liability of a professional corporation like Baker Donelson to acts of employees performed "within the scope of their employment" or "of their apparent authority to act for the corporation." Miss. Code § 79-10-67(2). Regarding a duty to supervise, Mississippi law imposes no duty on employers "to supervise their employees when the employees are off-duty or not working," or to uncover "employees' concealed, clandestine, personal activities." *Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 489 (Miss. 2010); *see also Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994) (under Mississippi law, "[e]mployers also are not liable for failure to supervise when the employee engages in independent criminal conduct").

### A.    Alexander's and Seawright's Timber Business Was Outside the Scope of Their Baker Donelson Employment

To fall within the scope of employment, an employee's activity must be (1) "of the kind he is employed to perform" and (2) "in furtherance of the [employer's] interests." *RGH Enters., Inc. v. Ghafarianpoor*, 329 So. 3d 447, 449 (Miss. 2021). Both elements are required, *Com. Bank v. Hearn*, 923 So. 2d 202, 207–08 (Miss. 2006), but neither is present here.

### 1.    A timber business is not an activity "of the kind" Baker Donelson employed Alexander and Seawright to perform

Baker Donelson did not employ Alexander and Seawright to run a timber investment business. SOF ¶¶ 8–11, 39. Where an employee's activity is not "of the kind he is employed to perform," the relationship between the employer and employee is "temporarily suspended" because the employee's conduct is not "within the scope of the authority conferred" by the employer. *RGH*, 329 So. 3d at 449–50; *Gulledge v. Shaw*, 880 So. 2d 288, 295–96 (Miss. 2004).

There is no evidence that Alexander's and Seawright's timber business was "the kind [of work they were] employ[ed] to perform." *RGH*, 329 So. 3d at 449. To the contrary, Alexander's

duties at Baker Donelson encompassed government relations, public affairs, and lobbying.  SOF ¶ 9.  Seawright's duties were those of a lawyer.  *Id.* ¶ 10.  Baker Donelson is a law firm, which also employs a few lobbyists, such as Alexander.  *Id.* ¶¶ 36–37.  Baker Donelson is not in the investment business.  *Id.* ¶ 38.  It is not a brokerage or investment advisor.  *Id.*  It did not employ Seawright or Alexander as an investment advisor or to perform investment-related activities.  *Id.* ¶¶ 9–10, 39.  Baker Donelson does not employ ***anyone*** for that purpose.  *Id.* ¶ 39.

The business Alexander and Seawright operated through ASTFI—a business they alone owned—involved investment activities in the timber industry, specifically collecting money from investors, making loans, acquiring timber rights, and distributing loan payments.  *Id.* ¶¶ 17–24.  None of these activities was "the kind [of work they were] employ[ed] to perform" as Baker Donelson employees.  *RGH*, 329 So. 3d at 449.  Indeed, they kept the profits from these activities.  *Id.* ¶¶ 24, 27, 46.

Alexander and Seawright testified their lending activities were unaffiliated with Baker Donelson and they took concrete steps to ensure separateness from Baker Donelson.  They formed separate LLCs named after themselves: Alexander Seawright, LLC and Alexander Seawright Timber Fund I [and II], LLC.  SOF ¶ 17.  They neither sought nor obtained Baker Donelson's approval or sponsorship.  *Id.* ¶ 84.  Baker Donelson had no ownership interest in the LLCs, nor did it exercise any control over them.  *Id.* ¶¶ 44–46.  Alexander testified ASTFI "was completely separate and apart from Baker Donelson."  *Id.* ¶ 47.  He described ASTFI "as a side business," testimony Seawright corroborated.  *Id.* ¶¶ 14, 27, 47.  Alexander and Seawright did not use any Baker Donelson bank accounts; they set up separate accounts.  *Id.* ¶¶ 45, 48.  The documents investors received identified the issuer of the membership interests as ASTFI, and it used Seawright's personal residence as the address.  *Id.* ¶¶ 21–23, 51.

Alexander's and Seawright's ASTFI activities were "for purely personal benefit."  *Seay*,

42. So. 3d at 488.  Alexander and Seawright personally retained all the money flowing from their activities and nothing was paid to Baker Donelson.  *See also Berhow v. The Peoples Bank*, 423 F. Supp. 2d 562, 573 (S.D. Miss. 2006) (finding senior loan officer acted outside scope of employment as he "admitted that he stole money from the Bank for purely personal reasons . . . [and] no one at the Bank was aware of his conduct").

The Mississippi Supreme Court repeatedly has recognized the core principle that an employer is not responsible when the employee "deviates from the direct line of duty to accomplish some personal end."  *Gulledge*, 880 So. 2d at 295.  In *Commercial Bank v. Hearn*, the court reversed the trial court's denial of summary judgment and held, after noting the employee's authorized responsibilities, that there was "no evidence produced by the Hearns or otherwise to show that making charitable solicitations . . . [wa]s the kind of work [the employee] was employed by the Bank to perform."  923 So. 2d at 208–09.  In *Gulledge v. Shaw*, the court affirmed summary judgment for the employer finding that, although the employee's role included notarization, the employee "ceased to be an actor on the Bank's behalf" when the employee notarized a forged document as it "was not in the furtherance of the Bank's business."  880 So. 2d at 296.  In *Seay*, the Court held, because a law firm employee's romantic affair "was not in any way related to the [legal] representation" he was hired for, such activity was outside the scope of employment.  42. So. 3d at 489.

### 2.    Alexander and Seawright were not "motivated by a desire to benefit" Baker Donelson

The Receiver's "scope of employment" claim against Baker Donelson fails for the additional reason that she developed no evidence Alexander and Seawright's timber business was "motivated by a desire to benefit" Baker Donelson or "furthered the business interests" of Baker Donelson.  *Seay*, 42 So. 3d at 489; *see also Gulledge*, 880 So. 2d at 295–96.  The benefit

must be direct and material—not a "perceived, possible, indirect benefit to the employer" that is "too little actuated by a purpose to serve" the employer. *RGH*, 329 So. 3d at 449.

The Receiver stakes her case on Alexander's and Seawright's using Baker Donelson resources in operating their timber business. *See, e.g.*, ECF No. 57 (Amended Complaint) (hereinafter "AC") ¶ 87. Discovery has proven some of the Receiver's allegations to be false, and the remainder not to support her claim.

*First*, in resolving the motion to dismiss, the Court found significant the Receiver's allegation Alexander and Seawright had used Baker Donelson's escrow account for their timber business, and observed that "[o]nly discovery will show" whether the firm's escrow account in fact was used. ECF No. 112 at 2 (alteration in original); *see also* ECF No. 70 at 14. Discovery has shown conclusively the escrow account was ***not*** used for the timber business. SOF ¶ 45.

*Second*, Alexander and Seawright occasionally used law firm conference rooms or directed firm clerical employees to perform tasks related to their personal timber business. But the fact that an employee conducts personal activities within the "authorized time and space," *Hearn*, 923 So. 2d at 208, or "uses the appliances" of his employer does not transform the activity into one within the scope of employment, *Gulledge*, 880 So. 2d at 295. Instead, the employee must be "motivated by a desire to benefit" the employer or must have "furthered the business interests" of the employer even if the activity was conducted during working hours, using the employer's resources, and in the employer's place of business. *Seay*, 42 So. 3d at 489; *see also Gulledge*, 880 So. 2d at 295–96.

A contrary rule would "render most employers vicariously liable for virtually all of their employees' activities." *Hearn*, 923 So. 2d at 208. Virtually all employees make some use of employers' resources (telephones, computers, etc.) for personal reasons. Even the Receiver's expert in law-firm management does. SOF ¶ 71. It thus "defies reason" to hold employers

9

responsible for the acts of an employee, though performed in the office during working hours, were not for the employer's benefit. *Seay*, 42 So. 3d at 489. To that end, the inquiry is not simply whether the employee performed the activity in question during working hours, or used the employer's resources, but whether the employee performed the activity to benefit the employer in a meaningful and non-speculative way. *See Gulledge*, 880 So. 2d at 295 (noting the "inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it" nor "whether in doing the act he uses the appliances of the" employer ); *Hearn*, 923 So. 2d at 208 (rejecting theory that the employee's activities "might result in new business for the Bank").

The record does not support vicarious liability. Alexander and Seawright conducted their timber business for their own profit, not to benefit Baker Donelson. SOF ¶ 27. The law firm received no compensation from Alexander's and Seawright's timber activities. *Id.* ¶ 46.

## B.     The Receiver Cannot Prove "Apparent Authority"

Apparent authority is "authority that the principal has by words or conduct held the alleged agent out as having." *Patriot Com. Leasing Co. v Jerry Enis Motors, Inc.*, 928 So. 2d 856, 864 (Miss. 2006) (emphasis omitted). Apparent authority must be assessed "from the point of view of the third person" who is suing the principal. Restatement (Second) of Agency § 261, cmt. a (A.L.I. 1958). The plaintiff must demonstrate (1) "acts or conduct on the part of the principal indicating the agent's authority," (2) "reasonable reliance on those acts," and (3) "a detrimental change in position as a result of such reliance." *Andrew Jackson Life Ins. Co. v. Williams,* 566 So. 2d 1172, 1181 (Miss.1990). Crucially, "if evidence on any of the three elements is missing, summary judgment is appropriate." *Morgan v. MML Invs. Servs., Inc.*, 226 So. 3d 590, 596 (Miss. Ct. App. 2017). The Receiver cannot prove any of the elements.

As the Receiver has told the Court, any claim of "apparent authority" she is pursuing "is

assessed from the point of view of Madison Timber, *not* investors," ECF No. 83 at 8 (Case 3:22-cv-36), and investor "[r]eliance is not an element of the Receiver's claims," ECF No. 125 at 8 (Case 3:18-cv-866). There is no evidence Adams believed Alexander or Seawright were acting on behalf of Baker Donelson when they transacted with Madison Timber. To the contrary, Adams testified he understood he was dealing with ASTFI, not Baker Donelson. SOF ¶ 72.

The Receiver evidently is no longer pursuing assigned claims on behalf of investors,[4] but, if she were, she would have to show each investor whose claim she asserts reasonably relied on some action by Baker Donelson to conclude Alexander and Seawright were acting on behalf of Baker Donelson. *See Andrew Jackson Life Ins. Co.*, 566 So. 2d at 1181; Restatement (Second) of Agency § 261, cmt. a. The evidence does not support any such claim.

*First*, there is no evidence **Baker Donelson** indicated to investors Alexander or Seawright were acting for the firm in their timber activities. SOF ¶¶ 44–51, 75, 83. Apparent authority "hinges upon the acts and representations made **by the principal** to the third party" indicating the agent's authority. *Joan Cravens, Inc. v. Deas Constr. Inc.*, 2016 WL 6997508, at *7 (S.D. Miss. Nov. 30, 2016) (emphasis added). It is insufficient that an **agent** "held herself out" as authorized because "the acts or conduct indicating the authority of the agent must be made by the principal." *Forest Hill Nursing Ctr., Inc. v. McFarlan*, 995 So. 2d 775, 781–82 (Miss. Ct. App. 2008). An agent's use of its principal's resources does not suffice. *Joan Cravens*, 2016 WL 6997508, at *7–8 (party's use of defendant's "editing system" was insufficient to create apparent authority).

The evidence does not show the alleged principal, Baker Donelson, told investors it had authorized Alexander and Seawright to sell timber investments on its behalf. And even if an agent's actions could establish apparent authority to an investor, the evidence shows Alexander

---

[4] *See* Joint Pre-Conference Statement on Status of Discovery (Mar. 21, 2025) at 12 (Receiver stating "[t]he plaintiff in these cases is the [Madison Timber] estate, not individual investors").

and Seawright took steps to keep their timber activities separate from the firm. *Supra* Part I.A.

*Second*, there is no evidence anyone ***reasonably relied*** on a belief ASTFI was sponsored by Baker Donelson. Apparent authority "requires an inquiry into the reasonableness of plaintiff's beliefs, as opposed to the reasonableness of defendant's action or inaction." *FSC Sec. Corp. v. McCormack*, 630 So. 2d 979, 986 (Miss. 1994). As to direct investors in Madison Timber (i.e., those who invested outside of ASTFI), there is no evidence a single one believed Baker Donelson had authorized Alexander and Seawright to sell timber investments on its behalf. SOF ¶ 77. Six direct investors testified that they had heard Baker Donelson "mentioned" or referenced in connection with Madison Timber or Adams, but none of them knew Alexander or Seawright or communicated with anyone at the firm. *Id.* ¶¶ 77–79.

As to ASTFI investors, they signed subscription agreements to purchase membership interests in ASTFI's loans to Madison Timber. ASTFI was a party to the agreements. Baker Donelson was not, and the agreements did not mention the firm. *Id.* ¶¶ 21–23, 51. These investors are "charged with knowing the contents of [the] document [they] execute[d]." *Cascio v. Cascio Investments, LLC*, 327 So. 3d 59, 69 (Miss. 2021). Nearly all ASTFI investors who testified understood ASTFI was separate from Baker Donelson, and they had no impression Baker Donelson authorized the timber business. SOF ¶ 75.

Against all that, the Receiver's claim hinges on statements from three witnesses—one investor, and two spouses of investors—none of whom provided a reasonable basis for their belief that Baker Donelson was involved in Madison Timber:[5]

- AS.11.A, the husband of an investor (AS.11.B), testified that "we saw Jonathan Seawright [and] Baker Donelson as the same." SOF ¶ 76. He agreed the term sheet and subscription agreement for ASTFI never mentioned Baker Donelson,

---

[5] Pursuant to the Protective Order, Baker Donelson refers to investors by the numbers assigned to them by the Receiver. ECF No. 6 ¶ 7 (Case No. 3:22-cv-36). For those investors who were not assigned numbers by the Receiver, Baker Donelson has assigned numbers to them.

and he stated that he "never discussed [their] timber investment with anyone who worked at Baker Donelson, apart from Jon Seawright." *Id.*

- AS.11.B testified that she had (false) information that "the retirement fund of Baker Donelson" was invested in ASTFI, but the "sole sources" for that information were her husband (AS.11.A) and his friend AS.05. *Id.*

- Former hospital CEO (and convicted felony fraudster) AS.05.A, the husband of an investor, testified (unreasonably) that he believed ASTFI was the "Baker Donelson Timber Fund" and that "100 percent of the shareholders in Baker Donelson were invested" in timber. *Id.* These were inferences AS.05.A drew from conversations that he had with Seawright and another Baker Donelson attorney, AS.08. *Id.* ("Q. So [AS.08] told you partners were invested in it -- and you drew the inference that all partners were invested in it? A. Yeah.").

Given all the evidence, an investor's "unilateral assumption" that Baker Donelson authorized the timber fund is objectively unreasonable. *MML Invs. Servs., Inc.*, 226 So. 3d at 598.[6]

## C.    The Receiver Cannot Prove Ratification

Although not alleged in her operative complaint, the Receiver now suggests Baker Donelson is vicariously liable for Alexander's and Seawright's timber activities because it ratified them. That theory is insupportable.

Baker Donelson has never taken any action to ratify the acts Alexander and Seawright took on behalf of their side businesses. On the contrary, since Adams's fraud was revealed in April 2018, Baker Donelson has consistently (and correctly) shown that Alexander's and Seawright's investment business had nothing to do with the law firm. *See, e.g.*, Mem. Supp. of Baker Donelson's Mot. Dismiss, ECF No. 60 at 27 ("Alexander and Seawright acted for their own personal business without any connection to or authority from Baker Donelson[.]").

The Receiver suggests merely "allow[ing] Seawright and Alexander to remain employed . . . after April 2018" suffices for ratification. *See* ECF No. 155 at 7. That is wrong as a matter

---

[6] To the extent the Court concludes otherwise, the Receiver's claim would be limited to any damages allegedly suffered by AS.05 and AS.11, and with Alexander's and Seawright's restitution payments for ASTFI investors, the damages would be zero. SOF ¶¶ 107, 110.

of settled law. "[T]he mere retention of the servant in the employment will not constitute such ratification as will render the master liable for the unauthorized act." *Franklin v. Turner*, 220 So. 3d 1003, 1009 (Miss. Ct. App. 2016). "The mere fact that such employee is retained in the master's employ, and mere silence on the master's part relative to the [tort], is not sufficient evidence that the master adopted the act, nor does it lead to the inference that he assumes responsibility for the servant's [tort]." *Id.* (first alteration in original). Indeed, *Franklin* found an employee's retention even after the employee pled guilty to a crime did not "render[] [the employer] vicariously liable for [the employee's] tortious action." *Id.* at 1010.

The Receiver's argument for ratification is even weaker than the unavailing argument in *Franklin*. During their employment, neither Alexander nor Seawright pled guilty to criminal conduct and both denied wrongdoing. Unlike the employer in *Franklin*, Alexander's and Seawright's employment relationship with Baker Donelson ended long before they pled guilty. Seawright took a leave of absence in May 2021, the day after his criminal indictment was unsealed, and he resigned from the firm in September 2021, long before he pled guilty in July 2022. SOF ¶¶ 13, 31, 91. Alexander terminated his employment in January 2020, long before he was accused of a crime. *Id.* ¶¶ 8, 29. In all events, Alexander and Seawright never pled guilty to conspiring with Ponzi-schemer Adams, they have always maintained they did not know about the Ponzi scheme, and all the evidence corroborates them. *Id.* ¶¶ 2, 26, 33, 92.

Further, "[r]atification does not arise by operation of law; rather, '[a] person ratifies an act by (a) ***manifesting assent*** that the act shall affect that person's legal relations, or (b) conduct that justifies a ***reasonable assumption*** that the person so consents.'" *Northlake Dev. L.L.C. v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011) (quoting Restatement (3d) of Agency § 4.01(2)). A principal's inaction can result in ratification "only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act." *Id.* (citing Restatement

(3d) of Agency § 4.01 cmt. f); *see also Javier v. City of Milwaukee*, 670 F.3d 823, 832 (7th Cir. 2012) ("failure to terminate or reprimand an employee by itself is not likely to ratify the employee's unauthorized action because the employer may have varied reasons for failing to take action adverse to an employee").  No evidence shows Baker Donelson "manifest[ed] assent" regarding Alexander's and Seawright's outside business activity, engaged in conduct justifying a "reasonable assumption" of such, or "ha[d] notice" that others would infer such assent. *BankPlus*, 60 So. 3d at 797 (emphasis omitted).  On the contrary, Baker Donelson repeatedly has stated publicly in the press and in this case that it had nothing to do with Alexander's and Seawright's timber activities.  SOF ¶¶ 94–95.

No reasonable observer could think Baker Donelson had ratified activities implicated in a Ponzi scheme as its own merely because Alexander and Seawright remained employed for a period after April 2018.  And before April 2018, Baker Donelson was not aware of Alexander's and Seawright's timber activities and could not ratify such activities.  The Receiver's contrary suggestion would require an employer automatically to fire an accused employee to avoid potential liability, even where the employee denies wrongdoing.  That is not the law.

### D.    The Receiver Cannot Prove Negligent Supervision/Retention (Count VIII)

The Receiver's attempt to hold Baker Donelson liable for "negligent supervision" fails for several reasons.  *First*, Alexander's and Seawright's timber activities were personal business that Baker Donelson had no duty to supervise.  Mississippi law imposes no duty on employers to "supervise their employees when the employees are off-duty or not working," nor does it require employers to uncover their "employee's concealed, clandestine, personal activities."  *Seay*, 42 So. 3d at 489.  An employer has "no legal duty to supervise" an employee if the employee's conduct "was outside the scope of his employment and purely for his own benefit."  *Id.* at 490.

*Second*, even assuming the firm had some duty to supervise the timber business (it did

not), the Receiver cannot prove Baker Donelson breached such a duty. Baker Donelson management had no knowledge of Alexander's and Seawright's timber activities, much less did they know those activities involved wrongdoing. An employer must have "either ***actual or constructive knowledge*** of an employee's ***incompetence or unfitness***" to be liable for a negligent supervision of an employee who injures a third party. *Campbell v. Novartis Pharm. Co.*, 2020 WL 3452240 at *7 (S.D. Miss. Mar. 30, 2020) (emphases added) (citing *Parmenter v. J&B Enters., Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012)). It is not sufficient for a plaintiff to show "the employee acted incompetently." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 683 (Ala. 2001). Such evidence "do[es] not amount to proof that [defendant] was aware of and, negligently or wantonly, disregarded acts of incompetence by [the employee] that damaged [plaintiff]." *Id.* The Receiver therefore "must present evidence" of Baker Donelson's actual or constructive knowledge of Alexander's and Seawright's alleged incompetence with respect to their timber activities to "create a genuine issue of material fact on an improper . . . supervision theory of liability." *Baker v. Wal-Mart Stores E., LP*, 2021 WL 4050850, at *5 (S.D. Miss. Aug. 12, 2021), *aff'd*, 2022 WL 1078030 (5th Cir. Apr. 11, 2022).

Discovery has confirmed the firm did not know of Alexander's and Seawright's timber activities, much less of any unfitness or criminality with respect to these activities. There is no evidence anyone on Baker Donelson's Board of Directors (apart from Seawright himself) knew about Alexander's and Seawright's timber activities at all, let alone that they were involved in any wrongdoing. SOF ¶¶ 84–97. Seawright testified he did not disclose any information about their timber activities to any officer of the firm, any member of the board, his practice group leader, or the managing shareholder of the Jackson office. *Id.* ¶¶ 84–88.

At her deposition, the Receiver admitted (i) she has no evidence Baker Donelson management knew about Alexander's and Seawright's timber activities; (ii) she could not

identify a single person at Baker Donelson who believed Alexander and Seawright relied on their affiliation to recruit investors; and (iii) she could not identify a single person who believed (much less knew) Alexander and Seawright "targeted" firm clients for their timber activities. *Id.* ¶¶ 89–90. Most importantly, the Receiver could not identify a single person at Baker Donelson (other than Alexander or Seawright) who she contends acted with negligence. *Id.* ¶ 97.

To be sure, six Baker Donelson employees personally invested in ASTFI, and thus knew it existed. But their knowledge of their personal investments is not imputed to the firm. "An agent's knowledge is imputed to the corporation where the agent is acting within the scope of his authority and where the knowledge relates to matters within the scope of that authority." *In re Hellenic Inc.*, 252 F.3d 391, 395 (5th Cir. 2001). And in any event, none of these six (nor anyone else at the firm) had any duty to supervise an outside business like the timber fund or had any knowledge that Alexander or Seawright were "incompetent" or "unfit."

*       *       *

The Receiver cannot carry her burden to prove Baker Donelson is vicariously liable for the conduct of Seawright and Alexander. Nor can she prove Baker Donelson is liable for negligently supervising or retaining them. Baker Donelson respectfully requests the Court enter summary judgment in its favor on all counts against the firm.

## II.    THE RECEIVER CANNOT PROVE THE ELEMENTS OF HER CLAIMS

Not only is Baker Donelson not liable for the alleged conduct of Alexander and Seawright, for separate reasons the Receiver cannot prove the required elements of her claims.

### A.    The Receiver Cannot Prove the Elements of Her Tort Claims Because Adams and Madison Timber Were Not Defrauded

Each of the Receiver's tort claims fails because the Receiver cannot prove their essential elements. The claims are based on Alexander's and Seawright's assisting Madison Timber's

fraud, or failing to uncover and stop that fraud. But the Receiver is bringing the claims of Madison Timber and Lamar Adams, and **they** were not defrauded or targeted by fraud.[7]

To be clear, this argument has nothing to do with the *in pari delicto* defense. Whether or not the Receiver's claims are barred by Adams's participation in fraud, the Receiver still must prove the elements of her claims, and those elements must be viewed from the standpoint of Adams and Madison Timber, in whose shoes the Receiver stands.[8] Because Adams and Madison Timber were not defrauded, they cannot recover for fraud. Nor can they complain that Alexander and Seawright negligently failed to stop their fraud; no such duty in tort exists.

Thus, a unanimous Eleventh Circuit concurrence held that a court-appointed receiver for a "corporation used for Ponzi schemes" does not have "a cause of action to sue in common-law tort on behalf of a Ponzi corporation," including torts of aiding and abetting fraud, breach of fiduciary duty, and negligence. *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1315–16 (11th Cir. 2024). While the *Wiand* court applied Florida law, its reasoning was based on tort principles that exist equally in Mississippi, including the "fundamental principle" that "[t]he law does not afford a criminal conspirator" like Adams "the right to sue his coconspirator for civil damages arising out of a criminal conspiracy." *Bolton v. John Lee, P.A.*, 405 So. 3d 1, 8 (Miss. Ct. App. 2023). Nor could Adams sue for negligence in failing to discover his own fraud. *See id.* at 12 (no authority for the proposition that banks have "a duty to report any suspicious activity" to the person who committed the fraud).

---

[7] The Court previously denied Baker Donelson's early motion for summary judgment based on similar arguments, finding discovery had not yet established anything, where no depositions had yet been taken. ECF No. 136 at 2. Baker Donelson now brings these arguments on a complete discovery record.

[8] Put another way, even if the Receiver may be "cleansed" of the wrongdoing of Adams and Madison Timber for purposes of the *in pari delicto* defense, *see* ECF No. 70 at 17–18, she still cannot sue for claims Adams and Madison Timber never had. The Receiver still stands in their shoes, not someone else's.

The evidence does show Adams and Madison Timber perpetrated a fraud ***against investors***, including ASTFI—but that fraud is not one for which Madison Timber could sue. *See* Restatement (2d) of Torts § 876 (claim for aiding and abetting must be brought by a "third person"); *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013) ("[A] federal equity receiver has standing to assert only the claims of the entities in receivership," not "the entities' investor-creditors."). The Receiver cannot bring investors' claims, except by way of assignment, but as explained above, the Receiver has eschewed such claims and has not tried to prove the elements of any individual investor's assigned claim.

These principles defeat each of the Receiver's tort claims against Baker Donelson:[9]

Civil Conspiracy (Count I) and Aiding and Abetting (Count II): The claims of "civil conspiracy" and "aiding and abetting" are "derivative" and require an underlying wrong—that is, a tort or statutory violation, *see Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (cited at ECF No. 70 at 9 n.9)—that was conspired or aided. *Haney v. Cont'l Cas. Co.*, 2010 WL 235025, at *3 n.1 (S.D. Miss. Jan. 15, 2010). "Thus, if no duty exists as to the [direct] claims, there is no duty to defend with respect to [the derivative claims]." *Id.*

Here, the Receiver alleges a predicate tort of "fraud." AC ¶¶ 132–133. But Adams cannot have defrauded himself, nor could he have defrauded his wholly owned instrumentality, Madison Timber. The elements of fraud include a false representation, along with the plaintiff's "ignorance of its falsity," and "reliance on its truth." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 742 (Miss. 2019). The evidence conclusively shows Adams and Madison Timber knew about their own Ponzi scheme and did not rely on any false statements Alexander and Seawright allegedly made. Because Adams and Madison Timber have no claim for fraud,

---

[9] The same principles would defeat the Receiver's now dismissed claim for RICO, to the extent she seeks to revive it. *See infra* Part II.C.

Baker Donelson cannot be liable for conspiring or aiding and abetting in such fraud.

      <u>Recklessness, Gross Negligence, and Negligence (Count III) and Negligent Supervision</u>
<u>(Count VIII)</u>:  The Court previously stated Baker Donelson "had a duty to act with ordinary
care."  ECF No. 70 at 13.  But the scope of that duty does not encompass an obligation owed by
Baker Donelson to Adams and Madison Timber to prevent their criminal activity.  *See, e.g.*,
*Wiand*, 96 F.4th at 1310–11 (dismissing negligence claims); *Bolton*, 405 So. 3d at 9–13;
*Troelstrup v. Index Futures Grp., Inc.*, 130 F.3d 1274, 1276 (7th Cir. 1997).

      Under Mississippi law, as elsewhere, the foundation of a negligence claim is "[a] duty, or
obligation, recognized by law, requiring the person to conform to a certain standard of conduct,
for the protection of others against unreasonable risks."  *Carpenter v. Nobile*, 620 So. 2d 961,
964 (Miss. 1993).  Critically, there exists no "duty by the defendants to blow the whistle on [a
fraudster] by disclosing [his tortious conduct]" to the corporate entity he created and used as an
instrument of his fraud.  *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 552 (Fla. Dist.
Ct. App. 2003).  Both *Wiand* and its predecessor *Isaiah* in the Eleventh Circuit "cit[ed]
extensively to *Freeman*" in dismissing receivers' claims for negligence and other common-law
torts.  *Wiand*, 96 F.4th at 1315.  The common law in Mississippi on this point is the same as in
Florida.  *See Bolton*, 405 So. 3d at 12 (finding no authority for the proposition that banks have "a
duty to report any suspicious activity" to the person who committed the fraud).

      Nor did Alexander and Seawright (much less Baker Donelson) have a duty to stop Adams
from committing fraud.  "In Mississippi, only those who 'take charge' of a third party have the
duty to control that third party's criminal acts."  *Doe v. Hunter Oaks Apartments, L.P.*, 105 So.
3d 422, 426 (Miss. Ct. App. 2013).  No evidence suggests Alexander and Seawright or Baker
Donelson controlled Madison Timber or Adams.  To the contrary, Adams committed fraud

through Madison Timber without anyone else's knowledge.  *See* SOF ¶¶ 2–3, 26, 93.[10]

       Joint Venture Liability (Count VI):  Nor would the alleged joint venture among Alexander, Seawright, and Adams create any duty on which Adams could sue.  Under Mississippi law, the duty runs the other direction:  Adams would owe Alexander and Seawright a duty not to engage in "intentional misconduct, or a knowing violation of law," Miss. Code § 79-13-404(c), like stealing the money ASTFI lent to Madison Timber.

### B.    Defendants Had No Actual Knowledge or Awareness of Madison Timber's Ponzi Scheme, Precluding Counts I and II

       The Receiver's claims for civil conspiracy and aiding and abetting require her to carry the burden of proving Seawright or Alexander had ***actual knowledge or awareness*** Madison Timber was a fraud.  But it is undisputed Alexander and Seawright were not actually aware of the Ponzi scheme; they lent their investors' funds to Madison Timber because they believed the timber business was real.[11]  SOF ¶ 26.  That is fatal to Counts I and II.

       Civil Conspiracy (Count I):  "It is elementary" that "persons must agree . . . in order for a conspiracy to exist."  *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004); *see also MultiPlan, Inc. v. Holland*, 937 F.3d 487, 495 (5th Cir. 2019) ("[T]here must be a 'meeting of the minds on the object or course of action.'" (quoting *S. Health Corp. v. Crausby*, 174 So. 3d 916, 920 (Miss. Ct. App. 2015)).  As the Court recognized, ECF No. 70 at 9 n.7, Mississippi courts have held that "[f]or a civil conspiracy to arise, the alleged confederates ***must***

---

[10] Because the Receiver has no cause of action for negligence, she also has no cause of action for "gross negligence" or "recklessness," which entail more stringent standards.  *See, e.g.*, *Maldonado v. Kelly*, 768 So. 2d 906, 910 (Miss. 2000).

[11] If Alexander and Seawright had actual knowledge of Adams's Ponzi scheme, that would be yet another reason why their actions would be outside the scope of their employment with Baker Donelson, as a matter of law.  *Berhow*, 423 F. Supp. 2d. at 573 (employee's "fraudulent conduct . . . [was] outside the scope of his employment" and granting summary judgment).  Because there is no evidence they had such actual knowledge, we need not dwell further on this argument.

*be aware of the fraud or wrongful conduct at the beginning of the agreement*," *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) (emphasis added); *see also MultiPlan*, 937 F.3d at 495 (same).  Because Alexander and Seawright did not know the nature of Adams's Ponzi scheme, they could not have agreed to pursue it.

Relatedly, the Receiver's evidence of alleged "red flags," *see* AC ¶¶ 101–107, is insufficient to establish an agreement.  While Mississippi courts have not used the verbiage "actual knowledge" for conspiracy, *see* ECF No. 70 at 9 n.7, they require "awareness" of the fraud, *id.*, which amounts to the same thing.  Thus, in *Collier v. Trustmark Nat'l Bank*, 678 So. 2d 693, 697 (Miss. 1996), the Court held it was not enough that a defendant "should have known of [another's] improprieties"; "actual knowledge" requires "express factual information" and "awareness at the moment" of the fraud.  *Id.* (emphases omitted).

Aiding and Abetting (Count II):  A party can be liable for aiding and abetting only where he "***knows*** that the other's conduct constitutes a breach of duty[.]"  Restatement (2d) of Torts § 876(b) (emphasis added); *see* AC ¶ 138.  Evidence that a defendant "should have known about the dangers" of an alleged confederate's fraud falls short of showing the defendant "knew" about it, and thus fails to establish an aiding and abetting claim.  *Dickens v. A-1 Auto Parts & Repair, Inc.*, 2018 WL 5726206, at *3 (S.D. Miss. Nov. 1, 2018).

## C.    The Receiver Cannot Prove a RICO Claim (Count V)

The complaint alleges Alexander and Seawright are liable under the Mississippi RICO Act.  The Court dismissed the Receiver's "state RICO claim" because "none of today's defendants have been convicted of anything related to this Ponzi scheme."  ECF No. 70 at 15. To the extent the Receiver might seek to reassert that claim—and to assert it vicariously against Baker Donelson (the complaint is unclear)—it fails.

*First*, although the Receiver moved to amend after the close of discovery, ECF No. 201,

22

she did not seek to reassert Count V. Absent leave or consent, she is precluded from asserting the claim at trial. *See Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 422 (5th Cir. 1981).

*Second*, as the Court noted, the statute provides a private right of action only "against any person or enterprise convicted of engaging in activity in violation of [the RICO Act]." Miss. Code § 97-43-9(6). Alexander and Seawright have not been convicted of violating the Act. And the firm has not been convicted of anything. *Cf. In re Refco Sec. Litig.*, 2010 WL 3911780, at *1 (S.D.N.Y. Sept. 28, 2010) ("[A federal] civil RICO claim may not be premised on conduct that would have been actionable as securities fraud unless brought against a 'person that is criminally convicted in connection with the fraud,'" meaning it "requires a person-specific conviction.").

*Third*, even if the absence of a Mississippi RICO conviction was not a bar, the Fifth Circuit has held in the analogous context of federal RICO that, for an employer such as Baker Donelson to be vicariously liable for an employee's RICO conduct, the employer "must have participated as [a] principal[] in the racketeering activity 'or indirectly conducted it,' or 'derived some benefit from the agent's wrongful acts.'" *Tatum v. Smith*, 887 F. Supp. 918, 925 (N.D. Miss. 1995) (quoting *Howell Petroleum Corp. v. Weaver*, 780 F.2d 1198, 1199 (5th Cir. 1986) (per curiam), and *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995)), *aff'd*, 83 F.3d 121 (5th Cir. 1996). Baker Donelson did none of these things.

*Fourth*, the provision of the Mississippi RICO Act the Receiver cites does not reach Alexander's and Seawright's conduct. *See* AC ¶ 165. The provision makes it unlawful "to conduct, organize, supervise or manage, directly or indirectly, an organized theft or fraud enterprise." Miss. Code § 97-43-3.1(1). An "organized theft or fraud enterprise" is two or more people "associated for the purpose of effectuating the transfer or sale of ***merchandise, services or information that has a pecuniary value*** that causes a loss to the victim." *Id.* § 97-43-3.1(3) (emphasis added). The Act also provides an exhaustive list of predicate acts, which are targeted

at consumer fraud.  They include: "shoplifting," "computer fraud," "fraudulent use of identity," "false information," "fraud by mail or other means of communication," the "fraudulent use of a social security number," or "obtaining personal identity information . . . without authorization." *Id.* § 97-43-3.1(1)(a)–(g).  Alexander and Seawright pled guilty to conspiracy to commit wire fraud by "soliciting . . . funds under false pretenses and failing to use investors' funds as promised," given a lack of due diligence.  *See* Information, ECF No. 1 (Case No. 3:22-cr-84), at 1–3.  That conduct does not fall within the plain meaning of "effectuating the transfer or sale of merchandise, services or information" to Madison Timber.

### D.    The Receiver Cannot Prove Joint Venture Liability (Count VI)

The Receiver alleges Alexander and Seawright formed a "joint venture" with Adams and Madison Timber.  AC ¶ 175.  A joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management."  *Hults v. Tillman*, 480 So. 2d 1134, 1142 (Miss. 1985).  Because a "joint venture is a form of contract, and governed by contract law," both parties must have the same intent in forming their joint venture.  *Id.* at 1143; *see Logan v. RedMed, LLC*, 377 So. 3d 956, 965 (Miss. 2024) ("A fundamental principle of contract law is [] the mutuality of assent to the terms of [the] contract[.]").

To the extent the alleged "joint venture" is the Ponzi scheme, the claim fails because Alexander and Seawright did not knowingly join Adams in his fraud.  SOF ¶¶ 2, 26.  There was no common intent or meeting of the minds to form such a joint venture.  Additionally, Adams could not bring a claim arising out of such a joint venture because courts will not enforce an illegal contract.  *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982); *Okoloise v. Yost*, 283 So. 3d 49, 63 (Miss. 2019) ("the law . . . will not aid either party to an illegal agreement").

To the extent the alleged "joint venture" was a timber business that, unbeknownst to

Alexander and Seawright, did not actually exist, the Receiver has cited no support for "joint nonexistent venture" liability. In any event, the evidence does not support that claim either. For a claim for joint-venture liability, "there must be a joint proprietary interest and right of mutual control." *Adams v. Hughes*, 191 So. 3d 1236, 1242 (Miss. 2016). And "[p]articipation in the control of the business is indicative" of whether a joint venture exists. *Smith v. Redd*, 593 So. 2d 989, 994 (Miss. 1991). Alexander and Seawright did not participate in controlling or running Madison Timber. SOF ¶ 3. Instead, Alexander's and Seawright's LLC was one investor, among the nearly 300 investors, in Madison Timber. *Id.* ¶¶ 4, 17–19.

"Profit sharing is perhaps the most important indicator" of a joint venture, *Peoples Bank v. Bryan Bros. Cattle Co.*, 504 F.3d 549, 557 (5th Cir. 2007), but where, as here, if payment to one of the parties "was in the nature of wages or compensation for services rendered, then no inference of a partnership should be made," *Hults*, 480 So. 2d at 1146. Alexander and Seawright received commissions in exchange for services rendered, not profits. They found investors and lent money secured by timber tracts; they didn't own part of Madison Timber. The loan-origination fees were paid at the time of lending, not as a distribution of profits. SOF ¶ 24. (Indeed, there were no profits.) As for the interest payments, Mississippi law specifically excludes "interest or other charge on a loan" from the definition of "profits" that give rise to joint ventures or partnerships. Miss. Code § 79-13-202(c)(3)(v); *see Hults*, 480 So. 2d at 1145 (holding the Uniform Partnership Act "applies to joint ventures").

## III.    THE RECEIVER'S CLAIMS ARE BARRED BY *IN PARI DELICTO*

Under Mississippi law, a plaintiff who is *in pari delicto* with the defendant may not recover. *Sneed v. Ford Motor Co.*, 735 S. 2d 306, 308 (Miss. 1999); *see also Latham v. Johnson*, 262 So. 3d 569, 581 (Miss. Ct. App. 2018). Because the Receiver stands in the shoes of Lamar Adams and Madison Timber, there is no serious dispute the defense would apply to all claims

here, but for an "innocent-successor" exception that some courts outside Mississippi have applied to receivers in limited circumstances.  *See*, *e.g.*, *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965–67 (5th Cir. 2012) (applying Texas law).  At the motion-to-dismiss stage, the Court denied Baker Donelson's *in pari delicto* argument on innocent-successor grounds, but "without prejudice to their re-urging at the summary judgment stage."  ECF No. 70 at 17–18. The Court should apply the doctrine of *in pari delicto* now.

Mississippi has not adopted and would not adopt the innocent-successor exception for tort claims.  The Mississippi Supreme Court has recognized the doctrine of *in pari delicto* since at least 1840, *see Glidewell v. Hite*, 6 Miss. 110, 134 (Miss. Err. & App. 1840), without once excusing a corporation from its own fraud.  As for the Fifth Circuit, *Jones* considered the innocent successor exception only under ***Texas*** law because "[t]he rights of a receiver are determined by state law."  666 F.3d at 966 n.11.  The *Jones* court thus based its holding on a series of ***Texas*** state cases.  *Id.* at 966 (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. E– Court, Inc.*, 2003 WL 21025030, at *5 (Tex. App. May 8, 2003); *Guardian Consumer Fin. Corp. v. Langdeau*, 329 S.W.2d 926, 934 (Tex. Civ. App. 1959)).  Mississippi law is different.

In any event, even the Texas rule would not apply to the facts of this case.  *First*, in Texas, a receiver appointed "***in a dual capacity***, as a trustee for both the stockholder and the creditors," can act "as trustee for the creditors" without facing the defenses to which the corporation would be subject.  *Langdeau*, 329 S.W.2d at 934 (emphasis added).  In *Jones*, the district court specifically authorized the Receiver to pursue actions for the benefit of "all investors who may be the victims of the fraudulent conduct[.]" 666 F.3d at 966; Order, ECF No. 131, *SEC v. W. Fin. Grp. et al.*, Case No. 3:08-cv-00499-N (N.D. Tex.) (appointing *Jones* receiver "as the representative of such investors").  This case is different.  The Court furnished the Receiver with "all powers, authorities, rights, and privileges now possessed by the officers,

managers, and interest holders of and relating to the Receivership Defendants" and ordered her
to "pursue . . . *their* claims."  ECF No. 33 at 5 (Case No. 3:18-cv-252) (emphasis added).

*Second*, the Texas rule applies to a different kind of claim.  The innocent-successor
exception usually allows the Receiver *in pari delicto* immunity "against third-party recipients of
the entity's assets that have been fraudulently transferred[.]"  *Janvey*, 712 F.3d at 191.  (Baker
Donelson received no monies and was not sued for fraudulent transfer.)  But the exception
typically does not apply to ***tort*** claims against those who allegedly conspired with the entity in
receivership to perpetrate a fraud.  *See, e.g.*, *Hays v. Pearlman*, 2010 WL 4510956, at *7 (D.S.C.
Nov. 2, 2010) ("in the absence of a fraudulent conveyance case, the receiver of a corporation
used to perpetuate a fraud may not seek recovery against an alleged third-party co-conspirator in
the fraud").  In *Jones*, the receiver brought a cause of action for conversion against a bank that
issued and then deposited a fraudulent cashier's check.  666 F.3d at 961.  While "conversion" is
technically a tort, the claim in *Jones* was analogous to fraudulent transfer, as it sought to reclaim
misappropriated estate funds.  Here, the Receiver's claims do not pursue Madison Timber's
assets—Baker Donelson is not alleged to have received anything from Adams's scheme.  Even
under a permissive, Texas-like standard, the torts the Receiver alleges are far afield from the
fraudulent transfer or conversion claims that might support an innocent-successor exception.

The Seventh Circuit's opinion in *Knauer v. Jonathon Roberts Fin. Grp., Inc.* explains
why the exception should apply only to fraudulent transfer claims and the like:

> The key difference, for purposes of equity, between fraudulent
> conveyance cases such as *Scholes* [*v. Lehman*, 56 F.3d 750 (7th Cir.
> 1995)] and the instant case is the identities of the defendants.  The
> receiver here is not seeking to recover the diverted funds from the
> beneficiaries of the diversions (e.g., the recipients of [the
> fraudster's] transfers in *Scholes*).  Rather, this is a claim for tort
> damages from entities that derived no benefit from the
> embezzlements, but that were allegedly partly to blame for their
> occurrence.

348 F.3d 230, 236 (7th Cir. 2003). Discovery confirmed that Baker Donelson did not receive a penny from Madison Timber. SOF ¶ 43.

## IV.    THE RECEIVER CANNOT PROVE RECOVERABLE DAMAGES

### A.    The Receiver Cannot Recover the Debts of the Estate as Damages

The Receiver seeks to recover as "damages" the amounts the Receivership Estate owes to third-party investors. The Fifth Circuit calls this a claim of "deepening insolvency," which "has been defined as prolonging an insolvent corporation's life through bad debt, causing the dissipation of corporate assets[.]" *In re SI Restructuring, Inc.*, 532 F.3d 355, 363 (5th Cir. 2008). So too here, the Receiver seeks to recover amounts the Estate owes on debts to investors, which Adams took on to prolong the life of the Ponzi scheme. As the Fifth Circuit explained, this "theory of damages has been criticized and rejected by many courts," ultimately holding that "deepening insolvency is not a valid theory of damages[.]" *Id.*; *see also Ebert v. DeJoria*, 922 F.3d 690, 696–97 (5th Cir. 2019) (increased debts are not damage). That is because taking in money and incurring debt is not an injury to the estate; the insolvent estate never had to repay the debt and is therefore a net beneficiary. *See Kirschner v. Grant Thornton LLP*, 2009 WL 1286326, at *8 (S.D.N.Y. Apr. 14, 2009), *aff'd*, 626 F.3d 673 (2d Cir. 2010).

The Receiver was entitled to pursue the return of proceeds from the Receivership Estate held by those who profited—including Adams, his various associates, and the net winners from the scheme. But she cannot claim as "damages" the debts the Receivership Estate owes.

### B.    Any Damages Attributable to Baker Donelson Would Be Limited to the ASTFI Investors' Losses

The Receiver seeks massive damages from Baker Donelson by claiming the law firm is responsible for *all* losses attributable to the *entire* Madison Timber Ponzi scheme. That theory grossly inflates any possible damages award. The vast majority of investors in Madison Timber

did not invest through ASTFI.  There is no evidence Baker Donelson (or Alexander or

Seawright) proximately caused the losses of these 183 investors who invested directly in

Madison Timber without any contact or connection to Alexander or Seawright.

"[P]roximate causation involves cause in fact and legal causation."  *Berry v. E-Z Trench

Mfg., Inc.*, 772 F. Supp. 2d 757, 760 (S.D. Miss. 2011).  "An act is the cause in fact of a

claimant's damages when the evidence shows that 'but for the defendant's negligence, the injury

would not have occurred.'"  *Id.* (quoting *Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277

(Miss. 2007)).  To be the legal cause, the damage must be foreseeable—i.e., of "the type, or

within the classification, of damage the negligent actor should reasonably expect (or foresee) to

result from the negligent act."  *Glover*, 968 So. 2d at 1277.  "The claims for conspiracy and

aiding and abetting, like the negligence claim, have a proximate cause requirement."  ECF No.

135 at 15; *see also Orr v. Morgan*, 230 So. 3d 368, 375 (Miss. Ct. App. 2017) (limiting civil

conspiracy claims to "damages to the plaintiff as a proximate result"); *JP Morgan Chase Bank v.

Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005) (damages where "the action of the aider and

abettor proximately caused the harm on which the primary liability is predicated").

The Receiver cannot prove the conduct of Alexander and Seawright (much less anyone

acting for the law firm) is the proximate cause of any losses sustained by the direct Madison

Timber investors, who indisputably had no connection to ASTFI.  There is no evidence any

person who did not invest through ASTFI had any contact with Alexander and Seawright, or

anyone else at Baker Donelson.  SOF ¶ 59.  There is no evidence that any such investors even

knew Alexander or Seawright existed.  *Id*. ¶¶ 59, 77–78.  And Alexander and Seawright were

unaware that more than a handful of direct Madison Timber investors existed.  *Id*. ¶ 20.

Alexander and Seawright were aware of the loans ***ASTFI*** extended to Madison Timber and

could reasonably have foreseen ASTFI investors could suffer losses if Adams failed to make

payments on the loans.  But losses incurred by other investors on other loans, which were never disclosed to Alexander or Seawright, are not "the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee)."  *Glover*, 968 So. 2d at 1277.

That result is consistent with the criminal restitution the Court ordered Alexander and Seawright to pay.  Restitution is intended to compensate "damage to or loss . . . of a ***victim***."  18 U.S.C. § 3663A(b)(1) (emphasis added).  "The term 'victim'" encompasses all persons "***directly and proximately harmed*** as a result of the commission of an offense for which restitution may be ordered including . . . any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663A(a)(2) (emphasis added).  The Court ordered Alexander and Seawright to pay a sum of $977,044.52—an amount consistent with the ASTFI investors' losses but far smaller than the total losses to other Madison Timber investors.  Alexander's or Seawright's conduct did not proximately harm Adams's other victims.

### C.    There Are No Remaining Losses to Investors in ASTFI

The Receiver has already recovered funds to make the ASTFI investors whole, and she cannot seek more "damages" for them.  According to the Receiver's own accounting, the outstanding losses of ASTFI investors total $596,775.59.[12]  SOF ¶ 107.  But the Receiver has already received far more than this amount from Alexander and Seawright.  This Court ordered Alexander and Seawright to pay restitution in the amount of $977,044.52, and these funds were remitted to the Receiver.  *Id.* ¶¶ 34–35.  The Receiver has received this restitution payment.  *Id.* ¶¶ 35, 110.  Despite having received these funds over a year ago, *id.* ¶ 35, she has not distributed them to ASTFI investors.  These funds would cover the remaining losses to ASTFI investors—and then some.

---

[12] This number too is inflated; for example, it does not account for recoveries paid out to the Receiver and her lawyers.

This restitution amount is disbursable only to ASTFI investors, not all Madison Timber investors. Restitution is a creature of statute, and that statute allows only for "restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1)(A).[13] Specifically, "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a . . . conspiracy . . . , any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy[.]" *Id.* § 3663A(a)(2). "A person is directly harmed . . . where th[e] offense is a but-for cause of the harm." *U.S. v. Mathew*, 916 F.3d 510, 519 (5th Cir. 2019). Liability is limited to "foreseeable losses within the scope of the[] conspiracy[.]" *U.S. v. King*, 93 F.4th 845, 854 (5th Cir. 2024). The victims of Alexander's and Seawright's crimes were the investors in ASTFI.

In sum, once the Receiver properly distributes this already collected restitution to the ASTFI investors, they will be made entirely whole and the Receiver cannot recover further. *See City of Jackson v. Est. of Stewart*, 908 So. 2d 703, 711–12 (Miss. 2005) ("double recovery for the same harm is not permissible").

### D. The Evidence Cannot Support Punitive Damages Against Baker Donelson

The Receiver claims Baker Donelson is vicariously liable for Alexander's and Seawright's alleged civil conspiracy (Count I), aiding and abetting (Count II), and negligence, gross negligence, or recklessness (Count III). For each of those counts, she seeks "punitive damages" against the firm. But "there is no vicarious liability for punitive damages." *Deliefde v. Nixon*, 2021 WL 4164680, at *9 (S.D. Miss. Sept. 13, 2021) (granting summary judgment); *James v. Antarctic Mech. Servs., Inc.*, 2020 WL 86209, at *5 (S.D. Miss. Jan. 7, 2020) ("punitive damages are not recoverable from the employer based on their employee's actions"). The

---

[13] The statute also permits, "if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663A(a)(3). Neither Alexander's nor Seawright's plea agreements provide such an agreement. *See* SOF ¶ 31.

Receiver cannot recover punitive damages from Baker Donelson for Counts I, II, or III.

For any other counts where punitive damages are not categorically barred, Baker Donelson's conduct could never satisfy the applicable standard. To claim such an "extraordinary remedy," *Life & Cas. Ins. Co. of Tennessee v. Bristow*, 529 So. 2d 620 (Miss. 1988), the Receiver must show Baker Donelson acted with "either malice or gross neglect or reckless disregard" with respect to Alexander's and Seawright's conduct. *Doe ex rel. Doe v. Salvation Army*, 835 So. 2d 76, 81 (Miss. 2003); *see also* Miss. Code § 11-1-65(1)(a). Courts require "'some element of aggression, insult, malice, or gross negligence that evidences a ruthless disregard for the rights of others.'" *Evans v. Englund Equip. Co.,* 2025 WL 2164549, at *5 (S.D. Miss. July 30, 2025) (quoting *Gaddis v. Hegler*, 2011 WL 2111801, at *4 (S.D. Miss. May 26, 2011)). "Punitive damages are allowed by Mississippi courts only 'where the facts are highly unusual and the cases extreme.'" *JESCO Constr. Corp. v. Wells Fargo Bank, N.A.*, 579 F. Supp. 3d 827, 841 (S.D. Miss. 2022) (quoting *Wise v. Valley Bank*, 861 So. 2d 1029, 1034 (Miss. 2003)). No such evidence exists here.

## CONCLUSION

Baker Donelson respectfully requests the Court grant summary judgment in its favor.

Dated this 3rd day of November, 2025                Respectfully submitted,

                                                                        **BAKER, DONELSON, BEARMAN,**
                                                                        **CALDWELL & BERKOWITZ PC**

                                                                         */s/ Craig D. Singer*

                                                                        James J. Crongeyer, Jr. (MSB #10536)
                                                                        James M. Tyrone (MSB #102381)
                                                                        WATKINS & EAGER PLLC
                                                                        400 East Capitol Street, Suite 300 (39201)
                                                                        Post Office Box 650

Jackson, MS  39205
Tel.: (601) 965-1900
Fax:  (601) 965-1901
Email: jcrongeyer@watkinseager.com

Craig D. Singer (*pro hac vice*)
Charles Davant (*pro hac vice*)
Benjamin W. Graham (*pro hac vice*)
Hope E. Daily (*pro hac vice*)
William M. Schmidt (*pro hac vice*)
C. Mark Aneke (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC  20024
Tel.: (202) 434-5000
Fax:  (202) 434-5029
Email: csinger@wc.com

*Counsel for Defendant Baker, Donelson,*
*Bearman, Caldwell & Berkowitz PC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

_/s/ Craig D. Singer_
Craig D. Singer