

—————————————

No. 3:18-CV-866-CWR-BWR

ALYSSON MILLS, *IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC*,

*Plaintiff,*

*v.*

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, *ET AL.*,

*Defendants.*

—————————————

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

—————————————

Before CARLTON W. REEVES, *District Judge.*

The parties have filed cross-motions for Summary Judgment. Docket Nos. 223, 226, and 235. These motions embrace many of the same issues, so the Court considers them together. As discussed below, Baker Donelson's motion, Docket No. 223, is granted in part and denied in part; the Receiver's motion, Docket No. 226, is denied; and the motion filed by Alexander, Seawright, and Alexander Seawright, LLC (collectively, the

"Alexander Seawright Defendants"), Docket No. 235, is granted in part and denied in part.

## Background

From at least 2010 until April 2018, Lamar Adams operated a timber investment company called Madison Timber Properties, LLC. He told investors they were purchasing shares of timber tracts that would be harvested and sold to lumber mills at a significant profit. The demand for lumber was so great, he said, he could guarantee investors a fixed rate of return in excess of 10%. Investors believed him. They collectively gave him hundreds of millions of dollars.

Adams was lying. He had, with the help of others, faked everything about the scheme. The timber deeds were forged. There were no tracts of land or lumber mills. He was actually using new investors' money to pay old investors—a classic Ponzi scheme. It worked only as long as Adams and his associates could continue to bring in new money.

The scheme collapsed in April 2018. Adams turned himself in to the United States Attorney's Office in Jackson, Mississippi and quickly pleaded guilty to wire fraud. He is now serving a 19.5-year sentence in federal prison. The sentence reflects the significance of the fraud; the criminal proceeding established that Adams's victims lost approximately $85 million.

When the Ponzi scheme collapsed, the U.S. Securities and Exchange Commission asked this Court to appoint a receiver to take charge of Adams's companies and provide some measure of financial relief to his victims. The Court appointed Alysson Mills to be that receiver. To date, she has sold Adams's assets, negotiated settlements with Adams's enablers,

and filed lawsuits against persons and entities that contributed to the fraud. This is among the last of those lawsuits.

In this action, the Receiver claims that the Baker, Donelson, Bearman, Caldwell & Berkowitz, PC law firm ("Baker Donelson"); Alexander Seawright, LLC (and its related entities, Alexander Seawright Timber Funds I and II); Brent Alexander; and Jon Seawright facilitated Lamar Adams's fraud. The four defendants are deeply intertwined. Baker Donelson is a regional law firm that employed Alexander and Seawright in its Jackson, Mississippi office. Alexander was a "Senior Public Policy Advisor," providing professional services to firm clients on matters of government affairs and lobbying. Seawright was a transactional attorney and shareholder of the firm. He was a member of the firm's Board of Directors from 2016 until the month after the collapse of the Ponzi scheme. Alexander and Seawright formed and owned Alexander Seawright, LLC and its related entities. The LLC was an investment company that the pair ran out of their Baker Donelson offices.

Alexander and Seawright met Adams in 2011. Through Alexander Seawright, LLC, Alexander and Seawright formed a separate LLC named Alexander Seawright Timber Fund I, LLC ("ASTFI"), which they used to pool investors' money to provide to Madison Timber for purported timber deals. Alexander and Seawright made plans to launch a second fund named Alexander Seawright Timber Fund II, LLC; they pitched it to existing and potential investors; they received commitments for funding; but that fund never started operations.

Seawright and Alexander offered the investment opportunity to Baker Donelson's shareholders and Baker Donelson's

3

existing clients and their spouses and affiliated entities.[1] They marketed ASTFI as an exclusive "friends and family fund."[2] Seawright, a lawyer practicing in the healthcare space, and Alexander, a lobbyist in the healthcare space, marketed the opportunity to healthcare professionals specifically, noting at one point that "Docs are eating it up."[3] Some investors in the fund later went on to become Baker Donelson clients.

Seawright and Alexander conducted the business of running Alexander Seawright, LLC and its affiliated entities during Baker Donelson's office hours, using Baker Donelson's resources.[4] They used Baker Donelson's offices for meetings and closings with Lamar Adams and investors.[5] They used their @bakerdonelson accounts, and they used Baker

---

[1] *E.g.*, Docket No. 279-29 at 2, Sealed Dep. Tr. at 29:16-25 ("Q. Now, he wasn't your attorney when you started investing? A. Oh, yes, he was. Yes, he set up LLCs for me. He did other business for me, yes. . . . [T]hat's how I knew him was he handled business for me. And he fully used his knowledge of – of my business and everything else to sell this crap to me[.]").

[2] *E.g.*, Docket No. 279-30, Text from Alexander.

[3] Docket No. 279-51 at 1, Email from Alexander.

[4] *E.g.*, Docket No. 279-7, Emails from Seawright (booking a Baker Donelson conference room for a meeting at 10 a.m. on a Friday, noting for the same day that "[o]ther than having to meet one investor at 830 and get his funds and then run by the bank, I am clear"). The volume of emails sent during business hours suggests a significant portion of at least Seawright's working days was dedicated to the timber business.

[5] *E.g.*, Docket No. 279-5 at 12-13, Alexander Depo. Tr. at 70:20-71:4 (closings were "at Baker Donelson in one of the conference rooms"); Docket No. 279-2 at 10-11, Seawright's response to Request for Admission No. 35 ("Seawright admits that he occasionally met ASTF investors at Baker Donelson's Jackson, Mississippi office, including for some closings").

Donelson employees to administer the business of operating Alexander Seawright, LLC and its affiliated entities.[6] Seawright's assistant at Baker Donelson, Kathy Acquilano, prepared letters to investors twice a month for years.[7] She notarized timber deeds.[8] She "routinely" handled administrative tasks including writing and depositing checks.[9]

In 2011, when putting together funding, Seawright wrote to Alexander that "[t]he only risk I see is . . . Lamar is a fraud, but no evidence of that[.]"[10] Adams testified that had Seawright or Alexander undertaken **_any due diligence at all_** they would have easily uncovered the Ponzi Scheme. He explained, "Because there was no timber deed from the landowner to me, so if they had gone to the courthouse one time, I would have been exposed. They would have known I had a Ponzi scheme and a fraud going, and they would have nailed me right then."[11] Later testifying, "Yeah, one -- I mean, one -- if one document had been checked, they would have known

---

[6] *E.g.*, Docket No. 279-8 at 1 (Seawright directing his assistant, Kathy Acquilano, to prepare envelopes for letters to investors using @bakerdonelson.com email address).

[7] Docket No. 279-13 at 3-11, Acquilano Depo. Tr. at 159:19-162:5; 174:8-178:25.

[8] *E.g.*, Docket No. 279-23 at 17.

[9] Docket No. 279-6 at 23, John Hicks, Baker Donelson 30(b)(6), Depo. Tr. at 228:19-25 ("Q. So, then, you would agree that Ms. Acquilano routinely performed that administrative task on behalf of Jon and Brent's outside business activity, Alexander Seawright Timber Fund, correct? A. Yes.").

[10] Docket No. 279-66, Seawright Email to Alexander.

[11] Docket No. 279-47 at 2-3, Adams Dep. Tr. Vol. I at 81:23-82:2.

it was a false, fake deal."[12] During the approximately seven years that Alexander and Seawright worked with Adams, they apparently never performed basic due diligence. Adams testified that he was "scared to death" that someone at Baker Donelson would check the public records, but he sought out their business because he "[n]eeded the money."[13]

On May 20, 2021, criminal indictments of Brent Alexander and Jon Seawright were unsealed. Ultimately, Alexander and Seawright each pleaded guilty to one felony count of conspiracy to commit wire fraud.

### Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But

---

[12] Docket No. 279-17 at 6, Adams Dep. Tr. Vol. II at 371:7-9.

[13] *Id.* at 371:19-24.

the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## Analysis

The Receiver asserts the following claims in the operative complaint, Docket No. 57: (Count I) Civil Conspiracy, against all Defendants; (Count II) Aiding and Abetting, against all Defendants; (Count III) Recklessness, Gross Negligence, and Negligence, against all Defendants; (Count IV) violations of Mississippi's Fraudulent Transfer Act, against the Alexander Seawright Defendants; (Count V) violations of Mississippi's RICO statute, against the Alexander Seawright Defendants; (Count VI) Joint Venture liability, against the Alexander Seawright Defendants; and (Count VIII)[14] Negligent Retention & Supervision, against Baker Donelson.

Except for Count VIII, the Receiver pursues Baker Donelson through theories of vicarious liability, to hold Baker Donelson liable to the same extent liability attaches to the Alexander Seawright Defendants.[15] The Court will begin with the issue of vicarious liability, then consider the sufficiency of each of the remaining counts, as necessary.

---

[14] Count VII was not alleged against any of the remaining Defendants. For clarity, the Court references the remaining counts using the numbering assigned in the operative complaint.

[15] Although Count I-III are asserted against "all defendants," the Receiver explained at deposition that she pursues those through theories of vicarious liability. Docket No. 240-3 at 6-9, Mills Dep. Tr. Vol. II at 222:11–225:20.

## I.    Vicarious Liability

The Receiver pursues vicarious liability through theories of implied and apparent authority; ratification; and scope of employment.[16] The Court addresses each in turn.

### 1.    Authority

"[W]hen it is asserted that the employee acted without the knowledge of the employer and without his approval, or in violation of his orders and instructions, the question of liability, as in other cases, is determined by whether the employee was in fact acting within the scope of his *implied* or *apparent* authority." *Jenkins v. Cogan*, 119 So. 2d 363, 368 (Miss. 1960) (emphasis in original) (quotation marks and citation omitted). In light of prior inconsistent precedent, the Mississippi Supreme Court revisited the definitions of implied and apparent authority in *Newsome v. Peoples Bancshares*. 269 So. 3d 19, 29 (Miss. 2018) ("[G]iven the inconsistencies in application of all three types of agency, we look to the definitions of implied authority and apparent authority."). The Court begins with that opinion.

### i.    Implied Authority

There is no genuine issue of material fact with respect to the presence of implied authority. "Implied agency or authority requires that the principal give the agent *actual authorization*

---

[16] "For an employer to be [vicariously] liable for an employee's actions, 'the act must have been one authorized by the employer prior to its commission, ratified after its commission, or committed within the scope of the employment.'" *Franklin v. Turner*, 220 So. 3d 1003, 1008 (Miss. Ct. App. 2016) (quoting *Horton v. Jones*, 44 So. 2d 397, 400 (1950)).

*to perform acts* which reasonably lead third parties to believe that an agency relationship exists." *Newsome*, 269 So. 3d at 29 (cleaned up) (emphasis in original). "Actual authority, also termed express or direct authority, is the authority *actually conferred* by the principal." *Id.* at 28 (citing *McFarland v. Entergy Miss., Inc.*, 919 So.2d 894, 902 (Miss. 2005)) (emphasis in original). This requires some type of "expressive conduct" on the part of the principal. *Id.* (citing Restatement (Third) Of Agency § 3.01 cmt. b (2006)). "Specifically, '[a] principal's unexpressed willingness that another act as agent does not create actual authority.'" *Id.* (quoting same).

The Receiver argues that Baker Donelson impliedly authorized the Alexander Seawright Defendants "to conduct their outside business," Docket No. 259 at 35, but she does not identify any expressive conduct on Baker Donelson's part that could support a finding of actual authorization. *See Newsome*, 269 So. 3d at 29 (declining to find implied authority, noting that "no proof exists in the record illustrating that Newsome exercised expressive conduct creating *actual authorization* for McNulty to act") (emphasis in original). Therefore, Baker Donelson's motion is granted with respect to the theory of implied authority. That theory is unavailable.

### ii.    Apparent Authority

Apparent authority is a different story. "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and the usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Eaton v. Porter*, 645 So.2d 1323, 1325 (Miss. 1994) (quoting *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987); *see also Newsome*, 269 So. 3d at 29 (quoting same).

"Mississippi law imposes a three-prong test for determining if apparent authority exists: (1) acts or conduct by the principal indicating the agent's authority; (2) reasonable reliance by a third party upon those acts or conduct; and (3) detrimental change in position by the third party as a result of such reliance." *Newsome*, 269 So. 3d at 29-30 (citation omitted). "Whether the evidence sufficiently meets the three-prong test of apparent authority is an issue for the fact-finder." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1181 (Miss. 1990) (citations omitted). An absence of evidence for one or more prong is required for summary judgment. *Morgan v. MML Invs. Servs., Inc.*, 226 So. 3d 590, 596 (Miss. Ct. App. 2017) ("[I]f evidence on any of the three elements is missing, summary judgment is appropriate."). None of these three prongs suffer from a complete absence of evidence, so the issue is one for the jury.

The first prong is "fulfilled merely by acts of the principal which clothed the agent with indicia of authority." *Eaton v. Porter*, 645 So. 2d 1323, 1326 (Miss. 1994). "The principal is bound *if the conduct of the principal* is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have." *Newsome*, 269 So. 3d at 30 (quotation marks and citation omitted) (emphasis in original). The Receiver has identified facts in the record from which a person of reasonable prudence could conclude that the Alexander Seawright Defendants had the authority to offer investment opportunities as part and parcel of a bundle of services Baker Donelson provided to its preferred

10

transactional clients.[17] As for the second prong, the Receiver also identified evidence that could show reasonable reliance upon this indicia of authority.[18] And detrimental change in position as a result of reliance is not in contention. Baker Donelson's motion, Docket No. 223, is denied with respect to apparent authority.

### 2.    Ratification

The issue of ratification also remains open to genuine dispute. "Ratification does not arise by operation of law; rather, 'a person ratifies an act by (a) manifesting assent that the act shall

---

[17] As discussed *supra*, Seawright and Alexander conducted their investment business during Baker Donelson's office hours; used Baker Donelson's offices for meetings; used their @bakerdonelson accounts; and used Baker Donelson employees. Additionally, other Baker Donelson colleagues helped recruit investors. During this time, Seawright, as a member of Baker Donelson's board of directors and its finance committee, was among the most powerful lawyers at the firm.

[18] *E.g.*, Docket No. 279-54 at 5-6, Sealed Dep. Tr. 40:4-41:2 ("And then [Seawright] had me -- he gave me -- a couple times I was going to go and pick up the -- or drop off the first subscription agreement, and he gave me his Baker Donelson address. And it was -- and if you recall or if you look at all these e-mails, it's all during day hours, working hours. And he also mentions somewhere that he was a lawyer at Baker Donelson. And so, you know, in my mind . . . Baker Donelson knew about what was going on . . . . [W]hen I went to his office, and he also sent me other e-mails saying that his secretary had his signature stamp and the checkbook and she could give me a check if he wasn't there. So why wouldn't I believe that Baker Donelson had anything to do with this? . . . [I]t was -- he was under that veil. It wasn't like a backdoor deal."); Docket No. 279-55 at 5-6, Sealed Dep. Tr. 112:9-113:11 (explaining that he thought Seawright had an extra level of credibility because he was in good standing with Baker Donelson and that he had a comfort level with investing because Seawright was associated with Baker Donelson).

affect that person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.'" *In re Northlake Dev. L.L.C. v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011) (brackets omitted) (quoting Restatement (Third) of Agency § 4.01(2) (2005)). *See also ACE Am. Ins. Co. v. Hestco, Inc.*, 393 So. 3d 1015, 1026 (Miss. 2024) (quoting same).

Here the dispute concerns the presence of conduct that could justify a reasonable assumption that Baker Donelson consented. "Where an employer learns of the past intentional conduct and does nothing to reprimand the employee, this acts as a ratification." *Jones v. B.L. Dev. Corp.*, 940 So. 2d 961, 966 (Miss. Ct. App. 2006) (citations omitted). "[T]he fact of retention of the offending servant in the employment of the master may be admitted in evidence as bearing upon [] ratification," but "the mere retention of the servant in the employment will not constitute such ratification as will render the master liable for the unauthorized act." *Franklin*, 220 So. 3d at 1009 (citation omitted). "[U]nder some circumstances, a principal's *inaction* can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to the act." *BankPlus*, 60 So. 3d at 797 (citation omitted). The Receiver has identified evidence that could show that Baker Donelson learned of Alexander's and Seawright's offending conduct around April 2018, when the Ponzi scheme collapsed: Alexander and Seawright remained employed by Baker Donelson following the collapse of the Ponzi scheme (Seawright remained a shareholder for years following the collapse); and Alexander and Seawright never suffered any adverse employment action prior to their eventual departure from the firm. Baker Donelson disputes these facts, specifically pointing to the fact that Alexander and Seawright maintained their innocence, even

after the collapse of the scheme. The conflicting evidence demonstrates the existence of genuine dispute. *See Royal Oil Co., Inc. v. Wells*, 500 So. 2d 439, 447 (Miss. 1986) (noting that "where the evidence was in conflict, questions pertaining to scope of employment and ratification by a master of his servant's act were questions not to be taken from the jury"). Baker Donelson's motion for summary judgment is denied with respect to the issue of ratification.

The issue of ratification also remains open to genuine dispute. "Ratification does not arise by operation of law; rather, 'a person ratifies an act by (a) manifesting assent that the act shall affect that person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.'" *In re Northlake Dev. L.L.C. v. BankPlus*, 60 So. 3d 792, 797 (Miss. 2011) (brackets omitted) (quoting Restatement (Third) of Agency § 4.01(2) (2005)). *See also ACE Am. Ins. Co. v. Hestco, Inc.*, 393 So. 3d 1015, 1026 (Miss. 2024) (quoting same).

Here the dispute concerns the presence of conduct that could justify a reasonable assumption that Baker Donelson consented. "Where an employer learns of the past intentional conduct and does nothing to reprimand the employee, this acts as a ratification." *Jones v. B.L. Dev. Corp.*, 940 So. 2d 961, 966 (Miss. Ct. App. 2006) (citations omitted). "[T]he fact of retention of the offending servant in the employment of the master may be admitted in evidence as bearing upon [] ratification," but "the mere retention of the servant in the employment will not constitute such ratification as will render the master liable for the unauthorized act." *Franklin*, 220 So. 3d at 1009 (citation omitted). "[U]nder some circumstances, a principal's *inaction* can result in ratification, but only where the principal has notice that others will infer from his silence that

13

he intends to manifest his assent to the act." *BankPlus*, 60 So. 3d at 797 (citation omitted). The Receiver has identified evidence that could show that Baker Donelson learned of Alexander's and Seawright's offending conduct around April 2018, when the Ponzi scheme collapsed: Alexander and Seawright remained employed by Baker Donelson following the collapse of the Ponzi scheme (Seawright remained a shareholder for years following the collapse); and Alexander and Seawright never suffered any adverse employment action prior to their eventual departure from the firm. Baker Donelson disputes these facts, specifically pointing to the fact that Alexander and Seawright maintained their innocence, even after the collapse of the scheme. The conflicting evidence demonstrates the existence of genuine dispute. *See Royal Oil Co., Inc. v. Wells*, 500 So. 2d 439, 447 (Miss. 1986) (noting that "where the evidence was in conflict, questions pertaining to scope of employment and ratification by a master of his servant's act were questions not to be taken from the jury"). Baker Donelson's motion for summary judgment is denied with respect to the issue of ratification.

### 3.    Scope of Employment

Similarly, the issue of whether Alexander and Seawright were acting within the scope of their employment is subject to genuine dispute.

Alexander and Seawright were employed by Baker Donelson. This much is not in dispute. Once that relationship is established, "a rebuttable presumption arises that the employee was acting within the scope of his employment[.]" *Sturkin v. Miss. Ass'n of Supervisors. Inc.*, 315 So. 3d 521, 531 (Miss. Ct. App. 2020).

14

> Where the general relationship of master and servant is shown a rebuttable presumption is raised that the servant at the time of the accident was engaged in the scope of his employment and in the furtherance of the business of the master. While such a presumption is not conclusive it is nevertheless sufficient to make out plaintiff's case and demands proof in rebuttal thereof. The burden of proof then shifts to the employer to show that the employee had abandoned the duties of his employment and acted for some purpose *exclusively his own*.

*Id*. (emphasis added) (citations omitted). Baker Donelson has not met its burden of demonstrating that Alexander and Seawright acted for some purpose exclusively their own.

Moreover, there exist disputes of fact concerning the elements of scope of employment. Following the description of burden shifting above, the *Sturkin* court provided further clarification of the test to determine whether an action was taken within the scope of employment:

> While articulated in different ways, conduct of an employee falls within the scope of his employment if (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if intentionally used by the servant against another, the use of force is not unexpectable by the master.

15

*Id.* (citations omitted). With the exception of the use of force consideration, which is inapplicable here, each of these elements remains the subject of factual dispute.

With respect to the first element, Baker Donelson argues that it is not in the investment business, but this misses the point. The services that Alexander and Seawright performed with respect to the Ponzi scheme were of the type of services that they performed for Baker Donelson. For example, the Receiver identified evidence showing that Seawright's activities on behalf of Madison Timber and investors recruited through Alexander Seawright, LLC and its affiliated entities were of the same general nature as the activities he otherwise performed as a lawyer employed by Baker Donelson. That evidence tends to show that Seawright drafted security agreements, promissory notes, and confidentiality agreements for Madison Timber and drafted the operating agreement, subscription agreements, term sheets, and investor questionnaires for ASTFI.[19] These activities are similar to those activities he was authorized to do and did perform as an attorney working for Baker Donelson.

The Receiver has identified ample evidence tending to show that Alexander's and Seawright's activities occurred substantially within the time and space designated for their employment with Baker Donelson.[20]

---

[19] *See also* Docket No. 279-5 at 22-23, Alexander Depo. Tr. at 125:21-126:1 ("We didn't pay any legal expenses. Jon [Seawright] did them. [] Those are -- I mean, he was a lawyer and a partner, so that was part of his operational responsibilities within Alexander Seawright.").

[20] See *supra* at Background.

16

Similarly, the third element is also subject to dispute. Not only has Baker Donelson failed at this juncture to meet its burden of demonstrating that Alexander and Seawright acted for some purpose exclusively their own, there is evidence that their actions in fact benefited the firm in the form of business development.[21] Given that Seawright was a shareholder in the firm, he presumably would have shared in profits generated by the attraction of new clients to the firm, and any action he took in furtherance of that goal could be one he took both on his own behalf and on behalf of Baker Donelson. This cannot form the basis for Baker Donelson's request for summary judgment. *Id.* at 532 ("In order to relieve a master from liability for the servant's acts, on the ground that the servant had deviated from his service, the deviation must be so substantial as to amount to an entire departure therefrom and be for purposes *entirely personal to the servant*.") (citation omitted) (emphasis added).

Baker Donelson's motion for summary judgment is denied with respect to scope of employment.

---

[21] *See, e.g.*, Docket No. 279-2 at 10, Seawright's response to Request for Admission No. 33 ("Mr. Seawright states that no one who invested in ASTF was a current client of Baker Donelson at the time they made their first investment in ASTF. Mr. Seawright further states that some investors in ASTF became clients of Baker Donelson after they first invested in ASTF."); Docket No. 279-3 at 5, Alexander's response to Request for Admission No. 16 (admitting same); Docket No. 279-43 at 29, Baker Donelson's response to Interrogatory No. 14 ("Baker Donelson further notes that some individuals who invested in Timber Fund I later became clients, or entities with which they served as employees, owners, members or directors later became clients, of Baker Donelson at a time after the individuals first invested in Timber Fund I.").

## II.    Substantive Claims

The Court now considers the substantive counts challenged by one or more of the cross-motions for summary judgment.

### 1.    Civil Conspiracy (Count I)

Both Baker Donelson and the Alexander Seawright Defendants challenge the sufficiency of the evidence to support the Receiver's claim for civil conspiracy.

Civil conspiracy has four elements: "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Rex Distrib. Co., Inc. v. Anheuser-busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (quotation marks and citation omitted). "The elements are quite similar to those required of a criminal conspiracy, with the distinguishing factor being that an agreement is the essence of a criminal conspiracy, while damages are the essence of a civil conspiracy." *Id.* (quotation marks and citations omitted).

With respect to the first element, the Receiver has identified evidence from which a jury could find an agreement existed between Lamar Adams, Seawright, and Alexander. For example, there is direct evidence of a criminal conspiracy: Seawright and Alexander both pleaded guilty to it.

Their bills of information, which they affirmed in open court, expressly stated that they "did knowingly and intentionally participate in a scheme and artifice to defraud":

> It was part of the agreement and conspiracy that
> JON DARRELL SEAWRIGHT and TED BRENT
> ALEXANDER, did knowingly and intentionally

18

participate in a scheme and artifice to defraud investors by soliciting millions of dollars of funds under false pretenses and failing to use investors' funds as promised. Coconspirators SEAWRIGHT and ALEXANDER represented to investors that ASTF was in the business of loaning funds to a "timber broker" to buy timber rights from landowners and then sell the timber rights to lumber mills at a higher price.

*United States v. Seawright*, No. 3:22-CR-84 (S.D. Miss.), Docket No. 1 at 1-2; *see also United States v. Alexander*, No. 3:23-CR-37 (S.D. Miss.), Docket No. 1 at 1-2 (reciting same substance). In his deposition, Alexander confirmed that the "timber broker" in the bill of information was Lamar Adams and Madison Timber.[22] There is enough evidence to demonstrate an issue of fact with respect to the first element of civil conspiracy.

The Receiver also identified evidence that could show this agreement was for an unlawful purpose, in satisfaction of the second element.[23] That Alexander and/or Seawright may or may not have known the full extent of the fraud in which they

---

[22] Responses to requests for admission could also, for example, support the existence of an agreement between Adams and Alexander and/or between Adams and Seawright.

[23] *See, e.g.*, Docket No. 279-45 at 2-7, Seawright's Change of Plea at 31:5-36:16 (reciting facts that the United States would have proved related to conspiracy to commit wire fraud, had the case proceeded to trial), *and id.* at 9, 38:2-8 ("THE COURT: . . . Mr. Seawright, do you agree to the general facts that were recited by the Government on how it would prove this case if it were to go to trial? THE DEFENDANT: I do, Your Honor. THE COURT: And is that what happened, essentially? THE DEFENDANT: Yes, sir.").

participated is insufficient to require summary judgment. *Bradley v. Kelley Bros. Contrs., Inc.*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013) ("[A]n agreement between the parties must be established. But it need not extend to all details of the scheme and may be express, implied, or based on evidence of a course of conduct."). Based on the facts provided, a jury could find the presence of an agreement to accomplish an unlawful purpose.

Neither Baker Donelson nor the Alexander Seawright Defendants challenge the sufficiency of the third or fourth[24] elements. The Receiver identified evidence upon which a jury may find the presence of an overt act in furtherance of the conspiracy and damages to the Plaintiff. The motions for summary judgment filed by Baker Donelson and the Alexander Seawright Defendants are denied with respect to civil conspiracy.

### 2.    Aiding and Abetting (Count II)

To succeed on this count, the Receiver must adduce evidence to show: "[1] knowledge of the conduct constituting the civil conspiracy and [2] substantial assistance or encouragement to the conspiring party in furtherance of the conspiracy." *Dickens v. A-1 Auto Parts & Repair, Inc.*, 1:18-CV-162, 2018 WL 5726206, at *3 (S.D. Miss. Nov. 1, 2018). Baker Donelson and the Alexander Seawright Defendants challenge the presence of evidence showing the first element: knowledge. They emphasize that whether the Alexander Seawright Defendants

---

[24] They do, however, challenge the limit of the damages contemplated by the fourth element. The Court addresses those challenges below. *See infra* at III.3.

*should have known* is irrelevant, because actual knowledge is required.

In addition to the evidence the Receiver identified that could support a finding that Alexander and Seawright directly participated in a civil conspiracy, *see supra*, the Receiver identified evidence from which a jury could reasonably conclude that Alexander and Seawright knew of Lamar Adam's duty to Madison Timber and his conduct in breach of that duty. A requirement of actual knowledge does not equate to a requirement that the Receiver produce a proverbial "smoking gun." Circumstantial evidence, including red flags, can establish knowledge for aiding and abetting purposes. *S. Christian Leadership Conf., Inc. v. A.G. Corp.*, 241 So. 2d 619, 625 (Miss. 1970) ("The law permits great latitude in the admission of circumstantial evidence tending to establish a conspiracy, and to connect those advising, encouraging, aiding, abetting, and ratifying the overt acts committed for the purpose of carrying into effect the objects of the conspiracy, as the jury should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue and which will enable them to come to a satisfactory conclusion.") (quotation marks and citation omitted).[25] The

---

[25] *See also Janvey v. Proskauer Rose LLP*, No. 3:13-CV-477, 2015 WL 11121540, at *5-7 (N.D. Tex. June 23, 2015) ("Sjoblom conducted substantial due diligence regarding Stanford . . . Plaintiffs have alleged facts suggesting Sjoblom was aware to a substantial degree of Allen Stanford's fraudulent conduct, which would also imply some awareness of Allen Stanford's misuse of the Stanford entities to accomplish his fraud. The Court finds these allegations sufficient to infer awareness on Sjoblom's part of breaches of fiduciary duties undertaken by Allen Stanford and his fellow officers and directors."); *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384, 2022 WL 179609, at *13 (N.D. Tex. Jan. 20, 2022) (denying

Receiver could persuade a jury, for example, that during the seven-year course of dealing with Lamar Adams, Alexander and Seawright failed to check a single deed or document related to the transfer of rights in timber because they knew about and were indifferent to the fraud Lamar Adams perpetrated.

There is no challenge to the second element, and evidence sufficient to demonstrate its presence exists in any event. The evidence can show that Lamar Adams needed money from new investors, and Alexander and Seawright supplied it. The motions for summary judgment filed by Baker Donelson and the Alexander Seawright Defendants are denied with respect to aiding and abetting.

### 3.    Recklessness, Gross Negligence, and Negligence (Count III)

Baker Donelson's and the Alexander Seawright Defendants' attacks on this claim are intertwined with the *in pari delicto* defense they raise. The Court declines to apply that doctrine here. *See infra* at III.1. That said, the Receiver still must produce evidence in support of each element of each of her sufficiently challenged claims. Baker Donelson and the Alexander Seawright Defendants issued other challenges pointing to a lack of evidence that could demonstrate the elements of the claims in Count III, and the Receiver failed to respond with

---

summary judgment) ("Over the course of more than a decade, Watson nurtured a highly lucrative relationship with Stanford and the Stanford entities. . . . This context gives added weight to the circumstantial evidence identified by Plaintiffs that [defendants] saw numerous, ongoing signs of improper activity in the Stanford accounts . . . . All told, this evidence could support a reasonable finding that [defendants] were aware that Stanford and Davis consistently violated their fiduciary duties[.]").

specific evidence in support of those elements. Therefore, the Court deems Count III abandoned. This Count is dismissed.

### 4.    Violations of Mississippi's Fraudulent Transfer Act (Count IV)

Although the Alexander Seawright Defendants raise issues of proximate causation—that they rely on in their reply to argue for summary judgment on this Count—they did not specifically challenge the sufficiency of this claim in their motion for summary judgment. Neither did Baker Donelson. This Count survives.

### 5.    Violations of Mississippi's RICO Statute (Count V)

Baker Donelson and the Alexander Seawright Defendants each noted that the Court has already dismissed the Receiver's RICO claims. They are correct. In an Order issued in 2021, the Court explained "At present, none of today's defendants have been convicted of anything relating to this Ponzi scheme. It follows that the receiver's state RICO claim cannot proceed." Docket No. 70 at 15. To the extent that language could be ambiguous, the Order granted in part and denied in part the Alexander Seawright Defendants' Motion to Dismiss. The only portion of the Court's Order that can be read as granting that Motion in part is the portion regarding the Mississippi RICO claim. Although criminal convictions have occurred since the time of that dismissal, the Receiver has not reasserted this claim.[26] This forecloses the Receiver from reviving it now. This claim remains dismissed.

---

[26] It was contained in her proposed second amended complaint, which the Court denied her request to file.

### 6.    Joint Venture liability (Count VI)

The Receiver has identified evidence from which a jury could reasonably find that a joint venture existed between Alexander, Seawright, and Lamar Adams/Madison Timber. Mississippi courts use a three-pronged test to determine whether a joint venture existed: "(1) the intent of the parties, (2) the control question, and (3) profit sharing." *Smith v. Redd*, 593 So. 2d 989, 994 (Miss. 1993).[27] The evidence identified by the Receiver is sufficient to support a finding of each of these elements.

With respect to the first requirement, the Receiver identified evidence from which a jury could conclude that Alexander and Seawright intended to solicit investors for Madison Timber, and that they formed Alexander Seawright Timber Fund for that sole purpose. There is also evidence from which a jury could infer that Alexander and Seawright knew of the fraud Lamar Adams was perpetrating through Madison Timber. *See supra* at Aiding and Abetting (Count II).

 As for the second element, "Mississippi law does not require that every party to a joint venture exercise control over every aspect of the business enterprise." *Patton Med. Of Gulf Coast, Inc. v. Relle*, 269 So. 3d 266, 278 (Miss. Ct. App. 2018). "In *Putt v. Ray Sewell Co.*, 481 So.2d 785, 786–87 (Miss. 1985), for example, the Mississippi Supreme Court held that '[t]here was

---

[27] Although *Smith* discusses these elements with respect to the formation of a partnership, the same elements apply to the analysis of whether a joint venture has been formed in Mississippi. *Mayer v. Angus*, 83 So. 3d 444, 452 (Miss. Ct. App. 2012) ("As with an ordinary partnership, the critical elements of the existence of a joint venture are (1) intent, (2) control, and (3) profit sharing.").

24

more than sufficient evidence for a reasonable jury to find the existence of a joint business venture between the parties' where one party provided the capital and advice, while the other two parties provided 'the skill and labor needed in the actual operation.'" *Id.* (alteration in original). Likewise, in this case, the Receiver identified evidence showing that Lamar Adams, Seawright, and Alexander each had a role in a joint venture. That evidence could support a finding that Lamar Adams supplied the timber deeds and mill agreements for investments; Seawright solicited investors, drafted security agreements, promissory notes, and confidentiality agreements for Madison Timber and drafted the operating agreement, subscription agreements, term sheets, and investor questionnaires; and Alexander operated as a salesman.

With respect to the final element, Baker Donelson and the Alexander Seawright Defendants emphasize that the money shared between Lamar Adams, Alexander, and Seawright was not profits, rather it was "interest or other charge on a loan" which the Mississippi Uniform Partnership Act excludes from the definition of "profits" that give rise to joint ventures or partnerships. Docket No. 230 at 33 (citing Miss. Code Ann. § 79-13-202(c)(3)(v)). While there is a basis for this characterization of the money they shared, the Receiver also identified evidence showing that Adams, Alexander, and Seawright considered themselves to be sharing in profits.[28]

---

[28] *E.g.*, Docket No. 279-50 at 2, Adams Email to Seawright and Alexander ("As far as this Yazoo tract is concerned, we have 14% profit in it. All I need to know is how you guys want the split done."); Docket No. 279-49 at 2, Seawright email to potential investor ("[W]e may have a separate arrangement with Lamar for a piece of his profit. We are still working through that though.").

Moreover, given the fraudulent nature of the alleged joint venture, the Court is hesitant to provide the blanket protection movants request. To do so would shield joint venturers who, even if shown to have benefited from fraud, were prescient enough to characterize their fraudulent gains as something other than profits.[29]

Given the conflicting evidence, the Court declines to take the issue from the jury and finds that summary judgment is inappropriate. This claim too survives.

### 7.    Negligent Retention & Supervision (Count VIII)

The Receiver levied this claim directly against Baker Donelson, rather than through a theory of vicarious liability. Baker Donelson challenged this claim but failed to meet its burden of demonstrating entitlement to judgment as a matter of law.

Baker Donelson claims it had no duty to supervise Alexander and Seawright with respect to the timber fund, because Alexander and Seawright conducted this activity outside the scope of their employment. As the Court discussed *supra*, there remains a dispute whether Alexander and Seawright were in fact operating outside the scope of their employment regarding their activities with Lamar Adams given, for example, that many of those activities occurred during working hours at Baker Donelson's office, using Baker Donelson's employees and resources.

---

[29] Baker Donelson argues that "Indeed, there were no profits." Docket No. 230 at 33. But, if indeed Alexander and Seawright engaged in the conduct as alleged, there were no legitimate loans generating interest either. The formalism that assists in determining whether profits were shared such that a partnership formed is less instructive in cases where parties are alleged to have engaged in and profited from a fraudulent venture.

If the Receiver makes that showing—establishing that Baker Donelson in fact had a duty to supervise—she must then show that Baker Donelson knew or should have known about incompetence on the part of Alexander and Seawright but failed to do anything about it. *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 86 (Miss. Ct. App. 2004) (observing that negligent retention claim required plaintiff to prove "(1) that [defendant] knew or should have known of some incompetence on the part of [two of defendant's employees] and (2) that [defendant] failed to do anything about it"). This showing can be made through demonstrating actual or constructive knowledge. *Backstrom v. Briar Hill Baptist Church, Inc.*, 184 So. 3d 323, 327 (Miss. Ct. App. 2016). These requirements correlate to the breach element in a claim of negligence.

Here, the Receiver identified evidence that at least six Baker Donelson shareholders, in addition to Seawright, invested with Alexander and Seawright. Their knowledge could form the basis for a jury to find that Baker Donelson knew of, for example, the guaranteed rate of return that Alexander and Seawright promised—a glaring red flag that the investment opportunities they were offering may be fraudulent—but did nothing to investigate prior to the collapse of the Ponzi scheme. That is sufficient to meet this element of the Receiver's claim.

Baker Donelson did not sufficiently challenge other elements of this claim. Baker Donelson's motion for summary judgment is denied with respect to the Receiver's claim for negligent supervision/retention.

### III.    Equitable Principles & Damages

Baker Donelson and the Alexander Seawright Defendants each raise arguments concerning the application of equitable principles that they claim prohibit the Receiver from proceeding with this case. Alexander and Seawright argue that they are entitled to limit their liability by relying on the corporate veil of Alexander Seawright, LLC. And all three of the present motions for summary judgment raise arguments attempting to set limits on the calculation of damages. The Court considers these arguments in turn.

### 1.    *In Pari Delicto*

Baker Donelson and the Alexander Seawright Defendants again raise the argument that the doctrine of *in pari delicto* bars the Receiver from recovering against them.

"The phrase 'in pari delicto' is Latin for 'in equal fault.' The doctrine of in pari delicto refers to the principle that a plaintiff who has participated in a wrongdoing may not recover damages resulting from the wrongdoing." *Latham v. Johnson*, 262 So. 3d 569, 581 (Miss. Ct. App. 2018) (quotation marks, citation, and brackets omitted). "The doctrine . . . is undergirded by the concerns, first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012) (citation omitted). "In pari delicto is an equitable, affirmative defense, which is controlled by state common law." *Id.* (citations omitted).

As the Court explained in its Order on the parties' motions to dismiss, Docket No. 70 at 16-18, the defects with the

defendants' argument were well-explained by the *Jones* court. That reasoning applies with equal force now.

The Court appointed the Receiver. She has a duty to "identif[y] and pursue[] persons and entities as participants in the Ponzi scheme to recover funds for distribution to investor-claimants." *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 891 (5th Cir. 2019). There is no public interest in, and the purpose of the *in pari delicto* doctrine is not served by, barring the Receiver from pursuing claims against alleged co-conspirators and/or aiders and abettors of a Ponzi scheme. The Court declines to apply the equitable doctrine here. The motions for summary judgment filed by Baker Donelson and the Alexander Seawright Defendants are denied in this respect.

### 2.    Piercing the Corporate Veil

Alexander and Seawright argue that the Receiver may not pierce the limited liability veil of Alexander Seawright, LLC to hold Brent Alexander and Jon Seawright personally liable. They are wrong.

"[U]nder Mississippi law . . . a corporation possesses a legal existence separate and apart from that of its officers and shareholders, and that the same principle applies in the limited liability company (LLC) context." *Edmonson v. State*, 301 So. 3d 108, 113-14 (Miss. Ct. App. 2020) (quotation marks and citations omitted). However, there is an "exception to this general rule: a distinct corporate identity will *not* be maintained if 'to do so would subvert the ends of justice.'" *Id.* at 14 (emphasis in original) (quoting *Johnson & Higgins of Miss. Inc., v. Comm'r of Ins. of Miss.*, 321 So. 2d 281, 284 (Miss. 1975)). "In particular, 'piercing the corporate veil is appropriate where the corporation exists to perpetuate a fraud.'" *Id.* (quoting

*Stanley v. Miss. State Pilots of Gulfport Inc.*, 951 So. 2d 535, 541 (Miss. 2006)). "Because of the equitable nature of this doctrine, the corporate veil may be pierced in a variety of situations." *Stanley*, 951 So. 2d at 542 (citations omitted).

The Receiver responded that Alexander and Seawright used the corporate entity, that they now seek to shield themselves with, to facilitate the "scheme or artifice to defraud" they pleaded guilty to. *See United States v. Seawright*, No. 3:22-CR-84 (S.D. Miss.), Docket No. 1 at 1; *see also United States v. Alexander*, No. 3:23-CR-37 (S.D. Miss.), Docket No. 1 at 1. This is sufficient to show that Alexander and Seawright used the corporate form to perpetuate fraud. In such a situation, equitable principles counsel against allowing fraudsters to hide behind the limited liability veil normally afforded corporate entities. Providing such a shield would subvert the ends of justice. The Alexander Seawright Defendants' motion for summary judgment is denied in this respect.

### 3.    Damages

Each of the three motions before the Court spend significant time on the issue of damages. The proponent of each argument largely assumes that their theory of the case will carry the day. For instance, Baker Donelson argues that damages are limited to funds directly invested through the Alexander Seawright Defendants. That is not necessarily the case. Should the Receiver prevail on her civil conspiracy claim, for example, joint and several liability would attach to the extent of the conspiracy she proves. Miss. Code Ann. § 85-5-7 ("Joint and several liability shall be imposed on all who consciously and deliberately pursue a common plan or design to commit a tortious act, or actively take part in it. Any person held jointly and severally liable under this section shall have a

30

right of contribution from his fellow defendants acting in concert."). *See also S. Christian Leadership Conf., Inc.*, 241 So. 2d at 627 (finding in a case of civil conspiracy "we are of the opinion that [the lower court's] findings of fact are supported by substantial evidence and that he was correct in finding and concluding that the forty-one defendants named in the trial court's final decree are jointly and severally liable in damages").

As the Court has already discussed, the Receiver has identified evidence upon which a jury may find that Alexander and Seawright were aware of more of the scheme than the portion related to funds invested through them. They were aware that investors went directly to Lamar Adams, and they pleaded guilty to facilitating "a scheme or artifice to defraud" with a timber broker that they later identified as Lamar Adams. *See supra*. The extent of liability then can depend on, *inter alia*, the extent of the conspiracy the jury determines that Alexander and Seawright participated in or aided and abetted.

Likewise, the Receiver's motion, Docket No. 226, assumes that a jury will adopt her theory of the case and her measure of damages. No jury has yet done so. None of the law presented in the Receiver's motion requires that a specific conclusion is reached. Therefore, summary judgment is inappropriate. The jury may hear the evidence and make its own determinations. The Receiver's motion for partial summary judgment on specific matters pertaining to damages is denied.

Baker Donelson also moves to preclude the Receiver from collecting punitive damages against the firm. The Court notes the high bar the Receiver must meet for this issue to reach the jury. *See, e.g., Doe ex rel. Doe v. Salvation Army*, 835 So. 2d 76, 81 (Miss. 2003) ("In the punitive damage context, Miss. Code

Ann. § 11–1–65(1)(a) requires that a claimant must prove by 'clear and convincing evidence that the defendant against whom punitive damages are sought acted with *actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.*'") (emphasis in original). But, viewing the evidence in the light most favorable to the Receiver,[30] the Court is satisfied that a genuine issue of material fact exists on the question, at least with respect to the claim of negligent supervision.[31] "Of course, the denial of summary judgment on the issue of punitive damages does not foreclose the possibility that the Court might ultimately refuse to submit the question to a jury." *Welch v.*

---

[30] The Court notes that the standard applicable under Rule 56 differs from the standard applied to determine whether the issue of punitive damages can be submitted to the jury. *See Deliefde v. Nixon*, No. 3:19-CV-226, 2021 WL 4164680, at *9 (S.D. Miss. Sep. 13, 2021) (comparing the weighing of evidence that courts conduct prior to submission of punitive damages to a jury with the Rule 56 standard, under which courts do not make credibility determinations and view the evidence in the light most favorable to the opposing party).

[31] The Court notes, the Receiver *may* be categorically precluded from pursuing punitive damages against Baker Donelson on her claims that rely on the theories of vicarious liability. *See, e.g., Dinger v. Am. Zurich Ins. Co.*, No. 3:13-CV-46, 2014 WL 580889, at *4 (N.D. Miss. Feb. 13, 2014) ("Numerous federal courts in Mississippi have ruled that punitive damages are not recoverable from the employer based on their employee's actions."). This Court, however, has not explicitly opined on the issue and has denied summary judgment on punitive damages even where an employer admitted vicarious liability. *See Welch*, 776 F. Supp. 2d 222 (denying summary judgment on punitive damages where employer admitted vicarious liability); *Gaddis v. Hegler*, No. 3:10-CV-249, 2011 WL 2111801 (S.D. Miss. May 26, 2011) (same); *but cf. James v. Antarctic Mech. Servs., Inc.*, No. 3:18-CV-678, 2020 WL 86209, at *5 (S.D. Miss. Jan. 7, 2020) (quoting *Dinger*, 2014 WL 580889, at *4).

*Loftus*, 776 F. Supp. 2d 222, 227 (S.D. Miss. 2011) (citation omitted). *See also Graves ex rel. W.A.G. v. Toyota Motor Corp.*, No. 2:09-CV-169, 2011 WL 4625606, at *6 (S.D. Miss. Oct. 3, 2011) ("[T]he court is doubtful that the issue will ultimately go to the jury, but that decision is best left until after the court has heard how the evidence plays out at trial."). Baker Donelson's motion is denied with respect to the issue of punitive damages.

Finally, the Court is unpersuaded by Baker Donelson's attempt to characterize the damages the Receiver pursues as based on a theory of "deepening insolvency." The cases that Baker Donelson cites to characterize the Receiver's theory of damages in this manner are distinguishable from the present case. For example, *in re SI Restructuring, Inc.*, 532 F.3d 355 (5th Cir. 2008), upon which Baker Donelson relies, involved corporate insiders providing an eleventh-hour loan to a corporation to allow it to meet its payroll, such that no harm befell the corporation or its creditors. This case, by contrast, involves a Ponzi scheme. The Receiver has a duty to "identif[y] and pursue[] persons and entities as participants in the Ponzi scheme to recover funds for distribution to investor-claimants." *Zacarias*, 945 F.3d at 891.

## Conclusion

The Court has considered all arguments raised by the parties; those not addressed in this Order would not have changed the result. Baker Donelson's motion, Docket No. 223, is granted in part and denied in part; the Receiver's motion, Docket No. 226, is denied; and the Alexander Seawright Defendants' motion, Docket No. 235, is granted in part and denied in part.

33

**SO ORDERED**, this the 3rd day of March, 2026.

s/ Carlton W. Reeves
*United States District Judge*