# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ALYSSON MILLS,** *in her capacity as Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC,*

*Plaintiff,*

v.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC,** *et al.,*

*Defendants.*

CAUSE NO. 3:18-CV-866-CWR-BWR

## ORDER

Baker Donelson hired Ms. Donna Ingram; Retired Chief Judge of the United States Bankruptcy Court for the Eastern District of Michigan, Steven Rhodes; and Mr. Timothy Hart to provide expert opinions. The Receiver filed a motion challenging each. Docket No. 228. As discussed below, the Receiver's motion is granted in part and denied in part.

## Legal Standard

The proponent of expert testimony must demonstrate that "it is more likely than not that [] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). *See also Carlson v. Bioremedi Therapeutic Sys.*, 822 F.3d 194, 199 (5th Cir. 2016) ("An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'") (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "District courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson*, 163 F.3d

1

at 937 (quoting Fed. R. Evid. 702). Testimony that does not rest on relevant expertise "does not qualify as an appropriate expert opinion." *Taylor v. Detroit Diesel Realty, Inc.*, No. 3:12-CV-506, 2014 WL 2013348, at *3 (S.D. Miss. May 16, 2014) (citing Fed. R. Evid. 702). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

Once satisfied the proposed expert is sufficiently qualified to testify, the Court then considers the twin requirements of relevance and reliability. "In *Daubert*, the Supreme Court instructed district courts to function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury." *Wilson*, 163 F.3d at 937 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-93 (1993)).

"A party seeking to introduce expert testimony must show '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting Fed. R. Evid. 702).

"[A]n expert may never render conclusions of law." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009). The Fifth Circuit has "consistently held that legal opinions are not a proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence, instead merely telling the trier of fact what result to reach." *BNY Mellon, N.A. v. Affordable Holdings, Inc.*, No. 1:09-CV-226, 2011 WL 2746301, at *1 (N.D. Miss. July 12, 2011) (collecting cases); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir.

2

1983) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.").

## Analysis

In the present motion, the Receiver challenges specific opinions offered by proposed expert witnesses. She challenges: (1) Ms. Ingram's opinion that "related" investors must be treated as one investor for calculating net losses; (2) Ms. Ingram's opinion that the Receiver would have recovered over $15 million, had she sued net winners; (3) Judge Rhodes's opinion that the Receiver should have sued alleged net winners; (4) credibility determinations made by Mr. Hart; and (5) the opinion that the Receiver's recoveries from other parties reduce the Receivership Estate's damages, espoused by Ms. Ingram and Mr. Hart.

With respect to the first challenged opinion, it does not appear that Ms. Ingram in fact opines that related investors *must* be treated as a single unit. Instead, the Receiver identified a portion of Ms. Ingram's opinion that disagrees with the Receiver's methodology.[1] The Receiver has not presented any law requiring the exclusion of Ms. Ingram's disagreement with the Receiver's methodology.

The Receiver correctly notes that corporate entities are legally distinct from their officers and shareholders. *Edmonson v. State*, 301 So. 3d 108, 113-14 (Miss. Ct. App. 2020) ("We recognize that a basic principle under Mississippi law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, and that the same principle applies in the limited liability company (LLC) context.") (quotation marks and

---

[1] Docket No. 229 at 5 n. 1 (citing Ingram's report, Docket No. 244 at 15, as disagreeing with the Receiver's accounting because it "sometimes treat[s] a married couple who invested jointly, a person and his wholly owned investment vehicle, or a person who invested from more than one account as multiple investors").

3

citations omitted). She does not, however, identify specific portions of Ms. Ingram's opinion that violate this principle. Ms. Ingram may not offer calculations or testimony that simply ignore the law in Mississippi that corporate entities are separate from their owners and shareholders. The Receiver may raise an appropriate objection at any time Ms. Ingram attempts to do so. Otherwise, the Receiver is free to explore perceived shortcomings in Ms. Ingram's methodology and/or inaccuracies in the factual bases of this opinion through cross-examination. The Receiver's request for blanket exclusion of this opinion is denied.

As for the second challenged opinion, the Court notes that the Receiver has not identified where Ms. Ingram purports to reach this precise conclusion.[2] While failing to demonstrate that Ms. Ingram intends to offer the opinion that the Receiver challenges, two significant problems persist with respect to testimony related to the following portion of Ms. Ingram's report: "[h]ad Mills obtained reimbursement from net winners she would have had more cash available to distribute to net losers[.]" Docket No. 244 at 24.

First, to the extent that Ms. Ingram in fact intends to opine that the Receiver would have recovered any sum, had the Receiver sued net winners, that opinion appears to entirely lack foundation. Docket No. 228-4 at 10, Ingram Dep. Tr. at 88:4-9 ("Q. And, ma'am, is that true for all of the net winners? You have no knowledge of whether a single one of them could make a payment to the receiver. Is that correct? A. That would be outside of what I had looked at, sir."); *id.* at 10-11, Ingram Dep. Tr. at 88:25-89:13 ("Q. . . . And when, just so we are clear,

---

[2] The Receiver asserts that "Ingram opines the Receiver would have recovered $15,612,160.71 if she had sued alleged net winners." Docket No. 229 at 8. However, as proof that Ms. Ingram makes this assertion, the Receiver cites two excerpts from Ms. Ingram's deposition where she: (1) concluded that net winners totaled $15,612,160; and (2) agrees that she sees the portion of her report that the questioning attorney is referencing. *Id.* (citing Docket No. 228-4 at 6-7).

when you say that the receiver could have brought clawback actions and gotten monies in, you are really just speculating in that regard, are you not? A. I just know it is a possibility. Q. Yeah. But whether or not she could actually receive a dime in a clawback action is not known to you, is it? A. It is not."). Ms. Ingram may not offer such an unsupported, speculative opinion.

Second, if instead Ms. Ingram merely intends to offer the proposed conclusion more generally—that, had Mills obtained other reimbursements, she would have more cash available for distribution—this conclusion is unhelpful to the trier of fact, as no juror needs expert assistance to understand this. *See Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990) (affirming exclusion of expert testimony where the trial court determined that "the jury could adeptly assess the situation using only their common experience and knowledge"). The jury does not require expert assistance to conclude that a greater number of successful recoveries would equate to more assets available for distribution. Ms. Ingram may not offer this generalized conclusion as expert opinion.

The third opinion the Receiver challenged is related to the second. Judge Rhodes bases his opinion that the Receiver's decision not to pursue fraudulent transfer claims against net winners will reduce distributions to victims, Docket No. 244-3 at 16 (reciting same), on the amount of funds he concludes are available from net winners. In turn, he bases that opinion entirely on Ms. Ingram's identification of net winners. *Id.* at 18-21 (reproducing exhibits from Ingram's Report); Docket No. 228-5 at 9, Rhodes's Dep. Tr. 60:7-14 ("Q. . . . [Y]ou did nothing to help compile this list. It was just provided to you by Miss Ingram? A. That is correct. Q. And you've done nothing to either identify these people or the various amounts listed. Correct? A. That is correct."). Judge Rhodes opines that declining to pursue claims against

5

net winners could be appropriate if, *inter alia*, "the claim against the net winner is not collectible[.]" Docket No. 244-3 at 26. Like Ms. Ingram, however, Judge Rhodes did not conduct any investigation into whether these amounts were or weren't recoverable from the identified net winners. Docket No. 228-5 at 10, Rhodes's Dep. Tr. 73:11-14 ("Q. . . . [Y]ou have no knowledge as to whether the claims against any of the net winners listed on Miss Ingram's list are collectible? A. That is correct."). Despite this admission, he still opines that the Receiver's decision not to pursue fraudulent transfer claims amounts to a breach of her duty of care. Docket No. 244-3 at 27 (noting that a reasonable receiver would not consider claims against net winners uncollectible in this case and concluding that "nothing in the record in this case suggests that the Receiver's decision not to pursue any of the estate's numerous valuable fraudulent transfer claims against net winners is based or supportable on any of these grounds" including collectability). This opinion is unsupported, and inadmissible. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) ("In the context of admissibility of expert testimony, this court has noted that 'if an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.'") (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

In addition to the foregoing lack of foundation, the Court notes that most of Judge Rhodes's report consists of legal analysis and conclusions. This is unhelpful to the jury and an invasion of the Court's province. Judge Rhodes is excluded. *See Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013) ("After a review of Farrington's expert report, the Court finds that it consists almost entirely of legal analysis and conclusions. Farrington reviews in detail statutes, case law, and facts relevant to his analysis to reach his conclusions as to whether Defendants' policies violate the FLSA or not. This is not properly

within the scope of expert testimony, and the Court finds that the expert report . . . should be stricken in its entirety.").[3]

The Receiver's fourth challenge fails to target a specific proffered opinion and instead complains that Mr. Hart makes impermissible credibility and factual determinations. Mr. Hart, like any other expert, may not claim (implicitly or explicitly) that certain disputed facts are true. For example, Mr. Hart does not provide an independent basis for asserting that "Baker Donelson had no knowledge of or documentation related to Madison Timber prior to April 2018[,]" Docket No. 244-2 at 57, and he may not assert such as a factual conclusion as if it were the product of expert analysis. He may base his opinions on assumptions, and issues with the facts upon which he relies may be properly addressed through cross-examination.

The Receiver cites no law or authority in support of her fifth challenge. The Court declines to provide a blanket exclusion.

At the end of her motion, the Receiver also requests, based on Rule of Evidence 403, that the Court prevent the introduction of "evidence of or reference to the Receiver's or her counsel's compensation, including the Receiver's counsel's contingency fee arrangement, at trial." Docket No. 229 at 19-20. Baker Donelson responds that such evidence goes to bias. While a witness's financial interest in the outcome of a case can be evidence of bias, the "admissibility of bias evidence, [] is subject to Rule 403." *United States v. Skelton*, 514 F.3d 433,

---

[3] *See also United States v. Tendler*, No. 1:24-CV-422, 2025 WL 918132, at *8 (D. Md. Mar. 26, 2025) (finding that Judge Rhodes's "opinion goes beyond the proper boundaries or province of an expert witness, notwithstanding his background and qualifications to form his opinion"); *Securities and Exchange Commission v. Platinum Management (NY) LLP*, No. 16-CV-6848, 2018 WL 4623012, at *3 n.5 (E.D.N.Y. Sept. 25, 2018) ("To show that it did not operate with an impermissible conflict of interest, S&W provides an opinion by Retired Chief Judge of the United States Bankruptcy Court for the Eastern District of Michigan, Steven W. Rhodes. With all due respect to Judge Rhodes, the Court does not need an expert opinion on the law.").

7

442 (5th Cir. 2008). "Thus, the probative value of admitting such evidence must not be substantially outweighed by any prejudicial effect." *Id.* (citing Fed. R. Evid. 403). District courts retain wide latitude to limit the exploration of bias evidence based on the presence of harassment, prejudice, confusion of the issues and/or repetition of only marginally relevant information. *See id.*

The Court fails to see how offering testimony of the Receiver's compensation arrangement through Ms. Ingram or Mr. Hart provides any probative value with respect to bias.[4] The Receiver filed this lawsuit before the Court approved the arrangement, and her arrangement has no bearing on whether any of the Defendants engaged in the conduct alleged or are liable and, if so, to what extent. Moreover, the Receiver, if she is a witness, cannot testify to what the Defendants did or did not do, because she does not have that personal knowledge. *See* Docket No. 274 at 11 (admitting same). Ms. Ingram and Mr. Hart may not offer testimony on the subject.

Should the Receiver testify, and should her testimony include statements or assertions that could be undermined by a showing of her financial interest in the case, such that it could motivate her to fabricate her testimony, introduction of her fee arrangement may then be permissible on cross-examination. Counsel should alert the Court of their intention to explore such evidence of bias at that time, so that any objection may be heard prior to its introduction.

---

[4] *E.g.*, Docket No. 244-2 at 29, Hart Report ("I note that the distributions made by the Receiver are approximately $12.35 million less than the settlements and other proceeds collected by the Estate. The majority of this difference results from the fact that the Receiver and her attorneys have been paid $11.02 million in legal fees and contingency payments.").

## Conclusion

The Court has considered all arguments raised by the parties; those not addressed in this Order would not have changed the result. The Receiver's motion, Docket No. 228 is granted in part and denied in part.

**SO ORDERED**, this the 12th day of March 2026.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE